**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Lead Counsel for Lead Plaintiff and the*
*Proposed Classes*

**MORRISON & FOERSTER**
Jordan Eth (CA SBN 121617)
David J. Wiener (SBN 291659)
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
JEth@mofo.com
DWiener@mofo.com

*Attorneys for Defendants*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SHARON BERNSTEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GINKGO BIOWORKS HOLDINGS, INC., et al.,<br><br>Defendants. | Case No.:  4:21-cv-08943-KAW<br><br>**STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS**<br><br>HON. KANDIS A. WESTMORE |

## STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS

WHEREAS, counsel for Plaintiff and Defendants (collectively, the "Parties," and each, a "Party") have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

WHEREAS, the Parties have entered into this Stipulated Forms and Format for Document Productions ("Protocol") to govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules;

1.    General Stipulations

    a.    The Parties have entered into this Protocol to, consistent with Federal Rule of Civil Procedure 1, facilitate the just, speedy, and inexpensive determination of this action. Nothing herein shall be construed to limit the scope of discovery available to the Parties pursuant to Federal Rule of Civil Procedure 26(b).

    b.    Paper documents and ESI should be produced in accordance with the Federal Rules of Civil Procedure. The proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(1) shall be applied in all matters related to discovery of ESI, including without limitation the preservation, collection, and production of such information.  The Parties recognize and take into consideration the unique ability of each Party to evaluate its own ESI and determine the appropriate procedures, methodologies, and technologies for the preservation, collection, and production of documents

    c.    Each Party will identify an e-discovery liaison who is and will be knowledgeable about and responsible for discussing matters related to its ESI.  Any attorney representing a Party, including the e-discovery liaison, may participate in meet-and-confer conferences, and it is not required that the e-discovery liaison be

present for the Parties to meet and confer about matters involving ESI. However, the Parties agree to work in good faith to schedule e-discovery conferences when the e-discovery liaisons are available to aid in resolving disputes involving ESI without court intervention.

d.    The procedures and protocols outlined herein govern the production of all documents and ESI, including all computer-generated information or data of any kind, by the Parties. This Protocol governs all Parties to these proceedings, whether they are currently involved or become so in the future. All disclosures and productions made pursuant to this Protocol are subject to the Stipulated Confidentiality and Protective Order entered in this matter.

e.    The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

2.    Production Format Protocols

a.    Except as provided in Section 4 or elsewhere in this Order, all production images will be produced as single page Group IV Tagged Image File Format (.TIF or .TIFF) files at 300 dpi resolution and 8.5 x 11 inch page size, unless a document requires a higher resolution in order to be appropriately viewed.

b.    Documents or ESI produced as TIFF files containing color need not be produced initially in color and may be produced in black and white. If an original color image is produced in black and white, the receiving Party may for good cause request the producing Party to produce the image in color. The receiving Party may make such a request for production of such documents in color by providing a list of the Bates numbers of documents it requests to be produced in color format. The Producing Party shall not unreasonably deny such requests or unreasonably delay their production.

c.    A unique Bates number shall be assigned to each page, and branded in the lower

right-hand corner of the page, and the Parties shall make reasonable efforts not to obscure any part of the underlying image. All Bates numbering will be sequential within a given document and document family. Bates numbers must be applied with consistent formatting throughout the production with no special characters or embedded spaces included in the Bates. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production or as soon as practicable thereafter.

d.    Any confidentiality or other endorsements shall be branded on the lower left-hand corner of the image.  The Parties shall use reasonable measures to ensure that any such branding does not obscure any part of the underlying image.  No additional branding or designation made in reference to the document request to which a document may be responsive is required.

e.    A searchable, document-level text file shall be provided for each paper document or ESI file produced.  Each such file will have a filename matching the Bates number applied to the first page of the corresponding static image file or placeholder file, followed by the .TXT extension.  For ESI, the Parties agree that the searchable, document-level text file shall be extracted directly from the native file.  Programmatically extracted text will include all comments, revisions, tracked changes, speaker's notes and text from documents with comments or tracked changes, and hidden worksheets, slides, columns and rows.  Programmatically extracted text from e-mails will include all header information that would be visible if the e-mail was viewed natively including, where available:  (1) the individuals to whom the communication was directed, (2) the author of the email communication, (3) who was copied and blind copied on such email, (4) the subject line of the email, (5) the date and time of the email and (6) the names of any attachments.  For ESI from which text cannot be extracted, for redacted documents,

or for paper documents, the Parties agree that they will produce legible document-level OCR text, where reasonably practicable, for each such document. **Load/Unitization File:** The Parties agree that the producing Party will provide the following load files for all productions:

- **Metadata Import File**: DAT format, in ASCII format (e.g., .txt, .dat, or .csv), using Concordance default delimiters to separate the fields and records.

