**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Lead Counsel for Lead Plaintiff and the*
*Proposed Classes*

**MORRISON & FOERSTER**
Jordan Eth (CA SBN 121617)
David J. Wiener (SBN 291659)
425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
JEth@mofo.com
DWiener@mofo.com

*Attorneys for Defendants*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| SHARON BERNSTEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GINKGO BIOWORKS HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 4:21-cv-08943-KAW<br><br>**JOINT DISCOVERY LETTER REGARDING DEFENDANTS' DOCUMENT PRODUCTION**<br><br>HON. KANDIS A. WESTMORE |

November 3, 2023

Magistrate Judge Kandis A. Westmore
U.S. District Court Northern District of California
1301 Clay Street
Oakland, California 94612

Dear Magistrate Judge Westmore:

Please find a Joint Discovery Letter concerning Plaintiff's proposal to set substantial completion dates for Defendants' production of documents in response to Plaintiff's First and Second Set of Requests for the Production of Documents, served on May 11, 2023 and June 9, 2023, respectively.

Attestation of Lead Counsel: The undersigned below have complied with Section 9 of the Northern District's Guidelines for Professional Conduct Regarding Discovery and Judge Westmore's Standing Orders (revised 11/08/2021) regarding discovery disputes, and met and conferred by video on October 27, 2023.

Respectfully Submitted by,

By:     *Brian P. O'Connell*
        Joshua B. Silverman (*pro hac vice*)
        Brian O'Connell (SBN 314318)
        Genc Arifi (*pro hac vice*)
        **POMERANTZ LLP**
        10 S. LaSalle St., Suite 3505
        Chicago, Illinois 60603
        Telephone: (312) 377-1181
        jbsilverman@pomlaw.com
        boconnell@pomlaw.com

        *Lead Counsel for Lead Plaintiff and the
        Proposed Classes*

By:     *Graham W. Meli*
        William Savitt (*pro hac vice forthcoming*)
        Graham W. Meli (*pro hac vice*)
        Anitha Reddy (*pro hac vice*)
        Akua F. Abu (*pro hac vice*)
        **WACHTELL, LIPTON, ROSEN & KATZ**
        51 West 52nd Street
        New York, NY  10019
        Telephone:  (212) 403-1000
        Facsimile:  (212) 403-2000
        Jordan Eth (CA SBN 121617)
        David J. Wiener (SBN 291659)
        **MORRISON & FOERSTER**

425 Market Street
San Francisco, CA  94105
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522
JEth@mofo.com
DWiener@mofo.com

*Attorneys for Defendants*

## SIGNATURE ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content, and have authorized the filing.


Dated: November 3, 2023                    */s/ Brian P. O'Connell*
                                            Brian P. O'Connell

I.    **<u>Summary of Unresolved Dispute: Plaintiff's First Set of Requests for Production Nos. 1-12; Plaintiff's Second Set of Requests for Production Nos. 1-9</u>**

Plaintiff and Defendants (collectively, the "Parties") have reached an unresolved dispute about Defendants' pace of production of documents in response to Plaintiff's First and Second Set of Requests for the Production of Documents ("Requests"), which were served on May 11, 2023, and June 9, 2023 respectively. [1]

In response to these Requests, Defendants proposed the Parties negotiate a search protocol for custodial document production.  The Parties agreed to terms under a protocol on September 21, 2023.  The Parties have met and conferred regarding these requests seven times by video.  As further detailed in her position summary, Plaintiff proposes a substantial completion deadline for documents searched under this search protocol.  Plaintiff has proposed that Defendants substantially complete production by December 19, and substantially complete production of a category of documents that Defendants had agreed to prioritize by November 16. Defendants oppose Plaintiff's proposal.

