**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff and the Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| SHARON BERNSTEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GINKGO BIOWORKS HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 4:21-cv-08943-KAW<br><br>**LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Judge:       Hon. Kandis A. Westmore<br>Courtroom:  4<br>Date:         May 16, 2024<br>Time:        1:30 p.m. |

**NOTICE OF MOTION AND MOTION**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 16, 2024, or on such other date as she may be heard, Lead Plaintiff Sharon Bernstein ("Lead Plaintiff") will appear at Courtroom 4, United States District Court for the Northern District of California -- Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, or remotely via Zoom or telephone as the Court may direct, and will and hereby moves for an order pursuant to Federal Rule of Civil Procedure 23(e)(1): (1) preliminarily approving the proposed Settlement of this Action; (2) provisionally certifying a class for purposes of effectuating the Settlement; (3) authorizing the retention of Strategic Claims Services as the Settlement Administrator; (4) approving the form and manner of giving notice of the proposed Settlement to the Class; and (5) setting a hearing date for considering final approval of the Settlement ("Settlement Hearing"), as well as scheduling various deadlines in connection with the Settlement. [1]  Alternately, because the motion is unopposed, Lead Plaintiff respectfully submits that the motion could also be decided on the papers.  This motion is supported by the following memorandum of points and authorities in support thereof, and the Stipulation and the exhibits thereto, which embody the terms of the proposed Settlement between the Parties, the previous filings and orders in this case, and any further representations as may be made by counsel at any hearing on this matter.

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning as defined in the Stipulation and Agreement of Settlement, dated as of April 4, 2024 ("Stipulation"), attached as Exhibit 1 to the Declaration of Brian O'Connell in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement ("O'Connell Decl.") submitted herewith.

# **TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................. i

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES .............................................................................. iv

STATEMENT OF THE ISSUES TO BE DECIDED ........................................... 1

I.    PRELIMINARY STATEMENT ................................................................ 2

II.   SUMMARY OF THE LITIGATION ......................................................... 2

III.  THE SETTLEMENT TERMS .................................................................. 4

IV.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS PROPER ........... 6

    A.  Lead Plaintiff and Her Counsel Have Adequately Represented the Class ............. 7

    B.  The Proposed Settlement Is the Product of Arm's Length Negotiations By Informed Counsel ................................................................................. 8

    C.  The Settlement Provides Fair, Reasonable and Adequate Relief to the Class ........ 9

        1.  The Strength of Lead Plaintiff's Case and Risks of Further Litigation Support Preliminary Approval ................................................ 9

        2.  The Amount of the Settlement Favors Preliminary Approval ............... 10

    D.  The Remaining Churchill and Rule 23(e)(2) Factors Support Approval .............. 12

        1.  Plaintiff's Counsel Has Conducted Sufficient Discovery to Inform the Settlement ................................................................................. 12

        2.  The Experience and Views of Counsel Also Support Preliminary Approval ..................................................................................... 12

        3.  The Terms of the Proposed Award of Attorneys' Fees Are Reasonable .................................................................................. 13

        4.  The Only Supplemental Agreement Has Been Identified ..................... 14

        5.  The Proposed Settlement does not unjustly favor any Class Member, and the Proposed Plan of Allocation is fair and reasonable ................... 14

E.   The Proposed Settlement and Related Submissions are Consistent with the Northern District of California Class Action Guidelines........................................15

V.   CERTIFICATION OF THE CLASS IS WARRANTED.....................................................18

A.   The Class Meets the Requirements of Rule 23(a) ...................................18

B.   The Class Meets the Requirements of Rule 23(b)(3)............................20

VI.   THE NOTICE AND PLAN FOR NOTIFYING THE CLASS WARRANT APPROVAL ....................................................................................................20

VII.   PROPOSED SCHEDULE OF EVENTS.........................................................23

VIII.   CONCLUSION ...................................................................................24

CERTIFICATE OF SERVICE ...........................................................................26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) .................................................................................................9

*Allen v. Bedolla*,
    787 F.3d 1218 (9th Cir. 2015) ..............................................................................................6

*Anders v. Cal. State Univ.*,
    No. 23-15265, 2024 WL 177332 (9th Cir. Jan. 17, 2024).....................................................20

*Betorina v. Randstad US, L.P.*,
    No. 15-CV-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ..................................9

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...............................................................................................19

*Bright v. Dennis Garberg & Assocs., Inc.*,
    Case No. 2:10-cv-7933-AHM (JCx), 2011 WL 13150437 (C.D. Cal. Aug. 24, 2011)...........12

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir.2004) ..................................................................................................7

*Cooper v. Thoratec Corp.*,
    Case No. 4:14-cv-00360-CW, ECF No. 137 (N.D. Cal. June 25, 2019) ...............................14

*Cotter v. Lyft, Inc.*,
    176 F. Supp. 3d 930 (N.D. Cal. 2016) ..................................................................................10

*Cottle v. Plaid Inc.*,
    340 F.R.D. 356 (N.D. Cal. 2021)............................................................................................7

*Dunakin v. Quigley*,
    No. 2:14-cv-567-JLR, 2017 WL 123011 (W.D. Wash. Jan. 10, 2017) ..................................8

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005)..............................................................................................................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
    563 U.S. 804 (2011)..............................................................................................................20

*Fleming v. Impax Labs, Inc.*,
    Case No. 16-cv-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) .........................10

*Gonzales v. Arrow Fin. Servs. LLC*,
    489 F. Supp. 2d 1140 (S.D. Cal. 2007)..................................................................................19

*Gonzales v. Arrow Fin. Servs. LLC*,
    660 F.3d 1055 (9th Cir. 2011) ................................................................19

*Gragg v. Orange Cab Co.*,
    No. C12-0576RSL, 2017 WL 785170 (W.D. Wash. Mar. 1, 2017) ...........................8

*Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020) ................................................................8

*Hefler v. Wells Fargo & Co.*,
    Case No. 16-cv-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018).................5, 12

*Hefler v. Wells Fargo & Co.*,
    Case No. 16-cv-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .................8, 9

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ............................................................5, 6, 16

*Hunt v. Bloom Energy*,
    Case No. 19-cv-02935-HSG, 2023 WL 7167118 (N.D. Cal. Oct. 31, 2023) ..................12

*IBEW Local 697 v. Int'l Game Tech.*,
    No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...........11, 12

*Ikuseghan v. Multicare Health Sys.*,
    No. 3:14-cv-5539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016)....................10

*In re Aqua Metals, Inc. Sec. Litig.*,
    Case No. 17-cv-07142-HSG, 2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ...................11

*In re Biolase, Inc. Sec. Litig.*,
    Case No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318
    (C.D. Cal. Oct. 13, 2015) ...............................................................11, 15

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ..........................................................6, 7, 9, 13

*In re Celera Corp. Sec. Litig.*,
    Case No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ...................10

*In re Charles Schwab Corp. Sec. Litig.*,
    2011 WL 1481424 (N.D. Cal. Apr. 19, 2011) .........................................................9

*In re Cooper Cos. Inc. Sec. Litig.*,
    254 F.R.D. 628 (C.D. Cal. 2009) ................................................................20

*In re Extreme Networks, Inc. Sec. Litig.*,
    Case No. 15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)...................15, 23

*In re Fibrogen, Inc.*,
   No. 3:21-cv-02623-EMC, ECF No. 58 (N.D. Cal. Feb. 13, 2024)...........................................8

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................................................................15

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .................................................................................................6

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)...............................................................................17

*In re LDK Solar Sec. Litig.*,
   255 F.R.D. 519 (N.D. Cal. 2009)........................................................................................20

