United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SHARON BERNSTEIN,

Plaintiff,

v.

GINKGO BIOWORKS HOLDINGS, INC., et al.,

Defendants.

Case No. 4:21-cv-08943-KAW

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

Re: Dkt. No. 117

On April 10, 2024, Plaintiff Sharon Bernstein filed a motion for preliminary approval of a settlement agreement between the parties.

Having considered the parties' filings and the arguments presented at the July 11, 2024 hearing, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for preliminary approval.

## I. BACKGROUND

### A. Factual and Procedural Background

Defendant Ginkgo Bioworks Holdings, Inc. ("Ginkgo" or "the Company")[1] is incorporated in Delaware and has its headquarters in Boston, Massachusetts. (Third Am. Complaint, "TAC," Dkt. No. 82 ¶ 18.) Ginkgo maintains an office in Emeryville, California. *Id.* Shares of Ginkgo's common stock have been listed on the New York Stock Exchange ("NYSE") under the ticker symbol "DNA" since September 17, 2021, when it went public via a merger with Soaring Eagle. *Id.* Prior to that time, Soaring Eagle existed as a blank check special purpose acquisition company

[1] "Defendants" refers to Ginkgo Bioworks Holdings, Inc. ("Ginkgo" or "the Company"), Harry E. Sloan, Eli Baker, Scott M. Delman, Joshua Kazam, Isaac Lee, Timothy Leiweke, Dennis A. Miller, Laurence E. Paul, Jason Kelly, Reshma Shetty, Arie Belldegrun, Marijn Dekkers, Christian Henry, Reshma Kewalramani, Shyam Sankar, and Anna Marie Wagner.

United States District Court
Northern District of California

("SPAC") and traded on the NASDAQ under the ticker symbol "SRNG." *Id.* All shares of SRNG were deregistered prior to the merger. *Id.*

On November 18, 2021, the initial complaint was filed in this Action, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act") against Ginkgo, its CEO, Jason Kelly, its CFO, Mark Dmytruk, and Harry E. Sloan, CEO and Chairman of the blank check company (Soaring Eagle Acquisition Corp.) with which Ginkgo merged to access public markets. (Compl., Dkt. No. 1.)

On March 22, 2022, the parties consented to referring this Action to a magistrate judge for all purposes, and, on March 25, 2022, the Action was referred to Magistrate Judge Kandis A. Westmore. (Dkt. Nos. 30, 32, 35.)

Also on March 25, 2022, Plaintiff Bernstein was appointed as the Lead Plaintiff in this Action, and Pomerantz LLP was approved as lead counsel. (Dkt. No. 31.)

Thereafter, on May 26, 2022, Lead Plaintiff filed a First Amended Complaint against Ginkgo, Jason Kelly, and Harry E. Sloan, and 14 other Individual Defendants.[2] (First Am. Compl., Dkt. No. 45.) The First Amended Complaint also added claims under Section 14(a) of the Exchange Act, and Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"). *See id.*

Later, on July 18, 2022, Lead Plaintiff filed a Second Amended Complaint to correct scrivener's errors. (Second Am. Compl., Dkt. No. 58.) The Second Amended Complaint alleged that Defendants used a negligently prepared Proxy/Registration Statement to: (1) register Ginkgo shares to affect its initial public offering; (2) solicit shareholder approval for the "de-SPAC" merger that Ginkgo used to go public; and (3) dissuade shareholders in the prior SPAC entity, Soaring Eagle, from exercising their right to redeem shares for cash. Plaintiffs allege the Proxy/Registration Statement misrepresented circular related-party deals, overstated nonrelated-party revenue, and misrepresented certain related parties as independent. Lead Plaintiff also alleged that a subset of Defendants violated Section 10(b) by making misrepresentations with fraudulent intent, and that shares prices dropped $1.39 after a short seller named Scorpion Capital

[2] Lead Plaintiff voluntarily dismissed Mark Dmytruk from the action shortly after filing the First Amended Complaint. (*See* Dkt. No. 46.)

United States District Court
Northern District of California

published a report disclosing the information withheld from the Proxy/Registration Statement.

