**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff and the Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| SHARON BERNSTEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GINKGO BIOWORKS HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 4:21-cv-08943-KAW<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Judge:      Hon. Kandis A. Westmore<br>Courtroom:  4<br>Date:       December 5, 2024<br>Time:       1:30 p.m. |

## NOTICE OF MOTION AND MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** on December 5, 2024, or on such other date as she may be heard, Lead Plaintiff Sharon Bernstein will appear at Courtroom 4, United States District Court for the Northern District of California -- Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, or remotely via Zoom or telephone as the Court may direct, and will and hereby moves for an order pursuant to Federal Rule of Civil Procedure 23(e)(2): (1) granting final approval of the Settlement; (2) finding that Notice to the Class was provided as required and to the satisfaction of Rule 23, due process and the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and (3) approving the Plan of Allocation as fair and reasonable.

This motion is based upon this Notice of Motion and Motion (together, the "Motion"); the supporting Memorandum that follows, the accompanying declarations, including the Declaration of Joshua B. Silverman and exhibits attached thereto, the prior declarations of Brian O'Connell and Sharon Bernstein, ECF Nos. 117-2 and 117-3, other previous filings and orders in this case, and any further representations as may be made by counsel at hearing on this matter.

Lead Plaintiff is not aware of any opposition to the Motion, and no objections have been received to date.

### STATEMENT OF ISSUES TO BE DECIDED

1.  Whether the Court should grant final approval of the proposed Settlement as fair, reasonable and adequate pursuant to Rule 23(e)(2).

2.  Whether the plan of notice directed by the Court in the Preliminary Approval Order, ECF No. 126, satisfied Rule 23, due process and the PSLRA.

3.  Whether the Court should grant final approval of the Plan of Allocation.

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................... iii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ................................................................................................................... 3

I.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ................................. 3

    A. Lead Plaintiff and Lead Counsel Have Adequately Represented the Class ........... 4

    B. The Settlement was the Result of Arm's-Length Negotiations Between Informed Counsel Involving a Skilled Mediator ....................................................... 6

    C. The Settlement Provides Adequate Relief for the Class Relative to the Costs and Risks of Further Litigation and all Other Relevant Factors ............................. 8

        1. The Settlement Provides Meaningful Relief to Injured Class Members ....... 8

        2. The Strengths and Risks of Lead Plaintiff's Case and the Serious Risks of Continued Litigation ................................................... 10

        3. The Expense and Likely Duration of Further Litigation ........................... 11

        4. All Other Factors in Rule 23(e)(2)(C) Support Final Approval ................ 12

    D. Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement ......................................................................................................... 13

II.    THE NOTICE PROGRAM SATISFIED DUE PROCESS AND COMPLIED WITH FED. R. CIV. P. 23(E) ....................................................... 15

III.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.................................. 17

CONCLUSION............................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ...................................................................................................8

*Betorina v. Randstad US, L.P.*,
    No. 15-CV-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ...................................8

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*,
    No. 12-CV-05259-JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014) ...................................5

*Campbell v. Facebook, Inc.*,
    951 F.3d 1106 (9th Cir. 2020) .................................................................................................3

*Cheng Jiangchen v. Rentech, Inc.*,
    No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......................6

*Churchill Vill., L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ..............................................................................4, 13, 15, 16

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .........................................................................................4, 17

*Destefano v. Zynga, Inc.*,
    No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................8, 12, 15, 18

*Dunakin v. Quigley*,
    No. 2:14-cv-567-JLR, 2017 WL 123011 (W.D. Wash. Jan. 10, 2017) ...................................6

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................................................................17

*Eisen v. Porsche Cars N. Am., Inc.*,
    No. 2:11-CV-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ...................................7

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) .................................................................................................4

*Fleming v. Impax Labs, Inc.*,
    Case No. 16-cv-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) .........................11

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).....................3, 8

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) .................................................................................................12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................................................................................4

*Hefler v. Pekoc*,
    802 F. App'x 285 (9th Cir. 2020) .............................................................................................5

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...............................5, 8

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4. 2018)...................................13

*Hunt v. Bloom Energy*,
  Case No. 19-cv-02935-HSG, 2023 WL 7167118 (N.D. Cal. Oct. 31, 2023) ...................9, 10

*Hunt v. Bloom Energy Corp.*,
  No. 19-CV-02935-HSG, 2024 WL 1995840 (N.D. Cal. May 6, 2024)...................................15

*IBEW Local 697 v. Int'l Game Tech.*,
  No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..............9, 14

*Ikuseghan v. Multicare Health Sys.*,
  No. 3:14-cv-5539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016)...............................12

*In re Amgen Inc. Sec. Litig.*,
  No. CV 7-2536 PSG (PLAX), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)................10, 11

*In re Aqua Metals, Inc. Sec. Litig.*,
  Case No. 17-cv-07142-HSG, 2022 WL 612804 (N.D. Cal. Mar. 2, 2022) ..............................9

*In re Banc of Cal. Sec. Litig.*,
  No. SACV1700118AGDFMX, 2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) .........................6

*In re Biolase, Inc. Sec. Litig.*,
  Case No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)..........9

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) .................................................................................................7

*In re Celera Corp. Sec. Litig.*,
  Case No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ...................10