- **Image Cross-Reference File**: Standard Opticon delimited file in .OPT format, containing the corresponding image information and indicating page breaks, and use standard Concordance delimiters.

  - Field Separator: ASCII character 20 ("¶");
  - Quote: ASCII character 254 ("þ"); and
  - New Line: ASCII character 174 ("®").
  - Concordance-compatible image and data load files should be provided in a "Data" folder.

f.  Only one Metadata Import File and (if appropriate) one Image Cross-Reference File should be included with each production. The Metadata Import File should contain the metadata fields detailed and described in Exhibit A and/or Exhibit B of this Protocol, as appropriate. To the extent possible, the Parties agree to populate the ALLCUSTODIANS field for all produced ESI and paper documents.

g.  **Production Media:** The Parties agree that documents shall be produced preferably through a secure File Transfer Protocol ("FTP") which information shall be provided via email or otherwise on encrypted physical media ("Physical Media") sent by a method no slower than overnight delivery via USPS, UPS, or FedEx. Acceptable Physical Media includes external hard drives or other electronic media agreed to by the Parties. Each piece of Physical Media shall identify a production number corresponding to the production volume, as well as

the volume of the material in that production.  Each piece of Physical Media shall also identify: (1) the matter name and case number; (2) the producing Party's name; (3) the production date; and (4) the Bates number range of the materials contained on the Physical Media.  The password to decrypt the Physical Media will be conveyed concurrently with, but separately from, the media itself.

h.    **Production Letter:** Each production of documents, whether by FTP or Physical Media, shall be accompanied by a transmittal letter containing a table specifying the following information:

| | |
|---|---|
| Production Date | |
| Producing Party | |
| FTP or Physical Media | |
| Production Volume | |
| Starting Bates Number | |
| Ending Bates Number | |

Additionally, if the production is via FTP, the transmittal letter shall specify the means for accessing the FTP.  The password for an FTP shall be separately conveyed from the username.

i.    **Language:**  A hard-copy document or ESI containing a natural language other than English, in whole or in part, shall be produced in the original language.  A producing Party is under no obligation to prepare or provide English translations of non-English language documents or ESI, except that a producing Party must produce responsive and non-privileged documents that have been previously translated by or for the producing Party to the extent otherwise identified through the Parties' agreed-upon search protocol.

3.    Electronic Production of Paper Documents as Static Images

The Parties agree that to the extent that the producing Party elects to produce hard copy documents in electronic format, such documents will be produced as single page Group IV Tagged Image File Format (.TIF or .TIFF) files as described above.  Additionally:

a.    In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be merged into multiple records (i.e., paper  documents should be logically unitized).  The Parties will use reasonable efforts to have their vendors unitize documents correctly and will commit to address  situations where there are improperly unitized documents.

b.    The Parties agree that any file folders and/or documents affixed to hard copy documents will be scanned as separate documents.

c.    The Parties agree to provide the appropriate load/unitization files in accordance with attached Exhibit A and  consistent with the specifications for such files set forth in Section 2, above.

d.    The Parties agree that the producing Party will also produce searchable optical character recognition ("OCR") text of scanned paper documents consistent with the  specifications for searchable text set forth in Section 2, above.