II.    **<u>Argument</u>**

    A. **<u>Plaintiff's Position</u>**

Plaintiff moves the Court to set a substantial completion deadline for Defendants' production of documents pursuant to Plaintiff's First and Second Set of Requests for the Production of Documents to Defendants (the "Requests"), served respectively 177 and 148  days ago.  Plaintiff is concerned about the pace of production responsive to an agreed search protocol for Defendants' production of custodial documents pursuant to the Requests.   Plaintiff has met and conferred with Defendants seven times regarding the Requests: June 23, July 13, August 18, September 15, September 28, October 12, and October 27, each time by video, in which Plaintiff repeatedly urged Defendants to increase their pace of document production.  The Parties have exchanged over a dozen emails regarding the Requests.

On July 24, 2023, Plaintiff sent Defendants a list of proposed custodians and search terms along with a list of needed non-custodial document categories.  On September 21, 2023, the Parties agreed to a custodial search protocol involving those terms.  Under the search protocol, Defendants agreed to search for and produce responsive documents using agreed search terms during agreed time periods for 13 officers and employees of Ginkgo Bioworks Holdings, Inc., and/or officers and directors of Soaring Eagle Acquisition Corp.

In producing documents under the search protocol, Defendants agreed to prioritize document searches concerning SPAC company Soaring Eagle's due diligence files, and then move to other categories of searches.

---

[1] Attached are the excerpted document requests as Exhibits.  The Parties are mindful of the Court's Standing Order Paragraph 14 regarding permitted exhibits in joint letters.  Upon request, the Parties can provide the Court with the agreed search terms and list of custodians, and any other materials the Court would find helpful in resolving this dispute.

It has now been six months since Plaintiff served Defendants with the first set of the Requests, yet Plaintiff has only received 1161 documents from the custodial search protocol, along with 306 agreed non-custodial documents, for a total of 1,467 documents. This custodial production is a minuscule portion of the 179,497 emails and 164,539 Slack messages Defendants have agreed to review under the search protocol.

While Plaintiff was encouraged to finally reach an agreement on a custodial search protocol in September, the pace of production has impeded the progress of the case. Continued delay would be against spirit of the Federal Rules of Civil Procedure, which are designed to "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. *See also*, Northern District of California Guidelines for Professional Conduct Paragraph 9. Defendants' protracted pace of production has prevented Plaintiff from commencing depositions, and Defendants' reticence is exploited by certain third parties who insist Plaintiff first review Defendants' documents before obtaining documents from the third parties.

In the interest of moving the case along, as discussed at the October 27, 2023 meet and confer conference, Plaintiff has proposed that Defendants: (1) produce all responsive documents related to due diligence in the agreed search protocol (of which there are 70,533 Slack messages and 48,628 emails) by November 16; and (2) substantially complete production of remaining documents responsive to the Requests pursuant to this protocol by December 19, 2023. Defendants represented at the October 27, 2023 meet and confer that they have hired nearly 40 contract attorneys to review these documents. Assuming that 20 documents can be reviewed per hour, Defendants have the resources to review approximately 6,000 documents per day. *See Lawson v. Spirit Aerosystems,* No. 18-1100-EFM-ADM, 2020 U.S. Dist. LEXIS 201538, at *12 (D. Kan. Oct. 29, 2020) (collecting cases and citing sources stating that document review generally is done at about a 50 per hour pace); *see also Brown v. Barnes & Noble, Inc*., 474 F. Supp. 3d 637, 645 (S.D.N.Y. 2019) (noting a rate of review of about 40-60 per hour).

Such a timeframe is also more than reasonable given the size and nature of this case and the nearly six months that Defendants have ***already*** had to review documents. *See, e.g., In re Envision RX Healthcare Corp*., No. 18-cv-01068-RGA-SRF, Dkt. No. 68 (D. Del.) (court ordering less than six months for substantial completion deadline in securities class action); *In Re Wells Fargo Mortgage-Backed Certificates Litigation*, No. 09-cv-01376-LHK, Dkt. Nos. 301, 439-2 (N.D. Cal.) (7.5-month substantial completion deadline to produce 4.2 million pages of documents). Further, this timeframe for production would be consistent with the timeframes this Court has ordered in complex and class or collective actions when ruling on joint letters. *See, e.g., Zulewski et al. v. The Hershey Company*, No. 4:11-cv-05117-KAW (N.D. Cal.) (30 days after ruling on joint letter); *Carroll v. Wells Fargo & Co*., No. 15CV02321EMCKAW, 2016 WL 4696852, at *4 (N.D. Cal. Sept. 8, 2016) (21 days).