*In re Lyft, Inc. Sec. Litig.*,
   Case No. 19-cv-02690-HSG, 2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ......................12

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................................................13, 14

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ..................................21

*In re Splunk Inc. Sec. Litig.*,
   Case No. 20-cv-08600-JST, 2024 WL 923777 (N.D. Cal. Mar. 4, 2024)..............................11

*In re Twitter Inc. Sec. Litig.*,
   326 F.R.D. 619 (N.D. Cal. 2018)........................................................................................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, ("Volkswagen I")
   MDL No. 2672 CRB (JSC), 2018 WL 6198311 (N.D. Cal. Nov. 28, 2018).............5, 6, 12, 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, ("Volkswagen II")
   MDL No. 2672 CRB (JSC), 2019 WL 2077847 (N.D. Cal. May 10, 2019) .......................7, 8

*In re Zynga Inc. Sec. Litig.*,
   Case No. 12-cv-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..........................15

*Kendall v. Odonate Therapeutics, Inc.*,
   No. 3:20-CV-01828-H-LL, 2022 WL 188364 (S.D. Cal. Jan. 18, 2022)................................8

*Kendall v. Odonate Therapeutics, Inc.*,
   Case No. 3:20-cv-01828-H-LL, 2022 WL 1997530 (S.D. Cal. June 6, 2022) ......................11

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ..........................................................................................20, 21

*Lerwill v. Inflight Motion Pictures, Inc.*,
   582 F.2d 507 (9th Cir. 1978) ..........................................................................................19, 20

*Luna v. Marvell Tech. Grp.*,
    2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ........................................................10

*Nitsch v. DreamWorks Animation SKG Inc.*,
    Case No. 14-cv-04062-LHK, 2017 WL 399221 (N.D. Cal. Jan. 19, 2017) ...........................13

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ..............................................................................7

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .............................................................................13

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
    2021 WL 229310 (N.D. Cal. Jan. 21, 2021) ..........................................................19

*Quiruz v. Specialty Commodities, Inc.*,
    Case No. 17-cv-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020)..........................12

*Razilov v. Nationwide Mut. Ins. Co.*,
    No. 01-CV-1466-BR, 2006 WL 3312024 (D. Or. Nov. 13, 2006)..................................17

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ......................................................................6, 8, 10

*Salazar v. Midwest Servicing Grp., Inc.*,
    Case No. 17-cv-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ........................9

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010) .............................................................................20

*Sheikh v. Tesla, Inc.*,
    Case No. 17-cv-02193-BLF, 2018 WL 5794532 (N.D. Cal. Nov. 2, 2018)...........................12

*Todd v. STAAR Surgical Co.*,
    No. CV14-5263 MWF (GJSx), 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) .................8, 17

*Twegbe v. Pharmaca Integrative Pharmacy, Inc.*,
    No. CV 12-5080 CRB, 2013 WL 3802807 (N.D. Cal. July 17, 2013)..................................19

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ............................................................................14

*Young v. LG Chem Ltd.*,
    783 F. App'x 727 (9th Cir. Sept. 4, 2019) ..................................................................6

*Zaller v. Fred's, Inc., et al.*,
    No. 2:19-cv-02415-SHL (W.D. Tenn.)....................................................................16

**Rules & Regulations**

Fed. R. Civ. P. 23(a) ........................................................................................20

Fed. R. Civ. P. 23(a)(1) ...................................................................................18

Fed. R. Civ. P. 23(b)(3) ...................................................................................20

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................20, 21

Fed. R. Civ. P. 23(e) ....................................................................................6, 13

Fed. R. Civ. P. 23(e)(1) ......................................................................................6

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................6, 18, 20

Fed. R. Civ. P. 23(e)(2) ..............................................................................6, 7, 12

Fed. R. Civ. P. 23(e)(2)(A) ..............................................................................6, 7

Fed. R. Civ. P. 23(e)(2)(B) ................................................................................6

Fed. R. Civ. P. 23(e)(2)(C)(i) .............................................................................9

Fed. R. Civ. P. 23(e)(2)(C)(ii) .........................................................................14

Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................................14

Fed. R. Civ. P. 23(e)(2)(D) .............................................................................14

Fed. R. Civ. P. 23(e)(3) ...................................................................................14

Fed. R. Civ. P. 23(h)(1) ...................................................................................21

**Statutes**

15 U.S.C. § 77z-1(a)(4) ...................................................................................17

15 U.S.C. § 78u-4(a)(4) ...............................................................................5, 17

Section 11 of the Securities Act of 1933 ................................................. *passim*

Section 15 of the Securities Act of 1933 ......................................................3, 16

Section 10(b) of the Securities Exchange Act of 1934 ............................. *passim*

Section 14 of the Securities Exchange Act of 1934 .........................................................................11

Section 14(a) of the Securities Exchange Act of 1934 ..........................................................3, 15, 16

Section 20(a) of the Securities Exchange Act of 1934 ...............................................................3, 16

**Additional Citations**

NERA, Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review
(Jan. 23, 2024)
https://www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-
Year_Sec_Trends_0123.pdf.........................................................................................................11

**STATEMENT OF THE ISSUES TO BE DECIDED**

1.      Whether the proposed $17,750,000 Settlement is within the range of fairness, reasonableness, and adequacy to warrant preliminary approval and the dissemination of notice of its terms to members of the proposed Class.

2.      Whether a Class should be preliminarily certified for purposes of effectuating the Settlement.

3.      Whether the proposed form of settlement notice and plan of dissemination to the Class should be approved.

4.      Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's anticipated motion for an award of attorneys' fees and litigation expenses, and an award to Lead Plaintiff.

I.      PRELIMINARY STATEMENT

The proposed Settlement resolves all claims asserted against Defendants[2] in exchange for a non-reverting cash payment of $17,750,000.  Lead Plaintiff now requests that the Court preliminarily approve the Settlement.

The Settlement was achieved only after more than two years of highly contested litigation, an arm's-length mediation session before an experienced mediator, Michelle Yoshida, and several rounds of follow-up negotiations.  Although the mediation was not initially successful, the subsequent negotiations ultimately resulted in a mediator's proposal to settle all claims at the Settlement Amount, which both sides accepted.  If approved, the proposed Settlement will recover a far greater proportion of estimated damages for the Class than usually occurs in securities fraud class actions.  As set forth below, the Settlement is a tremendous result that falls well within the range of possible approval.

Lead Plaintiff also requests certification of a Class for settlement purposes and approve the form and substance of the Notice, Proof of Claim, Summary Notice, and Postcard Notice appended as Exhibits A-1, A-2, A-3, and A-4, respectively, to the Stipulation.  Lead Plaintiff also seeks the Court's approval of Strategic Claims Services ("SCS") as Settlement Administrator and the means and methods for disseminating notice of the Settlement, which satisfies due process, the Federal Rules of Civil Procedure, and the Private Securities Litigation Reform Act of 1995.

The Settlement meets the standards for preliminary approval because it is likely this Court will be able to find that the Settlement is fair, reasonable, and adequate under Rule 23(e).  By granting preliminary approval, Lead Plaintiff will be able to notify the Class and solicit claims, requests for exclusion, and objections, at which point the Court will be able to consider whether to finally approve the Settlement.

II.      SUMMARY OF THE LITIGATION

On November 18, 2021, the initial complaint was filed in this Action, alleging violations of

---

[2] "Defendants" refers to Ginkgo Bioworks Holdings, Inc. ("Ginkgo" or "the Company"), Harry E. Sloan, Eli Baker, Scott M. Delman, Joshua Kazam, Isaac Lee, Timothy Leiweke, Dennis A. Miller, Laurence E. Paul, Jason Kelly, Reshma Shetty, Arie Belldegrun, Marijn Dekkers, Christian Henry, Reshma Kewalramani, Shyam Sankar, and Anna Marie Wagner.  "Individual Defendants" refers to each natural person Defendant, which excludes Ginkgo.

Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act") against Ginkgo, its CEO, Jason Kelly, its CFO, Mark Dmytruk, and Harry E. Sloan, CEO and Chairman of the blank check company (Soaring Eagle Acquisition Corp.) with which Ginkgo merged to access public markets. ECF No. 1.  On March 22, 2022, the Parties consented to referring this Action to a magistrate judge for all purposes, and on March 25, 2022, the Action was referred to Magistrate Judge Kandis A. Westmore.  *See* ECF Nos. 30, 32, 35.

Also on March 25, 2022, the Court appointed Ms. Bernstein as the Lead Plaintiff in this Action and approved Pomerantz LLP as lead counsel.  ECF No. 31.  Thereafter, on May 26, 2022, Lead Plaintiff filed a First Amended Complaint against Ginkgo, Jason Kelly, and Harry E. Sloan, and 14 other Individual Defendants.[3]  *See* ECF No. 45.  The First Amended Complaint also added claims under Section 14(a) of the Exchange Act, and Sections 11 and 15 of the Securities Act of 1933 ("Securities Act").  Later, on July 18, 2022, Lead Plaintiff filed a Second Amended Complaint to correct scrivener's errors.  ECF No. 58; *see also* ECF No. 57.  The Second Amended Complaint alleged that Defendants used a negligently prepared Proxy/Registration Statement to: (1) register Ginkgo shares to effect its initial public offering; (2) solicit shareholder approval for the "de-SPAC" merger that Ginkgo used to go public; and (3) dissuade shareholders in the prior SPAC entity, Soaring Eagle, from exercising their right to redeem shares for cash.  .  Plaintiffs allege the Proxy/Registration Statement misrepresented circular related-party deals, overstated nonrelated-party revenue, and misrepresented certain related parties as independent.  Lead Plaintiff also alleged that a subset of Defendants violated Section 10(b) by making misrepresentations with fraudulent intent, and that shares prices dropped $1.39 after a short seller named Scorpion Capital published a report disclosing the information withheld from the Proxy/Registration Statement.

Defendants moved to dismiss the Second Amended Complaint on July 21, 2022.  ECF Nos. 61, 62.  On March 10, 2023, the Court entered an order dismissing the Securities Act claims because certain facts regarding traceability argued in the briefs were not formally alleged, and sustaining the

---

[3] Lead Plaintiff voluntarily dismissed Mark Dmytruk from the action shortly after filing the First Amended Complaint.  *See* ECF No. 46.

Exchange Act claims.  ECF No. 81.  Lead Plaintiff filed a Third Amended Complaint on March 15, 2023, to add certain traceability allegations to cure the aforementioned Securities Act deficiencies.  *See* ECF No. 82.  The Third Amended Complaint ("Complaint") was otherwise identical to the Second Amended Complaint.  Thereafter, Defendants answered the complaint, *see* ECF No. 84.  In discovery, the Parties exchanged initial disclosures, engaged in substantial written discovery, served document requests, and Lead Plaintiff issued subpoenas to at least nine third parties for additional documents.  As part of this process, Lead Plaintiff reviewed over 13,000 documents (comprising approximately 145,000 pages), which informed her of the strengths and weaknesses of the claims at issue.

On January 30, 2024, the Parties engaged in a mediation before an experienced mediator familiar with securities class actions, Michelle Yoshida.  Although this mediation session did not result in an immediate resolution, the Parties continued their negotiations with Ms. Yoshida's assistance.  After several additional rounds of negotiation, Ms. Yoshida issued a mediator's proposal, which both sides accepted, resulting in the Settlement.

### III.    THE SETTLEMENT TERMS

The Settlement requires Defendants to pay, or cause to be paid, $17.75 million into the Escrow Account, which amount, plus interest that accrues thereon, comprises the Settlement Fund.  Stipulation I.GG, II.A.  Costs of Notice to the Class and settlement administration ("Settlement Administration Costs") will be paid from the Settlement Fund.  *Id.*, III.A. Lead Plaintiff proposes a nationally recognized class action settlement administrator, SCS, be retained subject to the Court's approval.  SCS was chosen following a competitive bidding process and careful review of proposals from several reputable settlement administrators.  After reviewing the bids from each administrator, Lead Counsel concluded that SCS, because of its experience, the merits of the bid, and the quality of its work in prior engagements for Lead Counsel, is best suited to execute the settlement administration in this Action.  Lead Counsel respectfully requests that the Court approve its selection.  Further information regarding SCS, its processes, security measures, and anticipated claims rates is provided in the Declaration of Paul Mulholland, its President ("Mulholland Decl.") submitted herewith.

The proposed notice plan and plan for claims processing is discussed below in §§IV(E) and VI, and in the Declaration of Brian P. O'Connell ("O'Connell Decl.") submitted herewith.  The Notice

and Summary Notice provide that Lead Counsel will move for final approval of the Settlement and: (a) an award of attorneys' fees in the amount of no more than 25% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Action not to exceed $325,000; (c) interest on such fees and expenses at the same rate and for the same period as is earned by the Settlement Fund; and (d) an award to Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(4) for her time and expenses incurred in representing the Class.  The Notice explains that such fees and expenses shall be paid from the Settlement Fund.

Once Settlement Administration Costs, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining Net Settlement Fund shall be distributed pursuant to the Court-approved Plan of Allocation (set forth in the Notice) to Authorized Claimants who are entitled to a distribution of at least $20.00.  Any amount remaining following the distribution shall be redistributed in an economically feasible manner.  The Plan of Allocation treats all Class Members equitably based on the timing and amount of their transactions in Ginkgo common stock, and that of its predecessor, Soaring Eagle.

The Settling Parties have entered into a Supplemental Agreement, which provides that if prior to the Settlement Hearing, requests for exclusion from the Class by Persons who would otherwise be Class Members exceeds a certain threshold, Defendants shall have the option (but not the obligation) to terminate the Settlement. Stipulation X.G.  This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement.  *See, e.g.*, *Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018).

In exchange for the Settlement consideration, Class Members will release all known or unknown claims that (i) were asserted in the Third Amended Complaint or a prior complaint; (ii) could have been asserted in the Third Amended Complaint; or (iii) relate to the sale or purchase of Ginkgo or its predecessor during the time period at issue, or the Proxy/Registration Statement at issue, in the Third Amended Complaint.  Because the scope of the release "is limited to claims that relate to both the complaint's factual allegations and to the purchase or ownership of" the Ginkgo securities in question, it "ensure[s] that 'the released claim[s] [are] based on the identical factual predicate as that underlying the claims in the settled class action.'"  *In re Volkswagen "Clean Diesel" Mktg., Sales*

*Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*") (alterations in original) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)).[4]  Lastly, under the terms of the Stipulation, there is no clear sailing agreement or reversion to Defendants.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS PROPER

The Ninth Circuit has repeatedly noted that there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citation and quotation omitted); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (recognizing that public policy strongly favors settlements to resolve disputes, "particularly where complex class action litigation is concerned"); *Young v. LG Chem Ltd.*, 783 F. App'x 727, 737 (9th Cir. Sept. 4, 2019) (unpublished) (same). Moreover, courts "ha[ve] long deferred to the private consensual decision of the parties" to settle cases like this one. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Federal Rule of Civil Procedure 23(e) requires judicial approval for settlement of claims brought as a class action. Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) provides that a proposed class settlement may be approved "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In making this assessment, the Court must consider whether Lead Plaintiff and Class Counsel: (i) "have adequately represented the class;" (ii) "the proposal was negotiated at arm's length;" (iii) "the relief provided for the class is adequate;" and (iv) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D).  In addition, the Ninth Circuit uses the following "*Churchill*" factors" for preliminary approval, several of which overlap with Rule 23(e)(2):

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

---

[4] All internal citations and quotations omitted, unless stated otherwise, and all emphasis is added.

completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.2004)). "The relative degree of importance to be attached to any particular factor will depend upon the unique facts and circumstances presented by each individual case." *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 372 (N.D. Cal. 2021) (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982)) (discussing both the *Churchill* factors and Rule 23(e)(2) requirements).