On July 21, 2022, Defendants moved to dismiss the Second Amended Complaint. On March 10, 2023, the Court entered an order dismissing the Securities Act claims because certain facts regarding traceability argued in the briefs were not formally alleged and sustained the Exchange Act claims. (Dkt. No. 81.) On March 15, 2023, Lead Plaintiff filed a Third Amended Complaint to add certain traceability allegations to cure the aforementioned Securities Act deficiencies. (Third Am. Compl., "TAC," Dkt. No. 82.) Thereafter, Defendants answered the complaint. (Dkt. No. 84.) In discovery, the parties exchanged initial disclosures, engaged in substantial written discovery, served document requests, and Lead Plaintiff issued subpoenas to at least nine third parties for additional documents. (Pl.'s Mot. at 4.) As part of this process, Lead Plaintiff reviewed over 13,000 documents (comprising approximately 145,000 pages), which informed her of the strengths and weaknesses of the claims at issue. *Id.*

On January 30, 2024, the parties engaged in a mediation before an experienced mediator familiar with securities class actions, Michelle Yoshida. (Pl.'s Mot. at 4.) Although this mediation session did not result in an immediate resolution, the parties continued their negotiations with Ms. Yoshida's assistance. *Id.* After several additional rounds of negotiation, Ms. Yoshida issued a mediator's proposal, which both sides accepted, resulting in the settlement. *Id.*

On March 8, 2024, the parties filed a joint notice of settlement. (Dkt. No. 115.) On April 10, 2024, Plaintiff filed the instant motion for preliminary approval of the class settlement. (Pl.'s Mot., Dkt. No. 117.)

**B. Settlement Agreement**

Under the terms of the settlement agreement, Defendant agrees to pay $17.75 million into the Escrow Account, which amount, plus interest that accrues thereon, comprises the Settlement Fund. (Stipulation of Settlement, "Stipulation," Dkt. No. 117-1 § I.GG, II.A.) Costs of Notice to the Class and settlement administration ("Settlement Administration Costs") will be paid from the Settlement Fund. (Stipulation § III.A.)

Lead Plaintiff proposes that Strategic Claims Services ("SCS") be retained as settlement administrator subject to the Court's approval. (Pl.'s Mot. at 4.) SCS was chosen following a

competitive bidding process and careful review of proposals from several reputable settlement administrators. *Id.* After reviewing the bids from each administrator, Lead Counsel concluded that SCS, because of its experience, the merits of the bid, and the quality of its work in prior engagements for Lead Counsel, is best suited to execute the settlement administration in this Action. (*Id.*; *see also* Decl. of Brian P. O'Connell, "O'Connell Decl." Dkt. No. 117-2 ¶ 20.)

The Notice and Summary Notice provide that Lead Counsel will move for final approval of the Settlement and: (a) an award of attorneys' fees in the amount of no more than 25% of the Settlement Amount; (b) payment of expenses or charges resulting from the prosecution of the Action not to exceed $325,000; (c) interest on such fees and expenses at the same rate and for the same period as is earned by the Settlement Fund; and (d) an award to Lead Plaintiff for her time and expenses incurred in representing the Class. (Class Notice, Dkt. No. 117-1 at 47,[3] at 3.)

Once settlement administration costs, taxes, tax expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining Net Settlement Fund shall be distributed pursuant to the Court-approved Plan of Allocation (set forth in the Notice) to Authorized Claimants who are entitled to a distribution of at least $20.00. (*See* Class Notice at 13-18.) Any amount remaining following the distribution shall be redistributed in an economically feasible manner. *Id.* at 18.

The Settling Parties have entered into a Supplemental Agreement, which provides that if prior to the Settlement Hearing, requests for exclusion from the Class by Persons who would otherwise be Class Members exceeds a certain threshold, Defendants shall have the option (but not the obligation) to terminate the Settlement. (Stipulation § X.G.) This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g., Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018).

In exchange for the Settlement consideration, Class Members will release all known or unknown claims that (i) were asserted in the Third Amended Complaint or a prior complaint; (ii)

---

[3] Since the Notice is attached to the Stipulation of Settlement, the Court will refer to the internal pagination.

could have been asserted in the Third Amended Complaint; or (iii) relate to the sale or purchase of Ginkgo or its predecessor during the time period at issue, or the Proxy/Registration Statement at issue, in the Third Amended Complaint. (Stipulation § X.B.; Class Notice at 8.) Because the scope of the release "is limited to claims that relate to both the complaint's factual allegations and to the purchase or ownership of" the Ginkgo securities in question, it "ensure[s] that 'the released claim[s] [are] based on the identical factual predicate as that underlying the claims in the settled class action.'" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*") (alterations in original) (quoting *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). Lastly, under the terms of the Stipulation, there is no clear sailing agreement or reversion to Defendants. (Stipulation § VIII.N.)

## II. LEGAL STANDARD

Per Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The purpose of requiring court approval "is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, before approving a settlement, the Court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). This inquiry:

> requires the district court to balance a number of factors: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement.

*Id.*; *see also Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (same).

Furthermore, the Ninth Circuit has recognized that where no class has been formally certified, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for

United States District Court
Northern District of California

evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) ("when . . . the settlement takes place before formal class certification, settlement approval requires a 'higher standard of fairness'"). This more "exacting review" is required "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (internal quotation omitted); *see also Hanlon*, 150 F.3d at 1026 ("The dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court[-]designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)").