*In re Celera Corp. Sec. Litig.*,
  No. 5:10-CV-02604-EJD, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) .............................11

*In re Extreme Networks, Inc. Sec. Litig.*,
  15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)....................................6, 18

*In re Fibrogen, Inc.*,
  No. 3:21-cv-02623-EMC, ECF No. 58 (N.D. Cal. Feb. 13, 2024) .......................................7

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  611 F. Supp. 3d 872 (N.D. Cal. 2020) ...........................................................................14, 15

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..............................................................................11

*In re Lyft, Inc. Sec. Litig.*,
  Case No. 19-cv-02690-HSG, 2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) .......................9

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...........................................................................8

*In re Netflix Privacy Litig.*,
    No. 5:11-CV-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)...............................6

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-06110-SBA(JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................14

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................14

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ....................................................................5

*In re Portal Software, Inc. Sec. Litig.*,
    No. C 03 5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) .....................................6

*In re Splunk Inc. Sec. Litig.*,
    Case No. 20-cv-08600-JST, 2024 WL 923777 (N.D. Cal. Mar. 4, 2024) ............................9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    MDL No. 2672 CRB (JSC), 2019 WL 2077847 (N.D. Cal. May 10, 2019) .........................5

*Kendall v. Odonate Therapeutics, Inc.*,
    No. 3:20-CV-01828-H-LL, 2022 WL 188364 (S.D. Cal. Jan. 18, 2022) ...............................7

*Kendall v. Odonate Therapeutics, Inc.*,
    Case No. 3:20-cv-01828-H-LL, 2022 WL 1997530 (S.D. Cal. June 6, 2022) ........................9

*Kuraica v. Dropbox, Inc.*,
    No. 19-CV-06348-BLF, 2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) .................................15

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) .......................................................................4

*Luna v. Marvell Tech. Grp.*,
    No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018)...................................10

*Mendoza v. Hyundai Motor Co., Ltd.*,
    No. 15-CV-01685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ...................................3

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................11, 14

*Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) .............................11

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) .....................................................................4, 9

*Quiruz v. Specialty Commodities, Inc.*,
    Case No. 17-cv-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020)....................13, 14

*Redwen v. Sino Clean Energy, Inc.*,
  No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) ......................7, 17

*Rodriguez v. West Publishing Corporation*,
  563 F.3d 948 (9th Cir. 2009) ...................................................................6, 12, 14

*Salazar v. Midwest Servicing Grp., Inc.*,
  Case No. 17-cv-0137-PSG-KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ......................10

*Satchell v. Fed. Express Corp.*,
  No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ................................6

*Todd v. STAAR Surgical Co.*,
  No. CV14-5263 MWF (GJSx), 2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ......................7

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) .................................................................11

*Vataj v. Johnson*,
  No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .............................17

*Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*,
  173 F.3d 713 (9th Cir. 1999) ...............................................................11

**Rules & Regulations**

Fed. R. Civ. P. 23(e)(1)(B) ....................................................................15

Fed. R. Civ. P. 23(e)(2)(C)(i) ..................................................................8

Fed. R. Civ. P. 23(e)(2)(C)(ii) ................................................................12

Fed. R. Civ. P. 23(e)(2)(C)(iii) ...............................................................12

Fed. R. Civ. P. 23(e)(2)(C)(iv) .............................................................12, 13

Fed. R. Civ. P. 23(e)(2)(D) ....................................................................17

Fed. R. Civ. P. 23(e)(3) ....................................................................12, 13

**Statutes**

Section 11 of the Securities Act of 1933 ...............................................1, 9, 10, 17

Section 10(b) of the Securities Exchange Act of 1934 ...................................1, 9, 10, 17

Section 14 of the Securities Exchange Act of 1934 ..............................................9

1    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Sharon

2    Bernstein, on behalf of herself and other Class Members  (collectively, "Plaintiffs"), respectfully

3    submits this memorandum of points and authorities in support of her Motion for: (i) final approval of

4    the proposed Settlement; (ii) finding that the Court-ordered plan of notice complied with the

5    requirements of Rule 23, due process and the PSLRA; and (iii) final approval of the proposed Plan of

6    Allocation.[1]

## **PRELIMINARY STATEMENT**

8    Lead Plaintiff has secured a $17,750,000 cash settlement in exchange for dismissal of this

9    Action and release of claims. The Settlement represents approximately 37.6% to 44.6% of maximum

10    estimated class-wide damages in this case, far more than is typically recovered in securities class

11    actions. Lead Plaintiff respectfully submits that the proposed Settlement is an exceptional result,

12    especially in light of the risks that Plaintiffs faced in proving the securities fraud claims at issue,

13    including the substantial risks to proving at summary judgment and trial the elements of falsity,

14    materiality, scienter, loss causation, and damages for its Section 10(b) claims and the elements of

15    falsity and materiality as well as defeating affirmative defenses of negative causation and due diligence

16    for its Section 11 claims.