4.    Production of ESI in Native File Format

The Parties agree that ESI shall be produced as TIFFs with accompanying load file except that certain documents will be produced in native format, specifically:

- Spreadsheet-formatted document files (e.g., Microsoft Excel files)
- Presentation-formatted document files (e.g., PowerPoint files)
- Multimedia audio or visual files such as voice and video recordings (e.g., .wav and .mpeg)

The Parties may discuss additional production in native format on a document-by-document or category-by-category basis. Any documents produced in native format should be produced in accordance with the  following specifications:

a.    For each produced native file, the producing Party will provide a static image slipsheet indicating that the document was produced in native format and providing the unique Bates number and confidentiality designation for the corresponding native file.    Any confidentiality designation will also be provided in the corresponding load file.

b.    A receiving Party may use an image of a native document produced by a producing Party at a trial or other proceeding as long as the image is an accurate portrayal of the native document and, if it is an excerpt, that it is noted as an excerpt.

c.    If a document that otherwise would be produced in native format requires redaction, and if it is not practicable for the producing Party to redact a native-format version of the document, such document may be produced in TIFF format in accordance with this Protocol.

d.    For each document produced in native format, the producing Party will provide all metadata contained in the fields identified in Exhibit B.

5.    <u>Production of ESI as Static Images</u>

Except for those documents produced in native format pursuant to Section 4, above, the Parties agree that ESI will be produced in TIFF format with accompanying load file as described in Section 2, above.  Additionally:

a.    The Parties agree to meet and confer regarding file types that are not amenable to conversion into TIFF images and which may not be easily produced in native file format.    If necessary, any such responsive, but non-convertible files, may be temporarily produced in the form of a placeholder TIFF image.

b.    When processing ESI, the Parties agree to use Coordinated Universal Time (UTC) as the time zone.

c.    Parent-Child Relationships (i.e., the association between an attachment and the document to which the attachment is attached) shall be preserved at processing and production, such that the attachments appear in order behind the conveying

document.

d.  The Parties are not obligated to manually populate any fields in Exhibits A or B that cannot be extracted from the document using automated processes with the exception of ALLCUSTODIANS, BEGBATES, ENDBATES, BEGATTACH, and ENDATTACH.

e.  Embedded Objects in an ESI file are to be extracted at processing. Some file types may contain embedded objects, typically found in the following productivity types: MS Excel, MS Word, MS PowerPoint, MS Project, MS Outlook, MS Access, as well as Adobe Acrobat (PDF). Objects within those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded if the file in which these objects are embedded is produced.

f.  Documents that are associated by hyperlink or otherwise linked to another location or file without being embedded will not be treated as attached files and will not be produced as attachments in order behind the document in which they were referenced by link. Such documents will be treated in accordance with their originating location and collected, processed, and produced as governed by the relevant procedures and protocols as outlined in this order for each document's file type and data source. For the avoidance of doubt, nothing in this section precludes a receiving Party from requesting the linked materials or the producing Party from objecting to such a request.

g.  Exception Files. The Parties will use commercially reasonable efforts to address documents that present processing or production problems (including encrypted, unsupported, and/or protected files) ("Exception Files"). A Party is not required in the first instance to produce Exception Files it has been unable to resolve through commercially reasonable efforts, except that, upon reasonable request, the Party will undertake reasonable efforts to locate passwords for specifically identified documents and to provide such passwords within thirty (30) calendar

days of the request.  Exception Files that are attached to produced documents will be produced as a Bates-stamped placeholder TIFF bearing a legend indicating the document is unable to be processed.

h.    Compressed file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure the compressed file within a compressed file is decompressed into the lowest possible compressing resulting in individual files.

i.    The producing Party will take reasonable steps to unencrypt any discoverable ESI that exists in encrypted format (e.g., password-protected) and that can be reasonably unencrypted based on industry standards for production.

6.    Format of Prior-Production Format of Documents

Documents produced for other litigation or court proceedings outside of this litigation may be produced to the requesting Party in this litigation in the production format from the prior production.  The receiving Party may thereafter request a meet-and-confer regarding the form, content or adequacy of any such production including this provision.

7.    Redactions

The Parties agree that ESI and paper documents may need to be redacted.  To the extent that a responsive document contains information that is protected from disclosure by applicable privilege, immunity, or work-product protection; information that is governed by applicable privacy law or regulation, such as private or personally identifying information; or other information that the Stipulated Confidentiality and Protective Order entered allows to be redacted, the producing Party may produce that document in redacted form.  Each portion of the document from which information is redacted shall bear a designation that it has been redacted and an indication of the basis for redaction (e.g. "Redacted – Privileged"), or when the document has been redacted in full, a single page slipsheet may be produced to provide a designation indicating the reason it was withheld from an otherwise produced family.  Any confidentiality designation will also be provided in the corresponding load file.