### B. <u>Defendants' Position</u>

Plaintiff requests that the Court order Defendants to substantially complete the review and production of over 119,000 documents in less than two weeks, with at least another 225,000 documents to be reviewed within approximately six weeks. Plaintiff first raised the prospect of these expedited substantial completion deadlines with Defendants on October 27th.

Imposing such rapid deadlines for massive document productions, with almost no notice, is not warranted by any circumstances in this case nor by precedent in similar cases.

*First*, Plaintiff's request seeks to circumvent the ordinary procedure for setting case schedules in this District.  An Initial Case Management Conference is set for December 5th, after which the Court will likely enter a scheduling order.  Plaintiff cannot insist on expedited document-production deadlines in isolation before an overall schedule is set.  Moreover, nothing in the parties' previous discussions about the schedule supports the breakneck pace that Plaintiff proposes.  The parties previously submitted a Joint Case Management Statement (Dkt. No. 90) providing for the conclusion of fact and expert discovery well into next year, in July 2024.  After the Court continued the Initial Case Management Conference, the parties negotiated a revised schedule in mid-September (not yet submitted to the Court) providing for discovery to be completed about a year later, in September 2024.  Neither schedule specified an interim deadline for substantial completion of document production.  Plaintiff then waited until October 27th to propose substantial completion deadlines for hundreds of thousands of documents within weeks.

*Second*, Plaintiff's new request is unsupported by precedents in similar securities cases, which often set substantial completion deadlines for after plaintiffs have filed their class-certification motions—or even after such motions have been argued.  For example, in a recent case in this District, the court denied the plaintiff's request to set a substantial completion deadline in the midst of class-certification briefing, instead setting it four months later, after a *hearing* on the motion.  *See In re Oracle Corp. Sec. Litig.*, No. 5:18-cv-04844-BLF, Dkt. Nos. 101, 102 (N.D. Cal.).  Similarly, in another recent scheduling order submitted in this District, the parties proposed that substantial completion occur after all briefing on the plaintiffs' motion for class certification.  *See Sheet Metal Workers' Nat'l Pension Fund* v. *Bayer Aktiengesellschaft*, No. 3:20-cv-04737-RS, Dkt. No. 130 (N.D. Cal. June 30, 2022).  The court ultimately set the substantial completion deadline for after a *hearing* on the motion, and a full year after the parties submitted their initial proposed schedule.  *Id.* at Dkt. Nos. 133, 185.

Here, by contrast, the Court has not yet entered a full schedule, and Plaintiff has not filed a motion for class certification.  Under the most recent schedule the parties negotiated in September, Plaintiff would not even make that motion until next January, with briefing extending through late April and a tentative hearing in June.  Defendants expect to have significant defenses to class certification.  To take just one glaring example, Plaintiff is not even a member of one class she purports to represent—the Section 14(a) class—as she bought shares after the solicitation at issue.  *See* Compl. [Dkt. No. 82] ¶¶ 1(b), 17.  Plaintiff should not be allowed to front-load the costs of discovery before she has established her entitlement to proceed with this putative class action.  *See generally* Manual for Complex Litigation § 21.14 (4th ed. 2004) (merits discovery "may ultimately be unnecessary" if class is not certified).

Plaintiff's own citations further support Defendants' position.  In the only securities class action in this District that Plaintiff cites, the court set substantial completion for after a hearing on class certification.  *In re Wells Fargo Mortgage-Backed Certificates Litig*., No. 5:09-cv-01376-LHK, Dkt. No. 301 (N.D. Cal. Oct. 20, 2010).  In the District of Delaware case Plaintiff cites, the court set substantial completion for a month and a half after the plaintiff's class-certification motion.  *See In re Envision Healthcare Corp.*, No. 1:18-cv-01068-RGA, Dkt.