All factors applicable at this stage support a finding that the Settlement is likely to be approved after the Settlement Hearing.[5]

### A.  Lead Plaintiff and Her Counsel Have Adequately Represented the Class

Rule 23(e)(2)'s first two factors look "to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) Advisory Committee notes to 2018 amendment. This Settlement bears all of the hallmarks of a procedurally fair resolution under Rule 23(e)(2).

Rule 23(e)(2)(A) asks whether the plaintiff and his counsel have adequately represented the class. This factor overlaps with the Ninth Circuit's *Churchill* factor regarding "the extent of discovery completed and the stage of the proceedings." As explained above, Lead Plaintiff and her counsel satisfy this factor as they have diligently prosecuted this Action for two-and-one-half years. *See supra*, §§I-II.  They have succeeded in investigating the underlying claims, including interviews with numerous former employees and obtaining a powerful affidavit from a major source of the Scorpion Capital report, expanding liability by adding Section 11 claims to this Action, defeating Defendants' motion to dismiss, and gathering favorable evidence of liability in discovery.

Given Lead Plaintiff's and Class Counsel's demonstrated prosecution of the Action, it is without question that they have adequately represented the Class. *See In re Volkswagen "Clean*

---

[5] The final two *Churchill* factors are not applicable at this stage, because there is no governmental participant (and notice under the Class Action Fairness Act has not yet issued to governmental entities) and class members have yet to receive notice of the settlement.

*Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) ("*Volkswagen II*") (finding securities class settlement to be procedurally fair where "Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6, *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (unpublished) (granting final approval and stating that at preliminary approval "the Court found that Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation" and that "given this prosecution of the action, counsel 'possessed "sufficient information to make an informed decision about settlement"'").

## B. The Proposed Settlement Is the Product of Arm's Length Negotiations By Informed Counsel

The proposed settlement is the result of arm's-length negotiations facilitated by an experienced mediator, Michelle Yoshida, after more than two years of vigorous litigation and extensive discovery. "A presumption of fairness and adequacy attaches to a class action settlement reached in arm's-length negotiations by experienced class counsel after meaningful discovery." *Dunakin v. Quigley*, No. 2:14-cv-567-JLR, 2017 WL 123011, at *2 (W.D. Wash. Jan. 10, 2017); *see also Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). That the negotiations were aided by the "participation of an experienced mediator" also matters. *Gragg v. Orange Cab Co*., No. C12-0576RSL, 2017 WL 785170, at *1 (W.D. Wash. Mar. 1, 2017) (granting preliminary approval where settlement "[a]greement resulted from extensive arm's-length negotiations, with participation of an experienced mediator"). As another court in this District recently noted, "Ms. Yoshida is regularly recognized as an experienced mediator." *In re Fibrogen, Inc.*, No. 3:21-cv-02623-EMC, ECF No. 58 at *3 (N.D. Cal. Feb. 13, 2024); *see also Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-CV-01828-H-LL, 2022 WL 188364, at *6 (S.D. Cal. Jan. 18, 2022) (noting that mediation before Ms. Yoshida resulted in "serious, informed, and non-collusive negotiations"); *Todd v. STAAR Surgical Co.*, No. CV14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (describing Ms. Yoshida as an "experienced mediator").

Here, the Parties settled only after a mediator's proposal was evaluated and ultimately accepted

by the Parties after several weeks of arm's length negotiation.  None of the indicia of collusion were present.  *See In re Bluetooth*, 654 F.3d at 947.  Only a standard benchmark fee will be sought; the Class will receive the majority of the Settlement Amount as a monetary distribution; no *cy pres* is anticipated; there is no "clear sailing" arrangement; any remaining funds (for example from uncashed checks) will not revert to defendants; and the Plan of Allocation calls for the Net Settlement Fund to be allocated to Lead Plaintiff and other Class Members pursuant to the same *pro rata* formula.  In short, the Settlement is fair, reasonable, adequate, and a product of arm's-length negotiations.

### C.  The Settlement Provides Fair, Reasonable and Adequate Relief to the Class

#### 1.  The Strength of Lead Plaintiff's Case and Risks of Further Litigation Support Preliminary Approval

Rule 23(e)(2)(C)(i) and the first three *Churchill* factors concern the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and the specific risks related to class certification.  These factors are often considered together.  *Betorina v. Randstad US, L.P.*, No. 15-CV-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017).  Here, they unquestionably support preliminary approval.  Securities cases, like the present one, "'are highly complex and … securities class litigation is notably difficult and notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13.  "[P]rosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery."  *See, e.g.*, *In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *5 (N.D. Cal. Apr. 19, 2011); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.") (O'Connor, J, sitting by designation).  This case is no different.

While Lead Plaintiff remains confident in her ability to ultimately prove the alleged claims, further litigation – including a trial – is always a risky proposition.  *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, Case No. 17-cv-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval").  To start, Defendants have vigorously argued that the Proxy/Registration Statement

---

contained no misrepresentations, they did not act with scienter, and that no losses could accrue as a result of any omission after a short seller report was published on October 6, 2021. Risks of proving falsity, scienter, and loss causation posed significant obstacles at summary judgment or trial. *See, e.g.*, *In re Celera Corp. Sec. Litig.*, Case No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial.... Lead Plaintiff would risk recovering nothing without a settlement."); *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial). If Defendants prevailed on any of these arguments, damages would be substantially reduced or eliminated.

Further, even if Lead Plaintiff won at trial, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966; *see also Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-5539-BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant delay.... Absent the proposed Settlement, Class Members would likely not obtain relief, if any, for a period of years.").

The third *Churchill* factor, concerning the risk of maintaining class certification, also favors approval. Lead Plaintiff was prepared to move for class certification at the time of the Settlement, and believes she could satisfy the requirements for certification. However, even if a class was initially certified, Defendants could have moved to decertify or shorten the Class Period. *See, e.g.*, *Fleming v. Impax Labs, Inc.*, Case No. 16-cv-06557-HSG, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) ("[T]here is always a risk of decertification – especially when, as here, Plaintiffs must overcome causation and damages defenses."). Accordingly, this factor supports preliminary approval.

### 2. The Amount of the Settlement Favors Preliminary Approval

Courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016). Here, the proposed Settlement provides for a certain and immediate all-cash Settlement Fund of $17,750,000. This meaningful recovery for the Class warrants preliminary approval.

1    While the total amount of damages is complex and subject to genuine dispute amongst the

2    Parties, the proposed Settlement provides a far greater recovery than most securities fraud class actions

3    and easily falls within a range of recovery that is approved.  Lead Plaintiff, after consulting with her

4    damages expert, estimates that damages for the Section 10(b) claims are $39.8 million, and Section 11

5    damages after accounting for negative causation are $47.2 million.  These damages are overlapping,

6    not cumulative.  Lead Plaintiff does not estimate that the Section 14 claims provide any damages that

7    are not fully accounted for within the estimates provided under Section 10(b) and Section 11.