When applying Rule 23(e), the courts use a two-step process for the approval of class action settlements. First, the Court decides whether the class action settlement deserves preliminary approval. Second, after notice is given to class members, the Court determines whether final approval is warranted. *See O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1121-22 (N.D. Cal. 2016). At the preliminary approval stage, courts in this district "have stated that the relevant inquiry is whether the settlement falls within the range of possible approval or within the range of reasonableness." *Cotter v. Lyft*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) (internal quotation omitted). "In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiff's expected recovery balanced against the value of the settlement offer." *Id.*; *see also O'Connor*, 201 F. Supp. 3d at 1122. This determination "requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Cotter*, 176 F. Supp. at 936 (citing *In re High-Tech Emp. Antitrust Litig.*, Case No: 11-cv-2509-LHK, 2014 WL 3917126, at *4 (N.D. Cal. Aug. 8, 2014).

In addition to considering whether the settlement falls within the range of reasonableness, courts in this district also consider whether the settlement: "(1) appears to be the product of

serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; [and] (3) does not improperly grant preferential treatment to class representatives or segments of the class." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation omitted). With respect to the level of scrutiny applied to this determination, "district courts often state or imply that scrutiny should be more lax." *Cotter*, 193 F. Supp. 3d at 1035-36. Several courts in this district have begun to question that "lax review" as "mak[ing] little practical sense." *Id.* at 1036. Instead, these courts suggest that "scrutinizing the agreement carefully at the initial stage and identifying any flaws that can be identified . . . allows the parties to decide how to respond to those flaws (whether by fixing them or opting not to settle) before they waste a great deal of time and money in the notice and opt-out process." *Id.*

## III. DISCUSSION

### A. Class Certification

Before determining the fairness of a class action settlement, the Court must as a threshold matter "ascertain whether the proposed settlement class satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure applicable to all class actions, namely: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon*, 150 F.3d at 1019. The Court must also find that at least one requirement of Rule 23(b) is satisfied. *Id.* at 1022.

The Court finds that for the purposes of approval of the class action settlement, the Rule 23(a) requirements are satisfied. First, numerosity exists in light of Lead Plaintiff's estimate that there were more than 172.5 million shares of SRNG that were eligible for redemption for the de-SPAC that form the basis of the Section 11 claims, and was heavily traded during the Class Period. (*See* Class Notice at 2.) Second, commonality exists because there are "questions of fact and law which are common to the class," namely (i) whether Defendants made false or misleading statements or omissions; (ii) whether Defendants acted with scienter; (iii) whether Defendants' misrepresentations and omissions caused the Class Members losses; (iv) whether the members of the Class sustained damages; and (v) the proper amount of their damages. Fed. R. Civ. P. 23(a)(2); *see also Hanlon*, 150 F.3d at 1019-20 (noting that the commonality requirement is "permissive" and "has been construed permissively"). Third, typicality exists because Lead

Plaintiff's claims are "reasonably co-extensive with those of absent class members," as they are based on the same legal theory: that Defendants inaccurately described circular, related party deals and other key information in a common document, the Proxy/Registration Statement, and in other common representations to the market. *See Hanlon*, 150 F.3d at 1020. Finally, adequacy exists because there is no evidence that Lead Plaintiff and Plaintiff's counsel have any conflicts of interest with the proposed class, or that Lead Plaintiff and Plaintiff's counsel will not vigorously prosecute the case on behalf of the class. *See id.* ("Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?").

The Court also concludes that, at the preliminary approval stage, the Rule 23(b)(3) requirement is satisfied. Under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the Court finds that predominance is satisfied because Plaintiff's claims arise from the same incidents. Further, the Court finds that superiority is satisfied because the alternative method to a class action likely involves "individual claims for a small amount of . . . damages," resulting in most cases involving "litigation costs [that] dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.

The Court, therefore, provisionally certifies the class for settlement purposes.

**B. Preliminary Approval Factors**

**i. Range of Reasonableness**

In considering whether the Settlement Agreement falls within the range of possible approval, the Court "primarily consider[s] plaintiffs' expected recovery balanced against the value of the settlement offer." *Viceral v. Mistras Grp., Inc.*, Case No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016).