17    The Settlement is the product of extended arm's-length negotiations between experienced and

18    well-informed counsel, including a full-day mediation session and several subsequent negotiations

19    before an experienced mediator, Michelle Yoshida of Phillips ADR. ¶¶22-24.  The Settlement was

20    based on a final mediator's recommendation by Ms. Yoshida. ¶23. As detailed in the accompanying

21    Silverman Declaration and summarized herein, the proposed Settlement provides a substantial, certain,

22    and prompt recovery for the Class while avoiding the significant risks of continued litigation, including

23    the risk that the Class could recover less than the Settlement amount (or nothing at all) after years of

24    additional litigation, appeals, and delay.  ¶¶37-42.

25

26    [1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and
defined in the Stipulation and Agreement of Settlement dated April 4, 2024 ("Stipulation"). *See* ECF.

27    No. 117-1.  Except where otherwise noted, all references to "¶___" are to the numbered paragraphs of
the Declaration of Joshua B. Silverman ("Silverman Declaration") filed herewith.

28

The proposed Settlement is the result of Lead Plaintiff's and Lead Counsel's substantial litigation efforts. As set forth in detail in the Silverman Declaration, the Parties reached the Settlement after Lead Counsel: (i) conducted an extensive factual investigation, which included reviewing Defendants' SEC filings and other public documents, interviewing former employees of the Company, and developing leads from the investigation; (ii) researched, drafted and filed the Amended Complaint, Second Amended Complaint and operative Third Amended Complaint for the Violations of the Federal Securities Laws (ECF Nos. 47, 58, 82); (iii) largely defeated Defendants' motion to dismiss; (iv) propounded discovery requests upon Defendants and served subpoenas upon relevant third-parties; (v) reviewed and analyzed approximately 145,000 pages of documents produced by Defendants and third-parties; (vi) secured an affidavit from a key witness about the allegations central to this Action; (vii) prepared responses to Defendants' discovery requests; (viii) prepared to take the depositions of Defendants' employees and third-party individuals; (ix) prepared to move for class certification, including consulting with an econometric expert on market efficiency; (x) drafted a mediation statement; and (xi) engaged in the extensive, arm's-length mediation process that ultimately yielded this Settlement.  ¶¶6-26.  These activities permitted an informed assessment of the strengths and weaknesses of the claims and defenses asserted and the risks and delays of continued litigation and trial. Based on their evaluation, Lead Plaintiff and Lead Counsel strongly believe the Settlement is fair, reasonable, and adequate. *See* Declaration of Sharon Bernstein, ECF No. 117-3.

The reaction of the Class thus far has also been overwhelmingly positive. In addition to publication and website notice, 72,532 postcard notices were mailed or emailed to potential Class Members, advising them of the Settlement and providing a link to the full Plan of Allocation. *See* Section II, *infra*. Although the objection and exclusion dates have not yet passed, to date, not a single Class Member has objected or sought exclusion.  ¶36.

As more fully discussed below, the Settlement satisfies all of the factors considered under Rule 23 and in the Ninth Circuit for approval of a class action settlement. Accordingly, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, and approve the Plan of Allocation.

## ARGUMENT

### I.     THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020).[2] Securities class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. The settlement of complex cases also promotes the efficient utilization of scarce judicial resources and the speedy resolution of claims. *See Garner v. State Farm Mut. Auto. Ins. Co*., No. CV 08 1365 CW EMC, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continu[ed] … litigation" and "produce[s] a prompt, certain, and substantial recovery for the … class.").

Under Rule 23(e)(2), "a district court may approve a class action settlement only after finding that the settlement is fair, reasonable, and adequate." *Campbell*, 951 F.3d at 1120-21. In making that determination, the Court must consider the factors laid out in Rule 23(e)(2)(A)-(D):

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account, [among other things,] the costs, risks, and delay of trial and appeal […]; and

(D) the proposal treats class members equitably relative to each other.

Consistent with Rule 23(e)(2), courts in the Ninth Circuit look at the following factors when assessing final approval of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[3]

---

[2] All internal citations and quotations are omitted and emphasis is added unless otherwise stated.

[3] "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co., Ltd.* No. 15-CV-01685-BLF, 2017 WL 342059, at *7

---

1   *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004).

2   The Ninth Circuit has explained that review of settlements should be "limited to the extent

3   necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching

4   by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

5   reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir.

6   1998). Thus, a settlement hearing should "not to be turned into a trial or rehearsal for trial on the

7   merits," *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), and a court

8   "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the

9   merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful

10  and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955

11  F.2d 1268, 1291 (9th Cir. 1992).

12  Under Rule 23 and the *Churchill* factors, the Settlement is fair, reasonable and adequate, and

13  should be approved by the Court.

14  **A.  Lead Plaintiff and Lead Counsel Have Adequately Represented the Class**

15  At the settlement approval stage, the first Rule 23 consideration is whether "the class

16  representatives and class counsel have adequately represented the class." Fed. R. Civ. P.23(e)(2)(A).

17  To determine adequacy, courts consider two questions: (1) does the Lead Plaintiff or her counsel have

18  any conflicts of interest with other class members, and (2) will the Lead Plaintiff and her counsel

19  prosecute the action vigorously on behalf of the class. *See Ellis v. Costco Wholesale Corp*., 657 F.3d

20  970, 985 (9th Cir. 2011).