To the extent that any document contains information that is redacted, those documents

shall be produced in the form of a redacted .TIFF image.  Documents otherwise produced natively, such as spreadsheets, may be redacted and produced in native format and the Parties will ensure that the original data in the redacted spreadsheets will be preserved.

8.    Search Methodology and Data Reduction

All meet-and-confer sessions regarding search methodologies will give appropriate consideration to proportionality and the producing Party's ability to best evaluate and determine appropriate procedures, methodologies, and technologies for preserving, collecting, and producing ESI and other documents.

With the objective of limiting the scope of review and production to that which is proportional to the case, the Parties agree to meet and confer to try to develop a mutually agreeable list of custodians, data sources, and search terms for each Party and to identify the time period that may contain responsive documents.  Nonetheless, the use of terms does not require production of non-responsive, irrelevant materials or content merely due to the presence of a search term or search terms, which will be applied to all in-scope data sources as a default.  Nor does the use of search terms imply that a Party may not also have an obligation to conduct reasonable, targeted non-term-based searches for responsive materials.  All documents within the responsive time period for the agreed-upon custodians and data sources that contain an agreed-upon search term for that Party will be analyzed to determine responsiveness and, if responsive and not otherwise protected from disclosure, produced as required per this Protocol.  During fact discovery, the Parties may agree to modify the agreed-upon search queries or methodologies if the results of those search queries or methodologies appear under-inclusive or over-inclusive.

When negotiating search terms, the Parties will provide reasonable "hit" counts of documents (including total number of hits, total number of hits including families, and total number of unique hits).

Any search for potentially relevant documents and ESI shall involve searching for such documents in data sources within which such documents and ESI are likely to be most readily accessible.  If data sources are identified that are not readily accessible, the Parties shall meet and

confer to discuss the necessity of searching such data sources.

The Parties agree to meet and confer regarding the methodology for searching Slack channels or similar software as a service messaging platforms (including but not limited to, Microsoft Teams), in his, her, or its possession, if any.

Irrespective of any search protocols agreed upon by the parties, the producing Party, at its election, may review ESI and other documents for responsiveness, privilege, and confidentiality prior to producing documents to another Party.

The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources (including Slack channels) be searched and meet and confer regarding such request.  The producing Party reserves the right to object to any such request.

9.    Deduplication

The Parties shall make reasonable efforts to deduplicate ESI.  Parties may deduplicate stand-alone documents or entire document families vertically within each custodian or horizontally (also referred to as globally) across custodians.  ESI will be considered duplicative if it has matching MD5 or SHA-1 hash values.  Documents with the same content but different metadata can also be identified through the use of near-duplication technology, provided that only documents identified by such technology as 100% near-duplicates shall be considered duplicates for purposes of this paragraph.

When comparing document families, if a parent document is an exact duplicate but one or more attachments or embedded files are not exact duplicates, neither the attachments or embedded files, nor the parent document, will be deduplicated.

Attachments to emails shall not be eliminated from their parent emails by deduplication. Where a stand-alone document is an exact duplicate of an email attachment, the email attachment and stand-alone document will not be deduplicated and both must remain in the review population.

10.    Email Threading

In order to reduce the volume of entirely duplicative content within email threads, the

Parties may utilize email thread identification and suppression or "email threading" on the review population. As used in this Protocol, email threading means employing commercially acceptable methods to reduce production of duplicative email threads by reviewing and producing only the responsive inclusive email messages and their attachments, if any, from each email thread group. An email message is inclusive when it contains any non-duplicative content or has a document or set of documents attached that does not appear elsewhere within the email thread. Typically, inclusive emails are (a) emails for which no other emails within the email population contain the entirety of the text; (b) emails which have a value in the BCC field (whether or not the text of that email is fully included in another email in the email population); or (c) emails which have attachments and no other email within the email population has both the entirety of the text and the attachment. Non-inclusive emails are (a) emails whose text is fully included in another email within the email population; or (b) emails with attachments whose text is fully included in another email within the email population and that other email also has the identical attachments. Accordingly, exact duplicates of emails as well as email messages comprised of text identical to text contained within an inclusive email in the same conversation will be suppressed and not reviewed or produced, however responsive, non-duplicative attachments will be produced along with their conveying email message even when the text of that parent email message is fully represented in a longer, later-in-time email thread. An inclusive email chain shall not be withheld in its entirety as privileged (meaning for attorney-client privilege or attorney work-product protection) unless every responsive constituent email independently qualifies as privileged in its own right; if not all of the constituent emails are independently privileged, but one or more of the constituent emails are privileged, then the privileged emails may be redacted for privilege, but the responsive non-privileged emails shall be produced.