No. 68 (D. Del. Dec. 4, 2019).  Moreover, in both cases, the substantial-completion deadline was set in a full scheduling order entered months before that deadline—seven months in *Wells Fargo* and five months in *Envision*.  These examples thus followed the normal process of setting case schedules well in advance, to give the parties notice of their obligations.  Neither involved the type of request to set an expedited schedule on minimal notice that Plaintiff makes here.

Plaintiff cites two orders of this Court requiring production within 21 or 30 days after the order.  Again, neither of these orders bears a resemblance to Plaintiff's current request.  Instead, the Court ruled on discrete disputes about interrogatories or document requests and required compliance within a reasonable time after the ruling.  *See Zulewski* v. *The Hershey Co.*, No. 4:11-cv-05117-KAW, Dkt. No. 223 (N.D. Cal. Dec. 3, 3012); *Carroll* v. *Wells Fargo & Co.*, No. 3:15-cv-02321-EMC (KAW), 2016 WL 4696852, at \*4 (N.D. Cal. Sept. 8, 2016).  The orders did not set a deadline for review and production of hundreds of thousands of documents within a matter of weeks, much less in a case that does not yet have a broader scheduling order.

*Third*, Plaintiff is incorrect that Defendants have been delaying production in this case.  Although Plaintiff made an initial document request on May 11, review and production of documents in response to such requests never starts immediately.  The parties need to negotiate search parameters, including custodians and search terms.  Defendants also worked here to collect emails and Slack messages from numerous custodians.  As Plaintiff notes, the parties did not finish negotiating the search protocol for Ginkgo custodians until September 21—just over a month ago—with some issues still to be decided (in particular, any unique terms required for Soaring Eagle custodians).  As is customary, Defendants' review of custodial documents began after the agreement on search parameters, not six months ago as Plaintiff asserts.  Moreover, given the significant time remaining for discovery under the case schedule negotiated by the parties, Defendants agreed to search terms that generated well over 300,000 hits to avoid further dispute over the terms.  Defendants would not have agreed to such significant volumes had they known that Plaintiff would expect review and production to be completed on an expedited schedule.  Plaintiff cannot change the ground rules for discovery after the fact.

*Fourth*, despite the recency of the parties' agreement on search parameters, Defendants have been proceeding with their review and production with reasonable speed.  Within four weeks of the agreement, Defendants had already made two productions of emails, comprising over 1,100 documents.  These productions included communications between Ginkgo and Soaring Eagle, in an effort to accommodate Plaintiff's request that Defendants prioritize documents about "due diligence" performed for the transaction between those entities.  Defendants have also made productions of other significant documents that Plaintiff asked to be prioritized, including documents previously produced to the government and minutes and materials from the Ginkgo and Soaring Eagle boards of directors.  In total, Defendants have produced over 12,000 pages of documents to date.  Defendants have made efforts to accommodate Plaintiff's requests throughout this process, including participating in biweekly check-in calls on which Plaintiff has provided guidance about which documents to prioritize.

Defendants have also begun a large-scale review of hundreds of thousands of emails and Slack messages using contract attorneys and have advised Plaintiff that rolling productions will be made as documents become available.  Plaintiff tries to turn Defendants'

4

efforts against them by arguing that a large number of contract attorneys can review documents quickly.  But Plaintiff's math ignores the many additional steps required to make productions after contract-attorney review, including quality control and privilege review by attorneys defending the case, as well as technical steps required to prepare productions.  This work often takes months after first-level review by contract attorneys.  Plaintiff also gives no explanation of why this case, which is not on an expedited schedule, merits the burdens of around-the-clock review—particularly as Thanksgiving and other holidays approach.

Defendants are willing to discuss with Plaintiff an overall schedule consistent with the precedent discussed above and submit that schedule before the December 5th conference.  In the meantime, Defendants will continue their review and rolling production. Defendants respectfully request that the Court deny the extraordinary relief that Plaintiff seeks.

5