8    Accordingly, the Settlement represents a recovery of approximately 44.56% for the Section

9    10(b) claims, and 37.6% for the Section 11 claims, which is an excellent recovery for members of the

10    Class, especially given the real risk of a smaller recovery (if any) at trial and is in line with settlement

11    amounts in similar cases.  This recovery vastly exceeds the 1.8% median settlement value in 2023 for

12    all securities class actions.  *See* NERA, Recent Trends in Securities Class Action Litigation: 2022 Full-

13    Year Review at p. 23 (Jan. 23, 2024),[6] and recoveries identified as "fair and reasonable" in this Circuit.

14    *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, Case No. 20-cv-08600-JST, 2024 WL 923777, at *6 (N.D. Cal.

15    Mar. 4, 2024) (settlement amount "between approximately 5% and 20.5% of the realistic maximum

16    damages" for a securities class action and "fair and reasonable"); *Kendall v. Odonate Therapeutics,*

17    *Inc.*, Case No. 3:20-cv-01828-H-LL, 2022 WL 1997530, at *5 (S.D. Cal. June 6, 2022) (approving

18    settlement of securities class claims that represented "approximately 3.49% of the maximum estimate

19    damages, which is higher than the 2021 median recovery in securities class actions"); *In re Aqua*

20    *Metals, Inc. Sec. Litig.*, Case No. 17-cv-07142-HSG, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022)

21    (settlement that "constitutes 7.3% of the most likely recoverable damages" was "is in line with

22    comparable class action settlements"); *In re Biolase, Inc. Sec. Litig.*, Case No. SACV 13-1300-JLS

23    (FFMx), 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (settlement of "approximately 8%" of

24    damages "equals or surpasses the recovery in many other securities class actions"); *IBEW Local 697*

25    *v. Int'l Game Tech.*, No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19,

26

27    ───────────────

28    [6] Available at https://www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-Year_Sec_Trends_0123.pdf

2012) (approving settlement that represented "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered"); *In re Lyft, Inc. Sec. Litig.*, Case No. 19-cv-02690-HSG, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (settlement representing 3.2% to 4.7% of estimated maximum damages for Section 11 claims was "well within the range of possible approval"); *see also Hunt v. Bloom Energy*, Case No. 19-cv-02935-HSG, 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (approving 5.2% of maximum estimated recovery for Section 11 claims). By any measure, the Settlement provides an extraordinary benefit to the Class.

**D. The Remaining *Churchill* and Rule 23(e)(2) Factors Support Approval**

### 1. Plaintiff's Counsel Has Conducted Sufficient Discovery to Inform the Settlement

Prior to the mediation, Lead Plaintiff and her counsel oversaw an extensive private investigation involving the interviews of more than a dozen former employees, reviewed approximately 145,000 pages of documents, consulted with damages experts, and obtained the affidavit testimony of a primary source for the Scorpion Capital report that was central to the claims in the Third Amended Complaint. Thus, they had more than adequate information to "reasonably evaluate their … positions" in mediation. *Bright v. Dennis Garberg & Assocs., Inc.*, Case No. 2:10-cv-7933-AHM (JCx), 2011 WL 13150437, at *2 (C.D. Cal. Aug. 24, 2011) (granting preliminarily approval). Courts have granted preliminary approval with far less developed discovery. *See, e.g.*, *Hefler*, 2018 WL 4207245, at *10 (granting preliminary approval where parties were "at the outset of formal discovery"); *Sheikh v. Tesla, Inc.*, Case No. 17-cv-02193-BLF, 2018 WL 5794532, at *5 (N.D. Cal. Nov. 2, 2018) (approving settlement where "[l]ittle formal discovery had been completed at the time of settlement" but lead plaintiffs' counsel had conducted pre-suit investigation, filed two amended pleadings, and obtained informal discovery). Accordingly, this *Churchill* factor also weighs in favor of preliminary approval.

### 2. The Experience and Views of Counsel Also Support Preliminary Approval

It is well-settled that courts grant "considerable weight" to the opinion of experienced counsel supporting settlement after legitimate, arm's-length negotiation. *See Quiruz v. Specialty Commodities, Inc.*, Case No. 17-cv-03300-BLF, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020). "[I]ndeed a

presumption of fairness is usually appropriate if class counsel recommends the settlement after arm's-length bargaining." *Volkswagen I*, 2018 WL 6198311, at *5. Here, Lead Plaintiff is represented by experienced counsel who focus their practices on securities litigation, and have negotiated numerous other substantial class action settlements nationwide. *See* Firm Resume, ECF No. 11-7. At the time of the mediation, Lead Counsel had a firm understanding of the legal and factual strengths and weaknesses of the claims. *Supra* §II. In this case, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).[7] Throughout the Action and settlement negotiations, Defendants were zealously represented by experienced counsel at Wachtell, Lipton, Rosen & Katz LLP and Morrison & Foerster LLP. Such representation dispels any suggestion that a settlement process was infected with collusion or was otherwise procedurally defective. *See Nitsch v. DreamWorks Animation SKG Inc.*, Case No. 14-cv-04062-LHK, 2017 WL 399221, at *2 (N.D. Cal. Jan. 19, 2017) (granting approval where there were arm's length negotiations among experienced counsel "on both sides").

### 3. The Terms of the Proposed Award of Attorneys' Fees Are Reasonable

Although no fee request has yet been submitted, the Notice informs Class Members that Class Counsel plans to file a fee request seeking up to a "benchmark" fee of 25% of the Settlement Amount, which has been recognized as a "benchmark" rate in this Circuit. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Rule 23(e)(2)(c)(iii) recognizes that a proposed fee request will be relevant to ascertaining the fairness of the Settlement. Where, as here, "a settlement produces a common fund for the benefit of the entire class," the Ninth Circuit permits courts to "calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record for any special circumstances justifying a departure." *In re Bluetooth*, 654 F.3d at 942. This amount is also in line with counsel's lodestar. As of April 5, 2024, counsel for Lead Plaintiff have devoted over 2,500 hours to prosecuting this Action, with a lodestar value of over $1.73

---

[7] This analysis is consistent with the first two factors listed in Rule 23(e)(2), which examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Advisory Committee Notes to 2018 Rule 23(e) amendments.

million.[8]  *See* O'Connell Decl., ¶¶13-15.  This results in a multiplier of 2.56, which is well-within the range regularly approved in this Circuit.  *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 & n.6 (9th Cir. 2002) (affirming a 3.65 multiplier and noting that multipliers from 1.00 to 4.00 were commonly approved).  The lodestar will modestly grow and the multiplier modestly diminish as Settlement work continues.

In addition, the Notice informs Class Members that Class Counsel plans to seek litigation expenses not to exceed $325,000.  These expenses will be itemized in its Fee and Expense Application.  The amount of these expenses are in line with those commonly approved in this District, and the expenses relate to commonly-reimbursed items such as expert costs, ediscovery costs, and mediation fees.  *See, e.g.*, *Omnivision.*, 559 F. Supp. 2d at 1049 (approving litigation costs of $560,489.90, plus interest, from settlement amount of $13,750,000); *see also Cooper v. Thoratec Corp.*, Case No. 4:14-cv-00360-CW, ECF No. 137 (N.D. Cal. June 25, 2019) (awarding litigation expenses of $392,445.81, plus interest, from settlement amount of $11,900,000).

### 4.  The Only Supplemental Agreement Has Been Identified

Rule 23(e)(2)(C)(iv) and Rule 23(e)(3) require identification of any other agreement made in connection with the proposed Settlement.  Here, the only such agreement is a standard agreement pertaining to opt outs, that is identified.  *See supra* at 5.