Here, the proposed Settlement provides for a certain and immediate all-cash Settlement Fund of $17,750,000. While the total amount of damages is complex and subject to genuine

United States District Court
Northern District of California

dispute amongst the parties, the proposed Settlement provides a far greater recovery than most securities fraud class actions. (*See* O'Connell Decl. ¶ 10.) After consulting with her damages expert, Lead Plaintiff estimates that damages for the Section 10(b) claims are $39.8 million, and Section 11 damages after accounting for negative causation are $47.2 million. *See id.* These damages are overlapping and not cumulative. *Id.* Thus, the Settlement represents a recovery of approximately 44.56% for the Section 10(b) claims, and 37.6% for the Section 11 claim. (Pl.'s Mot. at 11; O'Connell Decl. ¶ 10.) Plaintiff's counsel contends that this recovery exceeds the 1.8% median settlement value in 2023 for all securities actions. *See ids.*

The parties also identify significant risks that make the proposed settlement fall within a range of reasonableness. Specifically, whether Plaintiff would been able to prove that the Proxy/Registration Statement contained misrepresentations, that Defendants acted with scienter, and that losses accrued as a result of an omission after a short seller report was published on October 6, 2021. (Pl.'s Mot. at 10.)

Based on the foregoing, the Court finds that this factor weighs in favor of preliminary approval.

**ii. Serious, Informed Negotiations**

Next, the Court considers how the parties arrived at the settlement, specifically whether the settlement was "the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Co.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, the parties engaged in extensive discovery to analyze and evaluate the case. (O'Connell Decl. ¶ 7.) The parties then attended mediation with Michelle Yoshida, who facilitated further negotiations, which ultimately resulted in the parties reaching a settlement. (O'Connell Decl. ¶ 8.) The Court finds that the parties reached the settlement via an arms-length, non-collusive, negotiated resolution, and that this factor weighs in favor of preliminary approval.

**iii. No Obvious Deficiencies**

The Court finds no obvious deficiencies at this time. The CAFA notice was completed on April 19, 2024, and the release explicitly excludes the release of the related derivative litigation. (*See* Bingham Decl., Dkt. No. 120-1 ¶ 7; Stipulation § I.Z.)

While attorneys' fees have yet to be submitted, and counsel expects to request the 25% benchmark of the total settlement amount, the Court expects counsel to provide additional information at the final approval stage, including the breakdown of hours spent by each attorney and substantive information regarding their legal experience to support their billing rates under a lodestar analysis. (*See* O'Connell Decl., Dkt. No. 117-2 ¶¶ 12-15.) Such information is necessary to fulfill the Court's "independent obligation to ensure that the [attorney's fees] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.

**iv. Preferential Treatment**

Finally, the Court considers whether the Settlement provides preferential treatment to any class members. The Court concludes that the Settlement does not. The Plan of Allocation treats all Class Members equitably based on the timing and amount of their transactions in Ginkgo common stock, and that of its predecessor, Soaring Eagle. Thus, this factor weighs in favor of preliminary approval.

**v. Notice Procedure**

The Court has reviewed the content of the proposed notice submitted on April 10, 2024, and modifies it as follows:

1. On page 3, the Notice does not clearly explain that the attorneys' fees and costs and Lead Plaintiff's incentive award shall be paid from the Settlement Fund. Thus, the parties shall add "All such fees will be paid from the Settlement Fund."
2. On page 11, change the address for the Class Action Clerk to "United States District Court for the Northern District of California, Oakland Division, 1301 Clay St., Suite 400 South, Oakland, CA 94612."

With these changes, the Court finds that the notice is sufficient.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that preliminary approval is warranted, and, therefore, GRANTS preliminary approval of the parties' proposed Settlement Agreement, including the provisional certification of the class action. The Court APPOINTS, for settlement

purposes only, Sharon Bernstein as class representative; Pomerantz LLP as class counsel; Strategic Claims Services as Settlement Administrator;[4] and Huntington National Bank as the Escrow Agent. The Court sets the following schedule:

| **Action:** | **Date:** |
|---|---|
| Notice mailed to Class | 21 days from the date of this order |
| Summary Notice Published | 35 days from the date of this order |
| Summary Notice Published a Second Time | 49 days from the date of this order |
| Plaintiff to file Motion for Final Settlement Approval and Class Counsel to file Motion for Attorney's fees, costs, and class representative service awards | October 17, 2024 |
| Last day for class members to submit claim forms | November 21, 2024 |
| Requests for Exclusion from Class | November 21, 2024 |
| Objections to Settlement, Plan of Allocation, and/or Fee and Expense Application | November 21, 2024 |
| Reply papers to any requests for exclusion or objections | November 25, 2024 |
| Report of Settlement Administrator identifying any exclusion requests received and specifying the number of claims received | November 25, 2024 |
| Final Approval Hearing | December 5, 2024, at 1:30 p.m. |

IT IS SO ORDERED.

Dated: July 31, 2024

Kandis Westmore

KANDIS A. WESTMORE
United States Magistrate Judge

[4] While Lead Plaintiff requests that that the Court approve SCS's fees of $250,000 at the preliminary approval stage, pursuant to the Northern District's Procedural Guidance for Class Action Settlements, the cost award for settlement administration may not be approved until the final approval hearing. (Northern District Guidance, Preliminary Approval § 2.)