21  Here, Lead Plaintiff's claims are typical of and coextensive with those of the Settlement Class,

22  and it does not have any interests that are antagonistic to the interest of other members of the

23  Settlement Class. *See Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978). Lead

24  Plaintiff purchased Ginkgo common stock during the Class Period and traceable to the

25  Proxy/Registration Statement, and was allegedly injured by the same public misrepresentations as all

26  other Class Members. Lead Plaintiff—like all other Class Members—has an interest in obtaining the

27

28  (N.D. Cal. Jan. 23, 2017).

largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Further, Lead Plaintiff and Lead Counsel have proved their adequacy by advancing this litigation and achieving the proposed Settlement. Lead Plaintiff is an engaged individual investor who actively supervised and participated in the litigation. *See* ¶37 and Ex. B thereto. Ms. Bernstein retained counsel who are highly experienced in securities litigation and have successfully prosecuted many complex class actions throughout the United States. *See* Firm Resume, Ex. C to Silverman Declaration. Lead Plaintiff and Lead Counsel vigorously prosecuted the Class's claims, including: (i) conducting an extensive investigation into the alleged fraud; (ii) drafting a detailed complaint based on the investigation; (iii) successfully opposing Defendants' motion to dismiss; (iv) conducting substantial fact discovery; and (v) participating in extended arm's-length settlement negotiations, including a full-day mediation session with a professional mediator. ¶¶6-26.  Given Lead Plaintiff's and Lead Counsel's demonstrated prosecution of the case, it is without question that they have adequately represented the Class. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding securities class settlement to be procedurally fair where "Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018), a*ff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) at *13 (unpublished) (granting final approval and noting that "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation" and that "given this prosecution of the action, counsel possessed sufficient information to make an informed decision about settlement").

Moreover, in addition to adequacy, all of the other factors under Federal Rules of Civil Procedure 23(a) and (b) that the Court preliminarily determined were met remain satisfied. *See* ECF No. 126. Thus, the Class should remain certified. *See, e.g., Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, No. 12-CV-05259-JST, 2014 WL 2967474, at *2 (N.D. Cal. June 30, 2014).

1

2

### B.  The Settlement was the Result of Arm's-Length Negotiations Between Informed Counsel Involving a Skilled Mediator

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." This consideration overlaps with certain *Churchill* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, 15-cv-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019).

Courts have long recognized an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, No. C 03 5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (noting that courts afford "a presumption of fairness and reasonableness" to settlements that were "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"); *cf Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) (finding that the settlement was the product of "serious, informed, non-collusive negotiations performed at arms-length" where it involved a mediator and vigorousness litigation). Courts have also reasoned that "one important factor [to consider] is that the parties reached the settlement ... with a third-party mediator." *In re Banc of Cal. Sec. Litig.*, No. SACV1700118AGDFMX, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (finding "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The Settlement results from arm's-length negotiations facilitated by an experienced mediator, Michelle Yoshida, after more than two years of vigorous litigation and extensive discovery.  ¶¶22-26. "A presumption of fairness and adequacy attaches to a class action settlement reached in arm's-length negotiations by experienced class counsel after meaningful discovery." *Dunakin v. Quigley*, No. 2:14-cv-567-JLR, 2017 WL 123011, at *2 (W.D. Wash. Jan. 10, 2017); *see also Rodriguez v. West Publishing Corporation,* 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."). That the negotiations were aided

by the participation of an experienced mediator also matters. As another court in this District recently noted, "Ms. Yoshida is regularly recognized as an experienced mediator." *In re Fibrogen, Inc.*, No. 3:21-cv-02623-EMC, ECF No. 58 at *3 (N.D. Cal. Feb. 13, 2024); *see also Kendall v. Odonate Therapeutics, Inc.*, No. 3:20-CV-01828-H-LL, 2022 WL 188364, at *6 (S.D. Cal. Jan. 18, 2022) (noting that mediation before Ms. Yoshida resulted in "serious, informed, and non-collusive negotiations"); *Todd v. STAAR Surgical Co.*, No. CV14-5263 MWF (GJSx), 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (describing Ms. Yoshida as an "experienced mediator"). Here, the Parties settled only after a mediator's proposal was evaluated and ultimately accepted by the Parties after several weeks of arm's-length negotiation. ¶24.

At the time of the negotiations, Lead Plaintiff and Lead Counsel were well-informed about the strengths and weaknesses of their case. They oversaw a private investigation, including interviews of more than a dozen former employees, reviewed approximately 145,000 pages of documents, consulted with damages experts, and obtained the affidavit testimony of a primary source for the Scorpion Capital report that was central to the claims in the Third Amended Complaint. ¶¶37-42. Thus, they had more than adequate information to "reasonably evaluate their … positions" in mediation. *See Eisen v. Porsche Cars N. Am., Inc.,* No. 2:11-CV-09405-CAS, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement where record established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses"); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *7 (C.D. Cal. July 9, 2013) (approving settlement where, as here, "the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative").

None of the indicia of collusion are present here. *See In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011). Only a standard benchmark fee is sought; the Class Members will receive the majority of the Settlement Amount as a monetary distribution; no *cy pres* is anticipated; there is no "clear sailing" arrangement; any remaining funds (for example from uncashed

checks) will not revert to defendants;[4] and the Plan of Allocation calls for the Net Settlement Fund to be allocated to Plaintiff and other Class Members pursuant to the same *pro rata* formula.