11.    Preservation of ESI

Each Party shall be responsible for taking reasonable and proportional steps to preserve potentially relevant documents and ESI within its possession, custody, or control.

The Parties agree to preserve documents consistent with their obligations under the Federal

STIPULATED FORMS AND FORMAT FOR DOCUMENT PRODUCTIONS
CASE NO.:  4:21-cv-08943-KAW

13

Rules of Civil Procedure.

Pursuant to this Protocol, the Parties have no obligation to preserve, collect, review, or produce the following information or data sources:

a.    "Deleted," "slack," "fragmented," or "unallocated" data on hard drives;

b.    Random access memory (RAM) or other system-level ephemeral data automatically created by a computer or file system;

c.    Online access data such as temporary internet files, history, cache, cookies, etc.;

d.    Data in metadata fields that are frequently updated automatically, such as the "Date Accessed" value in Microsoft Windows operating systems;

e.    Backup and archive data that are substantially duplicative of data that are more accessible elsewhere;

f.    Personal non-business-related electronic data (e.g., email, calendars, contacts, notes, and text messages) stored on mobile devices that is not stored in the ordinary course of business (e.g., iPhone, iPad, Android, and BlackBerry devices). For the avoidance of doubt relevant, non-privileged business related information and data within the agreed-upon scope of discovery stored solely on such devices must still be produced;

g.    Voicemail messages that are not preserved in the ordinary course of business;

h.    Legacy data contained on computers or information storage systems or software that is no longer used or supported by a Party and no longer reasonably accessible;

i.    Electronic data temporarily stored by laboratory equipment or attached electronic equipment;

j.    Known junk files from the NIST list or unimportant data files;

k.    Network, server, or software application logs;

l.    Structural files not material to individual document contents (e.g., .CSS, .XSL, .XML, .DTD, etc.);

m.    System files and backup or temporary files not actively saved by user; and

n.    Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business, as agreed upon and delineated in the meet-and-confer process.

12.    Third-Party Documents and ESI

A Party that issues a subpoena upon any third party ("Issuing Party") after the execution of this ESI Protocol shall include a copy of this ESI Protocol and the Stipulated Confidentiality and Protective Order with the subpoena and state that the Parties have requested that third-parties produce documents in accordance with the specifications set forth herein.

The Issuing Party shall promptly notify the other Parties when it receives non-party productions, and shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a third party in the same form and format as produced by that third party within five (5) business days of receipt from the third party, and may not use those documents in this Action until such production has been made.

13.    Cost-Shifting

Generally, ESI production costs under this Protocol shall be borne by the producing Party. The Parties expressly waive any right to seek reimbursement of reasonable costs related to producing documents, except those that the Court may order under the Federal Rules of Civil Procedure or its inherent authority.

A Party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations. Likewise, a Party's meaningful compliance with this Protocol and efforts to promote efficiency and reduce costs are cost-shifting considerations.

14.    Limitation

Nothing in this Protocol shall be interpreted to require disclosure of relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

This Protocol does not address, limit, or determine the authenticity, admissibility, relevance, discoverability, or agreement to produce any document or ESI.  The Parties are not

waiving the right to seek any discovery and are not waiving any objections to any discovery requests. This Protocol also does not address the production of privilege logs, which are governed by the Federal Rules of Civil Procedure and the Court's standing orders.

All documents produced hereunder are fully protected and covered by the Stipulated Confidentiality and Protective Order and any other applicable orders entered by this Court in this matter. If the producing Party is producing a Document subject to a claim that it is confidential under the Stipulated Confidentiality and Protective Order executed by the Parties on August 9, 2023, the producing Party shall make the designation as described in that order.