### 5.  The Proposed Settlement does not unjustly favor any Class Member, and the Proposed Plan of Allocation is fair and reasonable.

In addition to the settlement amount, the Court must assess whether a proposed settlement "treats class members equitably relative to each other" under Rule 23(e)(2)(D), and whether the proposed methods for distributing "relief" to class members will be "effective" under Rule 23(e)(2)(C)(ii).  Put another way, the Court must determine whether the Plan of Allocation satisfies the applicable requirements.  "Approval of a plan of allocation of settlement proceeds in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate."  *Omnivision,* 559 F. Supp. 2d at 1045.  A plan of allocation

---

[8] Class Counsel will expend more hours as it advances the Settlement.  A final accounting will be provided in its Fee and Expense Application to be filed prior to the Settlement Hearing.

"need only have a reasonable, rational basis" to be deemed fair, reasonable, and adequate under this standard. *In re Heritage Bond Litig.*, 2005 WL1594403, at *11 (C.D. Cal. June 10, 2005).

The proposed Plan of Allocation meets this standard. It was formulated in close consultation with Lead Plaintiff's damages experts and treats all Class members equitably. It provides for recovery for shares purchased between May 11, 2021 and October 5, 2021 under Section 10(b), on a *pro rata* basis based on the Class Member's recognized loss, which incorporates a 90-day lookback period, the advice of Lead Plaintiff's experts, and the principles of economic loss articulated by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). It also calculates Section 11 damages, based on the statutory formula while accounting for the significant negative causation defense that would be available to Defendants at trial.[9] To avoid duplication, the Plan of Allocation provides that a Class member will receive the greater of her Section 11 <u>or</u> Section 10(b) damages. Overall, the Plan of Allocation provides for customary *pro rata* distribution of the Net Settlement Fund among all eligible Class Members who have submitted a valid Proof of Claim. These features are standard in securities class action plans of allocation, and plans with these elements are routinely held to be fair and reasonable. *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, Case No. 15-cv-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019); *In re Zynga Inc. Sec. Litig.*, Case No. 12-cv-04007-JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015); *Biolase,* 2015 WL 12720318, at *5.

**E. The Proposed Settlement and Related Submissions are Consistent with the Northern District of California Class Action Guidelines**

Lead Plaintiff has complied with the Northern District of California's Procedural Guidance for Class Action Settlements in documenting the Stipulation and Notice, and preparing these moving papers. Specific considerations are discussed in more detail below.

**There is no difference between the Class and the classes identified in the Operative Complaint**

As explained in more detail in §V below, the Class covered in the proposed Settlement is consistent with the class and claims identified in the operative Third Amended Complaint.

---

[9] Section 14(a) damages fully overlap Section 11 and Section 10(b) damages. *See supra* at 11, 17. Therefore, to avoid redundancy, they are not separately calculated in the Plan of Allocation.

**The scope of the releases is consistent with the Complaint**

The Stipulation provides for Lead Plaintiff and Class Members to release "Released Plaintiffs' Claims" as against "Released Defendants' Parties." *See* Stipulation ¶¶I.Y, I.Z.  The Released Plaintiffs' Claims include claims: "(i) asserted in the Third Amended Complaint; (ii) could have asserted in any forum that arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint or any previous complaint in the Action; or (iii) that relate to the purchase, acquisition, conversion, holding, redemption, or retention of Ginkgo's publicly traded securities (and those of Ginkgo's predecessor, SRNG) during the period from May 11, 2021 through October 5, 2021, or pursuant or traceable to the Proxy/Registration Statement." *Id.*  This release is therefore no broader than the factual predicate of the underlying claims, and consistent with this Circuit's precedent. *See, e.g.*, *Hesse,* 598 F.3d at 590 ("we have held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement.").

**Class recovery relative to potential recovery for each claim**

The recovery of $17,750,000 compares favorably with Lead Plaintiff's estimation of the aggregate potential recovery of damages under Section 10(b) and 20(a) of $39.8 million, and under Section 11 and 15 of $47.2 million after accounting for negative causation.  These are overlapping, not cumulative, and no additional recovery is estimated under Section 14(a).

**No other cases will be affected by the settlement**

The release expressly excludes release of related derivative litigation, *see* Stipulation I.Z, and Lead Plaintiff does not believe any other case will be affected.

**The claim form and anticipated claim rate**

Based on prior experience in comparable securities class action cases in which Class Counsel has utilized the proposed Settlement Administrator, the Settlement Administrator estimates that approximately 17% to 34% of potential Class Members to whom notice is mailed or emailed will submit a claim. *See* Exhibit C to Mulholland Decl.  That is consistent with Class Counsel's experience. Submitted claims will then be reviewed for validity and documentation.

**Reversion and *Cy Pres***

Once final, the Stipulation provides that the proposed Settlement will not revert to Defendants. Class Counsel anticipates the Net Settlement Fund will be distributed (and any remaining amounts, for example from unclaimed checks, redistributed if feasible) to Class Members, and does not expect to request any *cy pres* award.

**Class Counsel's anticipated attorneys' fee request is reasonable**

As set forth in §IV(D)(3) *supra*, Class Counsel will seek only a benchmark 25% fee, and reimbursement of standard litigation expenses, together with any interest accrued on such amounts while in the Settlement Fund.

**Lead Plaintiff's anticipated service award request is reasonable**

Pursuant to the PSLRA (15 U.S.C. §§ 77z-1(a)(4) and 78u-4(a)(4)), Class Counsel will seek an award on behalf of Lead Plaintiff to recover unreimbursed costs (including the cost of time spent) for the work she performed on behalf of the Settlement Class. The Notice informs Class Members this request will not exceed $5,000. Lead Plaintiff has devoted extensive time and effort on behalf of the Class, including: (i) reviewing the original complaint, the first amended complaint, the second amended complaint, and the third amended complaint, and providing feedback to counsel; (ii) regularly communicating with counsel regarding case strategy; (iii) reviewing and discussing motion papers with counsel; (iv) responding to Defendants' discovery propounded upon her, including gathering documents and responding to interrogatories; (v) review and discussing Court orders with counsel; (vi) meeting with counsel to discuss class certification and representative obligations; (vii) discussing with counsel the damages estimated by experts; (viii) discussing mediation strategy with counsel; and (ix) advising counsel regarding various settlement proposals, including the mediator's proposal resulting in the Settlement. *See* Declaration of Sharon Bernstein, attached hereto as Exhibit III. The amounts requested are well below reimbursement awards in similar complex cases. *See, e.g., Todd*, 2017 WL 4877417 at *6 ($10,000 award); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173–74 (S.D. Cal. 2007) ($40,000 reimbursement to lead plaintiff); *Razilov v. Nationwide Mut. Ins. Co.*, No. 01-CV-1466-BR, 2006 WL 3312024, at *1 (D. Or. Nov. 13, 2006) ($10,000 incentive awards to class representatives).

**The Settlement is supported by comparable outcomes**

Consistent with the Procedural Guidance, the O'Connell Decl. contains a comparable case analysis.  *See* O'Connell Decl., ¶11.

**The Notice contains the information required by Procedural Guidance**

*See infra* at Section VI.

## V.    CERTIFICATION OF THE CLASS IS WARRANTED

As detailed below, no issues prevent the Court from certifying the Class for settlement purposes, or appointing Lead Plaintiff as class representative and Lead Plaintiff's Counsel as Class Counsel.  Further, Lead Plaintiff notes that, at this time, the Court need only determine whether it "will likely be able to" grant certification at final approval after the Fairness Hearing.  Fed. R. Civ. P. 23(e)(1)(B).