### C. The Settlement Provides Adequate Relief for the Class Relative to the Costs and Risks of Further Litigation and all other Relevant Factors

Rule 23(e)(2)(C)(i) and the first four *Churchill* factors concern the amount of relief provided relative to the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and the specific risks related to class certification. These factors are often considered together. *Betorina v. Randstad US, L.P.*, No. 15-CV-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017). Here, they unquestionably support final approval. Securities cases, like the present one, "are highly complex and … securities class litigation is notably difficult and notoriously uncertain." *Hefler,* 2018 WL 6619983*,* at *6; *see, e.g.*, *Garner*, 2010 WL 1687832, at *10 ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.") (citation and internal quotation marks omitted); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.") (O'Connor, J, sitting by designation). This case is no different.

### 1. The Settlement Provides Meaningful Relief to Injured Class Members

The amount of a settlement "is generally considered the most important [factor], because the critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). In assessing the recovery, a fundamental question is how the value of the settlement compares to the amount the class potentially could recover at trial, discounted for risk, delay, and expense. "Naturally, the agreement reached normally embodies a compromise; in exchange

---

[4] *See* Stipulation at ¶VIII(N) ("This is not a claims made settlement. There will be no reversions to Defendants or their insurers after the Effective Date.").

1  for the saving of cost and elimination of risk, the parties each give up something they might have won

2  had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624.

3       Here, the proposed Settlement provides an all-cash recovery of $17,750,000. Lead Plaintiff,

4  after consulting with a damages expert, estimates that class-wide damages for the Section 10(b) claims

5  are $39.8 million, and for the Section 11 claims are $47.2 million after accounting for negative

6  causation. ¶39. These damages are overlapping, not cumulative. Plaintiff does not estimate that the

7  Section 14 claims provide any damages that are not fully accounted for within the estimates provided

8  under Section 10(b) and Section 11. *Id.*

9        Accordingly, the Settlement represents a recovery of approximately 44.56% for the Section

10 10(b) claims, and 37.6% for the Section 11 claims. *Id.* This recovery vastly exceeds other recoveries

11 identified as "fair and reasonable" in this Circuit. *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, Case No. 20-

12 cv-08600-JST, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) (settlement amount "between

13 approximately 5% and 20.5% of the realistic maximum damages" for a securities class action and "fair

14 and reasonable"); *Kendall v. Odonate Therapeutics, Inc.*, Case No. 3:20-cv-01828-H-LL, 2022 WL

15 1997530, at *5 (S.D. Cal. June 6, 2022) (approving settlement of securities class claims that

16 represented "approximately 3.49% of the maximum estimate damages, which is higher than the 2021

17 median recovery in securities class actions"); *In re Aqua Metals, Inc. Sec. Litig.*, Case No. 17-cv-

18 07142-HSG, 2022 WL 612804, at *6 (N.D. Cal. Mar. 2, 2022) (settlement that "constitutes 7.3% of

19 the most likely recoverable damages" was "is in line with comparable class action settlements"); *In re

20 Biolase, Inc. Sec. Litig.*, Case No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318, at *4 (C.D. Cal.

21 Oct. 13, 2015) (settlement of "approximately 8%" of damages "equals or surpasses the recovery in

22 many other securities class actions"); *IBEW Local 697 v. Int'l Game Tech.*, No. 3:09–cv–00419–

23 MMD–WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement that represented

24 "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered"); *In re Lyft, Inc.

25 Sec. Litig.*, Case No. 19-cv-02690-HSG, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022)

26 (settlement representing 3.2% to 4.7% of estimated maximum damages for Section 11 claims was

27 "well within the range of possible approval"); *see also Hunt v. Bloom Energy*, Case No. 19-cv-02935-

28 HSG, 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (approving 5.2% of maximum estimated

recovery for Section 11 claims). By any measure, the Settlement provides an extraordinary benefit to Class Members and weighs in favor of final approval.

### 2. The Strengths and Risks of Lead Plaintiff's Case and the Serious Risks of Continued Litigation

The strong recovery ensured by the Settlement is even more favorable when weighed against the risks of continued litigation. While Lead Plaintiff remains confident in her ability to ultimately prove the alleged claims, summary judgment and trial are always risky. *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, Case No. 17-cv-0137-PSG-KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval"). To start, Defendants have vigorously argued that the Proxy/Registration Statement contained no misrepresentations, they did not act with scienter, and that no losses could accrue as a result of any omission after a short seller report was published on October 6, 2021. Risks of proving falsity, scienter, and loss causation posed significant obstacles at summary judgment or trial. *See, e.g.*, *In re Celera Corp. Sec. Litig.*, Case No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial…. Lead Plaintiff would risk recovering nothing without a settlement."); *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial). If Defendants prevailed on any of these arguments, damages would be substantially reduced or eliminated.