**IT IS SO STIPULATED AND AGREED, THROUGH COUNSEL OF RECORD.**

Dated: August 17, 2023

By:      */s/ Brian P. O'Connell*

Joshua B. Silverman (*pro hac vice*)
Brian O'Connell (SBN 314318)
**POMERANTZ LLP**
10 S. LaSalle St., Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
jbsilverman@pomlaw.com
boconnell@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Lead Counsel for Lead Plaintiff and the
Proposed Classes*

**THE SCHALL LAW FIRM**
Brian Schall (SBN 290685)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
brian@schallfirm.com

*Additional Counsel for Lead Plaintiff and the Proposed Classes*

By:     */s/  David J. Wiener*

Jordan Eth (CA SBN 121617)
JEth@mofo.com
David J. Wiener (CA SBN 291659)
DWiener@mofo.com
**MORRISON & FOERSTER**
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7126
Facsimile:  (415) 268-7522

William Savitt (*pro hac vice forthcoming*)
Graham W. Meli (*pro hac vice*)
Anitha Reddy (*pro hac vice*)
Akua F. Abu (*pro hac vice*)
**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000

*Attorneys for Defendants*

**<u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(h)(3)</u>**

Pursuant to Civil Local Rule 5-1(h)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: August 17, 2023                    <u>*/s/ Brian P. O'Connell*</u>
                                          Brian P. O'Connell

**ORDER GRANTING STIPULATION**


PURSUANT TO STIPULATION, IT IS SO ORDERED.



_____August 21, 2023_____        _____

Date:                                    HONORABLE KANDIS A. WESTMORE
                                         UNITED STATES MAGISTRATE JUDGE

**EXHIBIT A**

**Fields for Production of Paper Documents Converted to Static Images**

Note: The chart below describes the fields to be produced with the Load / Unitization Files in generic, commonly used terms.  Field names may vary from the below.

| Field | Definition |
|---|---|
| ALLCUSTODIANS | The Custodian value of the Document as well as the Custodian value for all copies of the Document that were removed as a result of de-duplication. |
| BEGBATES | Beginning Bates Number (production number). |
| ENDBATES | Ending Bates Number (production number). |
| BEGATTACH | First Bates number of family range (i.e., Bates number of the first  page of the first document). |
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last  page of the last attachment). |
| CONFIDENTIALITY | Confidentiality designation for documents produced in native format. |
| REDACTED | Yes/No field indicating whether a document has redactions. |
| TEXTPATH | File path for OCR or Extracted Text files. |

# EXHIBIT B

## Fields for Production of ESI

Note:  The chart below describes the fields to be produced with   the Load / Unitization Files in generic, commonly used terms.  Field names may vary from the below.

| Field | Doc Type[1] | Definition |
|---|---|---|
| ALLCUSTODIANS | All | The Custodian value of the Document as well as the Custodian value for all copies of the Document that were removed as a result of de-duplication. |
| BEGBATES | All | Beginning Bates Number (production number). |
| ENDBATES | All | Ending Bates Number (production number). |
| BEGATTACH | All | First Bates number of family range (i.e., Bates number of the first page of the first document). |
| ENDATTACH | All | Last Bates number of family range (i.e., Bates number of the last page of the last attachment). |
|  |  |  |
| FILEEXT | All | File extension of the native file (e.g., XLS, DOC, PDF). |
| FILENAME | eDoc | File name of the original electronically collected document. |
| HASHVALUE | All | MD5 Hash or SHA Value created during processing. |
| FROM | Email | Sender of email. |
| TO | Email | Recipient of email. |
| CC | Email | Additional recipients of email. |
| BCC | Email | Blind additional recipients of email. |
| SUBJECT | Email | Subject line of email. |
| DATESENT (mm/dd/yyyy hh:mm) | Email | Date and Time Sent. |

---

[1] "eDoc" refers to an electronic document that is not an email.

| IMPORTANCE | Email | Email high priority flag |
|---|---|---|
| DATERCVD (mm/dd/yyyy hh:mm) | Email | Date and Time Received. |
| TITLE | eDoc | Title field value extracted from the metadata of the native file. |
| AUTHOR | eDoc | Creator of a document. |
| CONFIDENTIALITY | All | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. |
| REDACTED | All | Yes/No field indicating whether a document has redactions. |
| NATIVEFILELINK | All | For documents provided in native format. |
| TEXTPATH | All | File path for OCR or Extracted Text files. |