The proposed Class embraces all the three classes referenced in the operative Third Amended Complaint:

> All persons who: (1) all persons who purchased or otherwise acquired shares in Ginkgo (including by way of exchange of SRNG shares) pursuant or traceable to the proxy/registration statement (the "Proxy/Registration Statement") that Defendants filed with the SEC on Form S-4 on May 14, 2021, and that was thereafter amended on Forms S-4/A on June 28, 2021, July 16, 2021, August 4, 2021, and August 9, 2021 and the body of which was incorporated into the final prospectus on Form 424(b)(3) filed on August 13, 2021; (2) all persons who were solicited to approve the Ginkgo-SRNG merger and to retain rather than redeem SRNG shares pursuant to the Proxy/Registration Statement; and (3) all persons who purchased or otherwise acquired in a public offering or on public markets securities of Ginkgo (including its predecessor SRNG) between May 11, 2021 and October 5, 2021, both dates inclusive.

*See* Stipulation I.G. As in the Third Amended Complaint, the Class excludes (a) Defendants and their immediate families; (b) current and former directors of Ginkgo or SRNG; (c) any entity that has entered into a stockholder agreement or co-venture agreement with Ginkgo, or was a Private Investment in Public Equities ("PIPE") investor in Ginkgo; and (d) any entity controlled, majority-owned or wholly owned, or affiliated with any of the above, as well as any persons and entities who or which submit a request for exclusion from the Class that is accepted by the Court.

### A.  The Class Meets the Requirements of Rule 23(a)

**Numerosity**:  Rule 23(a)(1) requires that the class be so numerous that joinder of all class

members is impracticable. Classes that consist of 40 or more members usually satisfy numerosity. *See Twegbe v. Pharmaca Integrative Pharmacy, Inc.*, No. CV 12-5080 CRB, 2013 WL 3802807, at *2 (N.D. Cal. July 17, 2013). Given Lead Plaintiff's estimate that there were more than 172.5 million shares of SRNG that were eligible for redemption the de-SPAC that form the basis of the Section 11 claims, and was heavily traded during the Class Period, numerosity is easily satisfied. *See, e.g., Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, 2021 WL 229310, at *4 (N.D. Cal. Jan. 21, 2021) (heavy volume and 40 to 49 million shares outstanding supported numerosity).

**Commonality**: Commonality exists even if there are varying fact situations among class members so long as the claims of the plaintiffs and other class members are based on the same liability theory. *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975). Here, there are several common questions of fact and law, including: (i) whether Defendants made false or misleading statements or omissions; (ii) whether Defendants acted with scienter; (iii) whether Defendants' misrepresentations and omissions caused the Class Members losses; (iv) whether the members of the Class sustained damages; and (v) the proper amount of their damages.

**Typicality**: Typicality is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 629 (N.D. Cal. 2018). Typicality exists "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1155 (S.D. Cal. 2007), *aff'd*, 660 F.3d 1055 (9th Cir. 2011).

Here, Lead Plaintiff's claims arise from the same events and course of conduct underlying the claims of all Class Members. All are based on the same legal theory: that Defendants inaccurately described circular, related party deals and other key information in a common document, the Proxy/Registration Statement, and in other common representations to the market.

**Adequacy**: Adequacy is satisfied where the proposed class representative has no interests antagonistic to Class Members, and has selected qualified, experienced counsel. *See Lerwill v. Inflight*

*Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *see also Anders v. Cal. State Univ.*, No. 23-15265, 2024 WL 177332 (9th Cir. Jan. 17, 2024) (unpublished).  Here, Lead Plaintiff has the identical interests to Class Members—maximizing the overall recovery for the Class.  She has retained counsel highly experienced in securities class action litigation who have successfully prosecuted many securities class actions.  And, she has proved herself adequate by zealously advancing the interests of the Class throughout this litigation.

## B.  The Class Meets the Requirements of Rule 23(b)(3)

In addition to satisfying each of the requirements of Rule 23(a), the Class satisfies the predominance and superiority requirements of Rule 23(b)(3).  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (explaining standard); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525-26 (N.D. Cal. 2009) (same).

As courts have repeatedly recognized, "[t]he common questions of whether misrepresentations were made and whether [d]efendants had the requisite scienter predominate over any individual questions of reliance and damages."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009).  Further, "[t]he canonical elements" of securities claims are "falsehood in connection with the purchase or sale of securities, scienter, materiality, reliance, causation, and loss," and their proof "can be made on a class-wide basis" because they "affect[] investors in common."  *Schleicher v. Wendt*, 618 F.3d 679, 681-82, 687 (7th Cir. 2010).  Additionally, a class action is "superior" to individual actions here because individual class member's claims are geographically dispersed and too small to justify separate, individual actions.

In sum, the requirements of Rules 23(a) and 23(b)(3) are satisfied, and there are no issues that would prevent the Court from certifying this Class, appointing Lead Plaintiff as class representative, and appointing Lead Plaintiff's Counsel as counsel for the Class.

## VI.  THE NOTICE AND PLAN FOR NOTIFYING THE CLASS WARRANT APPROVAL

The Federal Rules require "the best notice that is practicable under the circumstances," and that such notice be directed "in a reasonable manner to all class members who would be bound by the [settlement]."  Fed. R. Civ. P. Rule 23(c)(2)(B), (e)(1)(B).  Notices "must generally describe the terms

1  of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come

2  forward and be heard."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

3  In this case, the Notice—attached as Exhibit A-1 to the Stipulation—includes all information

4  required by the Federal Rules of Civil Procedure, the PSLRA, and the Northern District of California's

5  Procedural Guidance for Class Action Settlements.  In particular, the Notice describes in plain English

6  the proposed Settlement's terms, as well as: (i) the purpose of the Notice; (ii) a summary of the claims

7  resolved by the Notice; (iii) a statement of the recovery for the Class; (iv) an estimate of the average

8  recovery per share; (v) a statement of the potential outcome of the case if litigation were to continue;

9  (vi) reasons for settlement; (vii) an estimate of the maximum amount of attorneys' fees and expenses

10  that Class Counsel will seek; (viii) a summary of Class Members legal rights and options related to

11  the Settlement; (ix) the terms of the Plan of Allocation; (x) the date, time, and location of the Fairness

12  Hearing; and (xi) additional frequently asked questions and answers related to the Settlement.

13  Importantly, the Notice also sets forth the Class Members' rights to: (i) request exclusion from the

14  Class, and how to do so; (ii) object to the Settlement, Plan of Allocation, and/or Fee and Expense

15  Application, or any aspects thereof, and how to do so; and (iii) submit a Proof of Claim to participate

16  in the Settlement, and instructions on how to complete and submit a Proof of Claim.  The Notice also

17  provides contact information for Class Counsel and the Settlement Administrator.

18  Consistent with Rule 23(h)(1), the Notice also informs Class Members that Class Counsel will

19  apply to the Court for attorneys' fees of up to 25% of the Settlement Fund, plus reimbursement of

20  expenses of not more than $325,000 from the Settlement Fund, as well as a modest award of up to

21  $5,000 to compensate Lead Plaintiff for the time spent working with counsel throughout the litigation.

22  Once filed, the Settlement Administrator will post copies of all Notices and Settlement-related motions

23  and orders on the case website, www.GinkgoSecuritiesSettlement.com.