In particular, Lead Plaintiff faced serious risks in establishing at trial falsity and materiality. While Lead Plaintiff believes that she has a strong argument that the Proxy/Registration Statement and other statements misrepresented the relationship between Ginkgo and the related companies that were its largest customers, and consequently overstated Ginkgo's ability to generate non-related party revenue, Defendants could point to public records and other text within Ginkgo's filings from which an investor might piece together such information. Proving scienter for the §10(b) claims would also be difficult. As courts have recognized, defendants' state of mind in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence." *In re Amgen Inc. Sec.*

*Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is a "complex and difficult [element]to establish at trial").

Furthermore, issues relating to damages would likely involve an unpredictable "battle of the experts." The uncertainty as to which side's expert's view might be credited by the jury presents a substantial risk in securities actions. *See, e.g., In re Celera Corp. Sec. Litig.*, No. 5:10-CV-02604-EJD, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to the "battle of experts" weighed in favor of settlement approval); *Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) ( "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky").

Class certification also posed some risks. Absent the Settlement, Defendants likely would have contested certification. ¶41. And, even if a class was certified, it could be altered or amended at any time before final judgment. *See, e.g., Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*, 173 F.3d 713, 721 (9th Cir. 1999).  "[T]here is always a risk of decertification – especially when, as here, Plaintiffs must overcome causation and damages defenses." *See, e.g., Fleming v. Impax Labs, Inc.*, Case No. 16-cv-06557-HSG, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022)). Accordingly, this factor supports final approval.

### 3.  The Expense and Likely Duration of Further Litigation

The expense and likely duration of the case also support final approval of the Settlement. *See Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1373, 1376 (9th Cir. 1993*)* ("the cost, complexity and time of fully litigating the case all suggest that this settlement was fair"). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Here, the expense and duration of protracted litigation, including class certification, summary judgment, preparing and trying the case to a jury and any appeals, would be significant. ¶41. If litigation were to continue, Lead Plaintiff would also have to retain costly subject matter, accounting and econometric experts. *Id*. Barring a settlement, this case

would be litigated for years with no assurance of a better outcome for the Class. *See Zynga*, 2016 WL 537946, at *10 ("continuing litigation would not only be costly–representing expenses that would take away from any ultimate classwide recovery–but would also delay resolution and recovery for Settlement Class Members"). Even if Lead Plaintiff won at trial, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez*, 563 F.3d at 966; *see also Ikuseghan v. Multicare Health Sys.*, No. 3:14-cv-5539-BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant delay…. Absent the proposed Settlement, Class Members would likely not obtain relief, if any, for a period of years."). Worse, an appeal could overturn a verdict and return Lead Plaintiff to the starting block. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).

Considering those risks, the Settlement provides substantial and immediate relief, without subjecting Class Members to the risks, duration, and expense of continuing litigation.

### 4.  All Other Factors in Rule 23(e)(2)(C) Support Final Approval

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors also supports approval of the proposed Settlement.

First, the procedures for processing Class Members' claims and distributing the proceeds of the Settlement to Authorized Claimants are well-established, effective methods that have been widely used in securities class action litigation. The proceeds of the Settlement will be distributed to Class Members who submit eligible Claim Forms with required documentation to the Court-approved claims administrator, Strategic Claims Services ("SCS"). SCS, an independent company with extensive experience administering securities class actions, will review and process the claims under Lead Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims

1   or request review of the denial of their claims by the Court, and then mail or wire claimants their *pro*

2   *rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of

3   the Court. This type of claims processing is standard in securities class actions, and is necessary

4   because neither Lead Plaintiff nor Defendants possess data regarding investors' transactions in Ginkgo

5   stock that would allow the parties to create a claims-free process to distribute Settlement funds.

6          Second, the relief provided in the Settlement is also adequate when the terms and timing of the

7   proposed award of attorney's fees are taken into account. The full Settlement amount has already been

8   escrowed for the benefit of the Class, and therefore no fee has been sought while funding was

9   uncertain. Lead Counsel seeks only a benchmark fee, and has agreed that the Settlement may not be

10  terminated based on any ruling with respect to attorneys' fees.

11         Third, Rule 23(e)(2)(C) asks the Court to consider the proposed Settlement's fairness in light

12  of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv).

13  As previously disclosed, the only agreement the Parties entered into in addition to the Stipulation itself

14  was a confidential Supplemental Agreement regarding requests for exclusion. The Supplemental

15  Agreement sets forth the conditions under which Ginkgo has the option to terminate the Settlement in

16  the event that requests for exclusion from the Class reach a certain agreed-upon threshold. As is

17  standard in securities class actions, the Supplemental Agreement is kept confidential to avoid

18  incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual

19  settlement. This type of agreement is standard in securities class actions and has no negative impact

20  on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018

21  WL 4207245, at *11 (N.D. Cal. Sept. 4. 2018).

22         **D.  Additional Factors Considered by the Ninth Circuit Support Approval of the
            Settlement**

23         Two additional factors considered by the Ninth Circuit in assessing the reasonableness of a

24  proposed settlement are "the experience and views of counsel" and "the reaction of the class members

25  to the proposed settlement." *Churchill*, 361 F.3d at 575. Both support the Settlement.