24  In addition, Lead Plaintiff's proposed method for disseminating notice to the Class—mail,

25  publication, and website—satisfies all applicable standards.  *See In re Portal Software, Inc. Sec. Litig.*,

26  No. C-03-5138 VRW, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) ("notice by mail and

27  publication is the 'best notice practicable under the circumstances,' as mandated by FRCP

28  23(c)(2)(B).").  The proposed Settlement Administrator, SCS, is a highly experienced class action

claims administration firm and will carry out the robust plan of dissemination set forth in the [proposed] Preliminary Approval Order. SCS was selected in a competitive bidding process over four other firms, on the basis of the cost of the notice program, the cost of each processed Claim, its agreement to promptly process claims, its history of skillfully administering claims in other cases for Class Counsel, and its agreement to cap certain expenditures, which Class Counsel believes will allow administration to be accomplished within the initial $250,000 request set forth in the [proposed] Preliminary Approval Order.   In the last two years, SCS has served or is currently serving as Settlement Administrator in seven cases in which Class Counsel served as Lead Counsel, all after a competitive bidding process:

- *Mandalevy v. BofI Holding, Inc.*, 3:17-cv-00667-GPC-KSC (S.D. Cal.)
- *Zaller v. Fred's, Inc., et al.*, 2:19-cv-02415-SHL (W.D. Tenn.)
- *Alberici v. Recro Pharma, Inc., et al.* 2:18-cv-02279-MMB (E.D. Pa.)
- *Hardy v. Embark Technology*, 3:22-cv-02090-JSC (N.D. Cal.)
- *Todd France, et al. v. Jiayin Group, Inc., et al.,* 654398/2020 (Sup. Ct. N.Y.)
- *Kendall vs. Odonate Therapeutics, Inc.*, 3:20-cv-1828-H-LL (S.D. Cal.)
- *Terravia Holdings, Inc. Securities Litigation*, 16-cv-06633-JD (N.D. Cal.)

In addition, SCS also has served as vendor in nine cases in which Class Counsel served as co-lead Counsel over the last two years:

- *India Globalization Capital, Inc., et al.*, 8:18-cv-03396-PWG (D. Md.)
- *Canopy Growth Corp. Securities Litigation*, 2:19-cv-20543-KM-ESK (D.N.J.)
- *Hashem v. NMC Health PLC, et al.*, 2:20-cv-02303-CBM-MAA (C.D. Cal.)
- *Ferreira v. Funko, Inc., et al.* 2:20-cv-02319-VAP-(MAAx) (C.D. Cal.)
- *In re Loop Industries, Inc. Securities Litigation*, 7:20-cv-08538-NSR (S.D.N.Y.)
- *Tufin Software Technologies LTD Securities Litigation*, 1:20-cv-5646-GHW (S.D.N.Y.)
- *Zhou vs.Faraday Future Intelligent Electric Inc.*, 2:21-cv-09914-CAS-JC (C.D. Cal.)
- *Paysign, Inc. Securities Litigation*, 2:20-cv-00553-GMN-DJA (D. Nev.)
- *Sinnathural vs. Novavax, Inc., et al.*, TDC-21-2910  (D. Md.)

Class Counsel estimates that the above settlements constitute approximately one-quarter of the

settlements in cases in which Pomerantz was lead or co-lead counsel during that timeframe, and less than one-tenth of the settlements by dollar value. As per the Procedural Guidance at ¶ 2, Class Counsel and SCS estimate that Notice and administration costs here, which will be paid out of the Settlement Fund, will not exceed $250,000. These costs are needed to effectuate the Settlement and are reasonable relative to the value of the Settlement. *See Extreme Networks*, 2019 WL 3290770, at *2, *14-15 (approving $500,000 in administration costs from $7 million settlement fund). Finally, the Stipulation calls for Defendants to satisfy all Class Action Fairness Act notice requirements, at their own cost. Stipulation III.A.

## VII. PROPOSED SCHEDULE OF EVENTS

As part of the preliminary approval process, the Court must set a date for the Settlement Hearing, as well as deadlines for future events, such as mailing of the Notice, filing final approval briefs, requesting exclusion from the Class, serving objections to the Settlement, and submitting Proofs of Claim. Lead Plaintiff proposes the following schedule:

| Item | Proposed Deadline | Example Dates[10] |
|---|---|---|
| Notice Mailed to Class | Eighteen (18) calendar days after entry of the Preliminary Approval Order | June 24, 2024 |
| Summary Notice Published | Fourteen (14) calendar days after Notice Mailed to Class | July 8, 2024 |
| Summary Notice Published a Second Time | Twenty-Eight (28) calendar days after Notice Mailed to Class | July 22, 2024 |
| Briefs in support of final approval of Settlement, Plan of Allocation, and Class Counsel's request for attorneys' fees and litigation expenses | Thirty-five (35) calendar days prior to Settlement Hearing | October 3, 2024 |
| Claims Filing Deadline | Thirty (30) days prior to the Settlement Hearing | October 8, 2024 |
| Requests for exclusion from | Twenty-one (21) days prior to the | October 17, 2024 |

[10] Example dates are the dates that will be imposed by this schedule if the Court enters a preliminary approval order on June 6, 2024, and sets the Settlement Hearing for November 7, 2024. Changes in the timing of preliminary approval or the Settlement Hearing will impact these dates. Upon entry of a preliminary approval order, Class Counsel will make any necessary adjustments to each of the proposed forms of notice and to the Proof of Claim form.

| Class | Settlement Hearing | |
|---|---|---|
| Objections to Settlement, Plan of Allocation, and/or Fee and Expense Application | Twenty-one (21) days prior to the Settlement Hearing | October 17, 2024 |
| Reply papers to any requests for exclusion or objections | 7 calendar days prior to the Settlement Hearing | October 31, 2024 |
| Fairness Hearing | November 7, 2024, at 1:30 p.m., or at the Court's earliest convenience thereafter. | November 7, 2024, at 1:30 p.m. |

## VIII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order, which will also: (i) provisionally certify the Class; (ii) appoint Lead Plaintiff as class representative and Lead Plaintiff's Counsel as Class Counsel for settlement purposes; (iii) preliminarily approve the Settlement; (iv) authorize retention of Strategic Claims Services as the Settlement Administrator and Huntington National Bank as the Escrow Agent; and (v) approve the form, content, and method of disseminating notice to the Class.

1   Dated: April 10, 2024        Respectfully submitted,

2                 POMERANTZ LLP

3            By:  */s/ Brian O'Connell*
                Joshua B. Silverman (*pro hac vice*)

4                Brian O'Connell (SBN 314318)

5                10 S. LaSalle St., Suite 3505
                Chicago, Illinois 60603

6                Telephone: (312) 377-1181
                jbsilverman@pomlaw.com

7                boconnell@pomlaw.com

8                Jennifer Pafiti (SBN 282790)

9                1100 Glendon Avenue, 15th Floor
                Los Angeles, CA 90024

10              Telephone: (310) 405-7190
                jpafiti@pomlaw.com

11

12              *Lead Counsel for Lead Plaintiff and the Proposed Classes*

13              **THE SCHALL LAW FIRM**

14              Brian Schall (SBN 290685)
              2049 Century Park East, Suite 2460

15              Los Angeles, CA 90067
              Telephone: (310) 301-3335

16              brian@schallfirm.com

17              *Additional Counsel for Lead Plaintiff and the Proposed Classes*

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on April 10, 2024, a copy of the foregoing was filed electronically via

3

the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation

4

of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF

5

System.

6

7

Dated: April 10, 2024

8

POMERANTZ LLP

9

By: */s/ Brian O'Connell*
        Brian P. O'Connell

10

11

*Lead Counsel for Lead Plaintiff and the
Proposed Classes*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28