26         It is well-settled that courts grant "considerable weight" to the opinion of experienced counsel

27  supporting settlement after legitimate, arm's-length negotiation. *See Quiruz v. Specialty Commodities,*

28

---

*Inc.*, Case No. 17-cv-03300-BLF, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020); *see also Int'l IBEW Loc. 697 Pension,* 2012 WL 5199742, at *3 (giving "considerable weight to Lead Counsel's representation that the Settlement Amount is a favorable recovery based on their understanding of the issues and challenges in this case in particular and their experience in securities litigation in general"). Through their efforts on behalf of the Class, Lead Counsel and Lead Plaintiff have concluded that the proposed Settlement is fair, reasonable, and adequate. As the Ninth Circuit observed in *Rodriguez v. West Publishing Corporation*, Lead Counsel's informed opinion supports approval as "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. 563 F.3d at 965; *see also In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA(JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."); *DIRECTV, Inc*., 221 F.R.D. at 528 ("[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Here, Lead Plaintiff is represented by experienced counsel who focus their practices on securities litigation and have negotiated numerous other substantial class action settlements nationwide. ¶52; *see also* Firm Resume, Ex. C to Silverman Declaration. At the time of the mediation, Lead Counsel had a firm understanding of the legal and factual strengths and weaknesses of the claims. In this case, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).[5] Throughout the Action and settlement negotiations, Defendants were also zealously represented by experienced counsel, from Wachtell, Lipton, Rosen & Katz LLP and Morrison & Foerster LLP. Such representation dispels any suggestion that a settlement process was infected with collusion or was otherwise procedurally defective.

Courts in this Circuit also typically consider "the reaction of the class members to the proposed settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 896 (N.D. Cal.

---

[5] This analysis is consistent with the first two factors listed in Rule 23(e)(2), which examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Advisory Committee Notes to 2018 Rule 23(e) amendments.

2020); *see also Churchill*, 361 F.3d at 577. Specifically, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v. Dropbox, Inc*., No. 19-CV-06348-BLF, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021). While the deadline to object to or opt out of the Settlement is November 21, 2024, as of October 16, 2024, no Class Member has objected or sought exclusion. ¶36.

Should any objections or exclusion requests be received, Lead Counsel will address them in the reply papers, which are due to be filed with the Court on November 25, 2024. Additionally, on that date and consistent with the schedule ordered by the Court (*see* ECF No. 126), Lead Plaintiff will file a declaration identifying the number of claims, objections and exclusion requests received, and updated reporting on undeliverable mailings.

## II.    THE NOTICE PROGRAM SATISFIED DUE PROCESS AND COMPLIED WITH FED. R. CIV. P. 23(E)

Notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound" by the Settlement. Fed. R. Civ. P. 23(e)(1)(B). In granting preliminary approval of the Settlement, the Court approved Plaintiff's proposed notice program. *See* ECF No. 124. The notice program provided the best notice practicable, combining individually mailed Postcard Notice to all Class Members who could be identified with reasonable effort, supplemented by the Summary Notice in a widely circulated publication, transmission over a business newswire, and publication on internet websites, thereby satisfying all requirements of Rule 23, due process, the PSLRA, and the Northern District's Guidance. *See, e.g*., *Hunt v. Bloom Energy Corp*., No. 19-CV-02935-HSG, 2024 WL 1995840, at *4 (N.D. Cal. May 6, 2024) (approving similar notice program that included mailing notices to potential class members and nominees followed by publication notice and posting notice on a settlement website); *Zynga*, 2016 WL 537946, at *7 (similar notice program constituted "the best form of notice available under the circumstances").

Pursuant to and in compliance with the Preliminary Approval Order, the Court-appointed Settlement Administrator, SCS, notified 72,532 potential Class Members, either by mailed Postcard Notice or emailed the direct link to the location of the Notice on the Settlement webpage. *See* Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the

Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl.") at ¶7, attached as Exhibit A to Silverman Declaration. On August 13, 2024, SCS posted on a URL dedicated to this Settlement (www.GinkgoSecuritiesSettlement.com) the Notice and Proof of Claim, Postcard Notice, Preliminary Approval Order and Stipulation with exhibits. *Id*. at ¶11. On September 4, 2024 and on September 18, 2024, SCS caused *Globe Newswire* to disseminate electronically the Summary Notice. *Id*. at ¶9. As such, this Court should approve the Notice program as satisfying due process and the PSLRA's mandate.

Notice of a class action settlement "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575. The contents of the notices here provided all necessary information for Class Members to make an informed decision regarding the Settlement and contained all of the information required by Rule 23(c)(2)(B), the PSLRA, and Northern District's Guidance. The Notice identified, among other things: (1) the nature of the case and the claims asserted; (2) the definition of the Class; (3) the amount of the Settlement; (4) the Plan of Allocation; (5) the reasons why the Parties are proposing the Settlement; (6) the estimated average recovery per affected share; (7) the attorneys' fees, litigation expenses and lead plaintiff awards that would be sought; (8) the identity and contact information for Lead Counsel; (9) Class Members' right to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses as well as the right to request exclusion; (10) the binding effect of a judgment on Class Members; (11) the amount of Plaintiff's award; and (12) the dates and deadlines for Settlement-related events. ¶29.

Specifically, the Court-approved notice program provided Class Members with a description of the litigation, the $17,750,000 Settlement Fund and Plan of Allocation; Lead Counsel's intent to apply for a fee award in an amount not to exceed 25% of the Settlement Fund, and an amount not to exceed $325,000 for expense reimbursements to be paid from the Settlement Fund plus interest on both amounts; the request for a compensation award to Lead Plaintiff in the amount of $5,000 to be paid from the Settlement Fund, and the contact information for Lead Counsel and the Settlement Administrator, including how to make inquiries to both. The Notice program also identified the date, time, and place of the Settlement Hearing, described how to file a claim, and described how to object

1    to or request exclusion from the Settlement, and specified the deadlines for filing claims, objecting, or

2    requesting exclusion. Furthermore, the Court-approved notice program adequately informed Class

3    Members of the Settlement's impact, including release of claims against Defendants for any Class

4    Members who do not opt-out. Craig Decl., Exs. A, C-D. For these reasons, the Notice program

5    approved by the Court and faithfully executed by SCS satisfied all applicable requirements.

6    **III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

7            In addition to seeking final approval of the Settlement, Leda Plaintiff also seeks final approval

8    of the proposed Plan of Allocation. The Plan of Allocation, drafted with the assistance of a damages

9    expert, is a fair and reasonable method for allocating the proceeds of the Settlement among eligible

10   claimants and treats all Class Members equitably, as required by Rule 23(e)(2)(D). The standard for

11   approval of a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure

12   is the same as the standard applicable to the settlement as a whole—the plan must be fair, reasonable,

13   and adequate. *See Class Plaintiffs*, 955 F.2d at 1284; *see also Vataj v. Johnson, No.* 19-CV-06996-

14   HSG, 2021 WL 5161927, at *2 (N.D. Cal. Nov. 5, 2021). "[A] plan of allocation … fairly treats class

15   members by awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes

16   interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members'

17   individual claims and the timing of purchases of the securities at issue." *Redwen*, 2013 WL 12303367,

18   at *8.

19           Here, Lead Counsel prepared the Plan of Allocation with the assistance of a consulting expert

20   on damages. ¶¶43-47. The Plan of Allocation was fully disclosed in the Notice available to all potential

21   Class Members and, as of the filing of this Motion, no Class Member has filed an objection to it. Craig

22   Decl., ¶¶12-13. The Plan of Allocation provides for recovery for shares purchased between May 11,

23   2021 and October 5, 2021 under Section 10(b), on a *pro rata* basis based on the Class Member's

24   recognized loss, which incorporates a 90-day lookback period, the advice of Plaintiff's experts, and

25   the principles of economic loss articulated by the Supreme Court in *Dura Pharmaceuticals, Inc. v.*

26   *Broudo*, 544 U.S. 336 (2005). It also calculates Section 11 damages based on the statutory formula

27   while accounting for the significant negative causation defense that would be available to Defendants

28   at trial. To avoid duplication, the Plan of Allocation provides that a Class Member will receive the

greater of her Section 11 or Section 10(b) damages. Overall, the Plan of Allocation provides for customary *pro rata* distribution of the Net Settlement Fund among all eligible Class Members who have submitted a valid Proof of Claim. These features are standard in securities class action plans of allocation, and plans with these elements are routinely held to be fair and reasonable. *See, e.g., Extreme Networks*, 2019 WL 3290770, at *8; *Zynga*, 2016 WL 537946, at *15.

<u>**CONCLUSION**</u>

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court: (i) grant final approval of the Settlement; (ii) find that notice to the Class satisfied due process, Rule 23 and the PSLRA; and (iii) approve the Plan of Allocation.

1    Dated: October 17, 2024                    Respectfully submitted,

2                                               POMERANTZ LLP

3                                   By:    */s/ Joshua B. Silverman*
                                           Joshua B. Silverman (*pro hac vice*)
4                                           Brian O'Connell (SBN 314318)
                                           Genc Arifi (*pro hac vice*)
5                                           10 S. LaSalle St., Suite 3505
                                           Chicago, Illinois 60603
6                                           Telephone: (312) 377-1181
                                           jbsilverman@pomlaw.com
7                                           boconnell@pomlaw.com
                                           garifi@pomlaw.com
8

9                                           Jennifer Pafiti (SBN 282790)
                                           1100 Glendon Avenue, 15th Floor
10                                          Los Angeles, CA 90024
                                           Telephone: (310) 405-7190
11                                          jpafiti@pomlaw.com

12                                          *Lead Counsel for Lead Plaintiff and the*
13                                          *Proposed Classes*

14                                          **THE SCHALL LAW FIRM**
                                           Brian Schall (SBN 290685)
15                                          Rina Restaino (SBN 285415)
                                           2049 Century Park East, Suite 2460
16                                          Los Angeles, CA 90067
                                           Telephone: (310) 301-3335
17                                          brian@schallfirm.com
                                           rina@schallfirm.com
18

19                                          *Additional Counsel for Lead Plaintiff*
20                                          *and the Proposed Classes*

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2024, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

Dated: October 17, 2024

POMERANTZ LLP

By: */s/ Genc Arifi*
    Genc Arifi

*Lead Counsel for Lead Plaintiff and the Proposed Classes*