**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff and the Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| SHARON BERNSTEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GINKGO BIOWORKS HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 4:21-cv-08943-KAW<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES AND AWARD TO LEAD PLAINTIFF**<br><br>Judge:       Hon. Kandis A. Westmore<br>Courtroom: 4<br>Date:         December 5, 2024<br>Time:        1:30 p.m. |

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on December 5, 2024, or on such other date as she may be heard, Lead Plaintiff Sharon Bernstein ("Lead Plaintiff") will appear at Courtroom 4, United States District Court for the Northern District of California -- Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612, or remotely via Zoom or telephone as the Court may direct, and will and hereby moves for an order pursuant to Federal Rule of Civil Procedure 23(e)(2) for an order awarding attorneys' fees and litigation expenses incurred in the above-captioned securities class action (the "Action").

This motion is based upon this Notice of Motion and Motion (together, the "Motion"); the supporting Memorandum that follows, the accompanying declarations, including the Declaration of Joshua B. Silverman and exhibits attached thereto, the prior declarations of Brian O'Connell and Sharon Bernstein, ECF Nos. 117-2 and 117-3, other previous filings and orders in this case, and any further representations as may be made by counsel at hearing on this matter.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should approve Lead Counsel's application for an award of attorneys' fees.

2. Whether the Court should approve Lead Counsel's application for payment of litigation expenses.

3. Whether the Court should approve Lead Plaintiff's application for an award reimbursing her costs incurred in representing the Class pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(4).

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iii

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ................................................................................................................2

I.  LEAD COUNSEL'S BENCHMARK FEE REQUEST SHOULD BE GRANTED..........2

    A.  Lead Counsel Should be Granted a Reasonable Percentage Fee from the Common Fund it Obtained .............................................................................2

    B.  Lead Counsel's Request for Attorneys' Fees of 25% of the Settlement Fund is Consistent with the "Benchmark Percentage" in this Circuit ...................................4

    C.  Additional Factors Considered By Courts Support Approval of the Requested Fee ....................................................................................5

       1.  The Result Achieved Supports the Fee Request .................................................6

       2.  The Substantial Risks of Litigation Support the Fee Request .........................6

       3.  The Skill Required and the Quality of the Work Performed Support the Fee Request ......................................................................8

       4.  The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel ......................................................................9

       5.  Awards Made in Similar Cases Support the Fee Request...............................10

       6.  The Class's Reaction to Date Supports the Fee Request ...............................10

       7.  A Lodestar Crosscheck Confirms that the Requested Fee is Reasonable........11

II.  LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED ...............................................................................................13

III. LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE ....................................................14

CONCLUSION.............................................................................................................15

1

**TABLE OF AUTHORITIES**

2

**Cases**                                                                                                         **Page(s)**

3

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ...................................................................................6, 7

4

*Andrews v. Plains All Am. Pipeline L.P.*,
   No. CV154113PSGJEMX, 2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ............10

5

*Azar v. Blount Int'l, Inc.*,
   No. 3:16-CV-0483-SI, 2019 WL 7372658 (D. Or. Dec. 31, 2019) .........................6

6

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)................................................................................................3

7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)................................................................................................2

8

9

*Booth v. Strategic Realty Trust, Inc.*,
   No. 13-CV-04921-JST, 2015 WL 6002919 (N.D. Cal. Oct. 15, 2015)...................4

10

*Destefano v. Zynga, Inc.*,
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............5, 8, 14

11

12

*Farrell v. Bank of Am. Corp., N.A.*,
   827 F. App'x 628 (9th Cir. 2020) ........................................................................11

13

*Fischel v. Equitable Life Assurance Soc'y of U.S.*,
   307 F.3d 997 (9th Cir. 2002) .................................................................................4

14

15

*Fleming v. Impax Labs., Inc.*,
   No. 16-CV-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) ................5

16

*Glass v. UBS Fin. Servs., Inc.*,
   331 F. App'x 452 (9th Cir. 2009) ..........................................................................3

17

18

*Glickenhaus & Co. v. Household Int'l, Inc.*,
   787 F.3d 408 (7th Cir. 2015).............................................................................7, 8

19

20

*Gunter v. Ridgewood Energy Corp.*,
   223 F.3d 190 (3d Cir. 2000)...................................................................................3

21

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...............................................................................4

22

23

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ...................................................................................13

24

*Harris v. Vector Mktg. Corp.*,
   No. C-08-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ......................15

25

26

*Hefler v. Pekoc*,
   802 F. App'x 285 (9th Cir. 2020) ..........................................................................6

27

28

*Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ......................6, 11, 12

*IBEW Local 697 v. Int'l Game Tech.*,
    No. 3:09-CV-00419-MMD, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...............................6

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) .........................................................................................3

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
    No. 217CV04776DOCKESX, 2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) .......................4

*In re Amgen Inc. Sec. Litig.*,
    No. CV 7-2536 PSG (PLAX), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016)......................11

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-MD-02617-LHK, 2018 WL 3960068 (N.D. Cal.Aug. 17, 2018) ...............................4

*In re Banc of Cal. Sec. Litig.*,
    No. SACV1700138DMGDFMX, 2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ..................5

*In re Bluetooth Headset Prod. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ...............................................................................................3, 4

*In re Capacitors Antitrust Litig.*,
    No. 3:14-CV-03264-JD, 2017 WL 9613950 (N.D. Cal. June 27, 2017) ..............................12

*In re Celera Corp. Sec. Litig.*,
    Case No. 5:10-CV-02604-EJD, 2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) .....................7

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005)................................................................................................3, 4

*In re ECOtality, Inc. Sec. Litig.*,
    No. 13-CV-03791-SC, 2015 WL 5117618 (N.D. Cal. Aug. 28, 2015) .................................15

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) .......................................................................................8

*In re Extreme Networks, Inc. Sec. Litig.*,
    No. 15-CV-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019) .................................6

*In re Facebook Biometric Info. Priv. Litig.*,
    522 F. Supp. 3d 617 (N.D. Cal. 2021) ..................................................................................12

*In re Facebook Biometric Info. Priv. Litig.*,
    2022 WL 822923 (9th Cir. Mar. 17, 2022) ...........................................................................12

*In re Heritage Bond Litig.*,
    No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) .........................6

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................................8

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ...................................................9, 10

*In re Lidoderm Antitrust Litig.*,
No. 14-MD-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ............................12

*In re Lyft Inc. Sec. Litig.*,
19-CV-02690-HSG, 2023 WL 5068504 (N.D. Cal. Aug. 7, 2023) ...................................5

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
No. 4:14-MD-2541-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) ..............................12

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
768 F. App'x 651 (9th Cir. 2019) .........................................................12

*In re OmniVision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...................................3, 4, 5, 6, 7, 8, 13

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .............................................................2, 4

*In re Oracle Corp. Sec. Litig.*,
No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009)....................................9

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ...............................................................9

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ...............................................................6

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017).................................................................8

*In re: Petrobras Sec. Litig.*,
312 F.R.D. 354 (S.D.N.Y. 2016) ............................................................8

*In re Restoration Robotics, Inc. Sec. Litig.*,
No. 5:18-CV-03712-EJD, 2021 WL 4124089 (N.D. Cal. Sept. 9, 2021)..............................15

*In re Silver Wheaton Corp. Sec. Litig.*,
No. 215CV05146CASPJWX, 2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) ..............................5

*In re Tesla, Inc. Sec. Litig.*,
No. 18-CV-04865-EMC, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ...............................9

*In re Tesla, Inc. Sec. Litig.*,
No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023).......................................9

*In re Tezos Sec. Litig.*,
No. 3:17-CV-06779-RS, 2020 WL 13699946 (N.D. Cal. Aug. 28, 2020) ............................5

*In re Twitter Inc. Sec. Litig.*,
No. 416CV05314JSTSK, 2022 WL 17248115 (N.D. Cal. Nov. 21, 2022)..............................12

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) .................................................................................11

*In re Verifone Holdings, Inc. Sec. Litig.*,
    No. C-07-6140 EMC, 2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ...........................12

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    No. 2672 CRB (JSC), 2017 WL 1047834, (N.D. Cal. Mar. 17, 2017) .....................9, 10, 11

*In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prods. Liab. Litig.*,
    No. MDL 2672 CRB (JSC), 2019 WL 2077847 (N.D. Cal. May 10, 2019) ..........................5

*In re Wash. Mut., Inc. Sec. Litig*,
    No. 08-MD-1919 MJP, 2011 WL 8190466 (W.D. Wash. Nov. 4, 2011) ...............................10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) ..................................................................................2, 3, 6, 9

*Jiangchen v. Rentech, Inc.*,
    No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .................7, 12

*Johnson v. US Auto Parts Network, Inc.*,
    No. CV07-2030-GW(JCX), 2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) ...........................7

*Kanefsky v. Honeywell Int'l Inc.*,
    No. 18-CV-15536 (WJM), 2022 WL 1320827 (D.N.J. May 3, 2022) ...................................8

*Kanawi v. Bechtel Corp.*,
    No. C 06-05566 CRB, 2011 WL 782244 (N.D. Cal. Mar. 1, 2011) ...................................15

*Larsen v. Trader Joe's Co.*,
    No. 11-CV-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ..............................9

*Luna v. Marvell Tech. Grp.*,
    No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ...................................7

*Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ...........................................................................................4

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523, 529 (C.D. Cal. 2004) ........................................................................10, 11

*Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..........................3, 7

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
    292 F. Supp. 3d 1018 (S.D. Cal. 2017) ..............................................................................15

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ...........................................................................................12

*Pokorny v. Quixtar, Inc.*,
    No. C 07-0201 SC, 2013 WL 3790896 (N.D. Cal. July 18, 2013) ...................................4, 5

*Savani v. URS Pro. Sols. LLC*,
   No. 1:06-CV-02805-JMC, 2014 WL 172503 (D.S.C. Jan. 15, 2014) .......................................9

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016) .................................................................................................2

*Stanger v. China Elec. Motor, Inc.*,
   812 F.3d 734 (9th Cir. 2016) ...................................................................................................9

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .................................................................................................14

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
   551 U.S. 308 (2007)................................................................................................................3

*Thomas v. MagnaChip Semiconductor Corp.*,
   No. 14-CV-01160-JST, 2018 WL 2234598 (N.D. Cal. May 15, 2018) ...........................14,15

*Vataj v. Johnson*,
   No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ..................................6

*Vincent v. Hughes Air W., Inc.*,
   557 F.2d 759 (9th Cir. 1977) ..................................................................................................2

*Vincent v. Reser*,
   No. C 11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ...............................13, 14

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .................................................................2, 3, 5, 6, 8, 12

*Wehlage v. Evergreen at Arvin LLC*,
   No. 4:10-CV-05839-CW, 2012 WL 4755371 (N.D. Cal. Oct. 4, 2012)................................15

**Rules & Regulations**

Fed. R. Civ. Proc. 23(e) ...........................................................................................................1

**Statutes**

15 U.S.C. § 78u-4(a)(4) ......................................................................................................14, 15

15 U.S.C. § 78u-4(a)(6) ...............................................................................................................3

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Counsel Pomerantz LLP ("Lead Counsel") respectfully submits this memorandum of points and authorities in support of its Motion for: (a) an award of attorneys' fees in the benchmark amount of 25% of the Settlement Amount and payment of Lead Counsel's litigation expenses of $203,929.20, plus interest on both amounts that has accrued while in escrow; and (b) a PSLRA award to Lead Plaintiff in the amount of $5,000.[1]

**PRELIMINARY STATEMENT**

Lead Counsel has vigorously litigated this securities class action on a fully contingent basis for more than two years, without receiving any compensation at all. Lead Counsel had to—and did—dedicate substantial efforts to the Action from its outset, despite the very real risk that it might recover nothing. It conducted an extensive investigation, including interviews with over a dozen former Ginkgo employees, prepared a detailed Third Amended Complaint, successfully opposed Defendants' motion to dismiss, worked extensively with experts, conducted substantial fact discovery, prepared to move for class certification and participated in a full-day mediation session and multiple follow-up negotiations. ¶¶6-26.

These efforts resulted in a very favorable $17,750,000 cash settlement for the benefit of the Class, representing a recovery of approximately 37.6% to 44.56% of maximum estimated class-wide damages. ¶39. That is a far higher recovery than most securities class actions. Id. The Settlement also eliminated the significant risks and delay that continued litigation would impose upon the Class, including the risk that there may be a lower recovery or no recovery at all. Having achieved a significant monetary recovery after litigating this case without any payment at all for more than two years, Lead Counsel now seeks benchmark attorneys' fees of 25% and payment for the litigation expenses that it incurred in prosecuting the Action on behalf of Lead Plaintiff and the Class, plus interest that has accrued on such amounts while deposited in the Escrow Account.

Lead Counsel respectfully submits that the superior result achieved for the Class, and its hard

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Stipulation and Agreement of Settlement dated April 4, 2024 ("Stipulation"). *See* ECF. No. 117-1. Except where otherwise noted, all references to "¶___" are to the numbered paragraphs of the Declaration of Joshua B. Silverman ("Silverman Declaration") filed herewith.

work, skill, and persistence fully merit the requested fee.  The Ninth Circuit has long recognized that in class actions resulting in a common fund like this one, a percentage award is appropriate and an award of 25% of the settlement amount is the "benchmark." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).  The benchmark fee percentage requested is also lower than the *ex ante* percentage contemplated by Lead Plaintiff's retainer with Lead Counsel.  ¶55. Moreover, the requested fee represents a multiplier of 2.42 of Plaintiff's Counsel's lodestar, ¶59, which is just under the midpoint of the range cited as well within the range of multipliers typically awarded in comparable cases.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) (holding approval of fees amounting to 3.65 times lodestar was appropriate and noting that most fees awarded constituted multipliers of lodestar between one and four).

Lead Counsel also seeks to recover the litigation expenses that it incurred in prosecuting and resolving this litigation, which totaled $203,929.20.  As discussed below, these expenses were reasonable and necessary for the prosecution and resolution of the litigation and are of the type that are routinely charged to clients in non-contingent litigation.  Finally, Lead Counsel seeks a $5,000 compensatory award for the time and expenses of Lead Plaintiff in prosecuting this Action, as permitted by the PSLRA.

## ARGUMENT

## I.    LEAD COUNSEL'S BENCHMARK FEE REQUEST SHOULD BE GRANTED

### A.  Lead Counsel Should be Granted a Reasonable Percentage Fee from the Common Fund it Obtained

It is well-established that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).  Further, the Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The policy rationale for awarding attorneys' fees from the common fund is that "those who benefit[] from the creation of the

1   fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash.*

2   *Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

3          In addition to providing just compensation, an award of reasonable attorneys' fees from a

4   common fund ensures that "competent counsel continue to be willing to undertake risky [and] complex

5   … litigation." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).  In this regard,

6   the Supreme Court has also emphasized that private securities actions, such as this, provide "a most

7   effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC]

8   action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *Tellabs, Inc. v.*

9   *Makor Issues & Rights Ltd.*, 551 U.S. 308, 313 (2007) (same).

10         Where a settlement produces a common fund, courts employ either the percentage-of-recovery

11  method or the lodestar method in awarding attorneys' fees. *WPPSS*, 19 F.3d at 1296; *Vizcaino*, 290

12  F.3d at 1047.  However, the percentage-of-recovery method is now clearly the prevailing method used

13  in this Circuit.  *See, e.g.*, *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009)

14  (affirming use of percentage-of-recovery method to award 25% fee); *In re OmniVision Techs., Inc.*,

15  559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (finding use of "the common fund doctrine" to be the

16  prevailing practice in the Ninth Circuit for awarding attorneys' fees).

17         Courts prefer the percentage-of-recovery method because it: (i) parallels the use of percentage-

18  based contingency fee contracts, which are the norm in private litigation; (ii) aligns the lawyers'

19  interests with those of the class in achieving the maximum possible recovery; and (iii) reduces the

20  burden on courts by eliminating the need for full-blown and time-consuming lodestar method analysis.

21  *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942-43 (9th Cir. 2011); *In re Activision*

22  *Sec. Litig.*, 723 F. Supp. 1373, 1374-77 (N.D. Cal. 1989) (collecting cases).  In addition, the use of the

23  percentage-of-recovery method comports with the language of the PSLRA, which states that "[t]otal

24  attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a

25  reasonable percentage of the amount of any damages and prejudgment interest actually paid to the

26  class." 15 U.S.C. § 78u-4(a)(6); *see also Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406

27  DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("[T]he PSLRA has made percentage-of-

28  recovery the standard for determining whether attorney's fees are reasonable.") (quoting *In re Cendant*

*Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005)).

**B. Lead Counsel's Request for Attorneys' Fees of 25% of the Settlement Fund is Consistent with the "Benchmark Percentage" in this Circuit**

The Ninth Circuit has established that, in common-fund cases such as this one, the "benchmark" percentage attorney fee award is 25% of the settlement fund. *See, e.g.*, *Online DVD Rental Antitrust Litig.*, 779 F.3d at 949 ("in this circuit, the benchmark percentage is 25%"); *In re Bluetooth* 654 F.3d at 942 ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure"); *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) ("We have established a 25 percent 'benchmark' in percentage-of-the-fund cases"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("we established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases").

Courts in this District have found fee awards in the amount of the 25% benchmark to be "presumptively reasonable." *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018) ("[I]t is well established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees."); *Booth v. Strategic Realty Trust, Inc.*, No. 13-CV-04921-JST, 2015 WL 6002919, at *7 (N.D. Cal. Oct. 15, 2015) ("[T]he 25% award requested by Class Counsel is equal to the 'benchmark' percentage for a reasonable fee award in the Ninth Circuit. Such a fee award is 'presumptively reasonable.'") (citations omitted).

Indeed, courts have found that, "in most common fund cases, the award *exceeds* that benchmark" of 25%. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also In re Allergan, Inc. Proxy Violation Derivatives Litig.*, No. 217CV04776DOCKESX, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) ("The Ninth Circuit uses a 25% benchmark in common fund class actions, and 'in most common fund cases, the award exceeds that benchmark,' with a 30% award the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'"); *Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 WL 3790896, at *1 (N.D. Cal. July

18, 2013) (same).

The benchmark should not be viewed as applicable only to small settlements. Courts in this Circuit regularly approve benchmark fee requests in larger settlements than here. *See, e.g.*, *In re Lyft Inc. Sec. Litig.*, 19-CV-02690-HSG, 2023 WL 5068504, at *11 (N.D. Cal. Aug. 7, 2023) (awarding 25% of $25 million settlement); *Fleming v. Impax Labs., Inc.*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement); *In re Tezos Sec. Litig.*, No. 3:17-CV-06779-RS, 2020 WL 13699946, at *1 (N.D. Cal. Aug. 28, 2020) (awarding 33.3% of $25 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, No. 215CV05146CASPJWX, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Banc of Cal. Sec. Litig.*, No. SACV1700138DMGDFMX, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement); *In re Volkswagen "Clean Diesel" Mktg, Sales Practices, and Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (awarding 25% of $48 million settlement); *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) (awarding 25% of $23 million settlement). Accordingly, the fact that the 25% fee request is consistent with the Ninth Circuit benchmark supports the reasonableness of the fee.

### C. Additional Factors Considered by Courts Support Approval of the Requested Fee

The reasonableness of Lead Counsel's 25% fee request is further confirmed by additional factors considered by courts in this Circuit, including (1) the results achieved, (2) the risks of litigation, (3) the skill required and the quality of work, (4) the contingent nature of the fee and the financial burden carried by the plaintiffs, (5) awards made in similar cases, (6) the class's reaction, and (7) a lodestar cross-check. *See Vizcaino,* 290 F.3d at 1048-50; *Omnivision*, 559 F. Supp. 2d at 1046-48.

#### 1. The Result Achieved Supports the Fee Request

Courts consider the results achieved in assessing a fee award request. *See Vizcaino*, 290 F.3d at 1048 ("exceptional results are a relevant" factor in awarding attorneys' fees). Lead Counsel respectfully submits that the $17.75 million cash settlement is a very favorable result for the Class in this case, especially considering the risk of a significantly lower recovery—or no recovery at all—if the case proceeded through summary judgment, trial, and the inevitable appeals.

As previously detailed, the $17.75 million recovery represents between 37.6% to 44.56% of maximum estimated class-wide damages, a recovery several orders of magnitude higher than the percentages courts in this Circuit have found typical, reasonable or standard. *See, e.g.*, *Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of maximum potential damages); *Azar v. Blount Int'l, Inc.*, No. 3:16-CV-0483-SI, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement recovering 4.63% to 7.65% of the class's total estimated damages); *IBEW Local 697 v. Int'l Game Tech.,* No. 3:09-CV-00419-MMD, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered" and finding it "within the median recovery in securities class actions settled in the last few years"). That the result here is so far above typical percentage recoveries only highlights that the benchmark fee request is reasonable.

## 2. The Substantial Risks of Litigation Support the Fee Request

"The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005); *see also, e.g.*, *WPPSS*, 19 F.3d at 1299-1301; *Omnivision*, 559 F. Supp. 2d at 1047. The "complexity of the issues and the risks" undertaken are also important factors in determining a fee award. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995); *see also Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance."). "'[I]n general, securities actions are highly complex and … securities class litigation is notably difficult and notoriously uncertain.'" *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020); *Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) ("In general, securities fraud class actions are complex cases that are time-consuming and difficult to prove."). Indeed, "[t]o be successful, a securities class-action plaintiff

must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).  For these reasons, in securities class actions, fee awards often exceed the 25% benchmark recognized in the Ninth Circuit.  *Omnivision*, 559 F. Supp. 2d at 1047.

Lead Counsel faced significant risks in this Action.  This Action was subject to the heightened pleading requirements of the PSLRA.  *See Johnson v. US Auto Parts Network, Inc.*, No. CV07-2030-GW(JCX), 2008 WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) (noting that "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA").  Lead Counsel expended significant resources, including a vast private investigation, to obtain the information necessary to overcome that hurdle, all while knowing that a dismissal would lead to the loss of that money and time.

As is outlined in the Silverman Declaration and accompanying final approval motion, the risks only grew at the merits stage.  Defendants, represented by world-class counsel at Wachtell, Lipton, Rosen & Katz LLP and Morrison & Foerster LLP, hotly contested this litigation at every step, and were expected to launch substantial challenges at summary judgment and trial regarding falsity, scienter, and loss causation posed significant obstacles at summary judgment or trial.  ¶¶40,52.  Such challenges can pose serious risks in securities litigation, and were expected to here.  *See, e.g.*, *In re Celera Corp. Sec. Litig.*, Case No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015); *Luna v. Marvell Tech.  Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018).  Significantly, Defendants would need to defeat only one element of Lead Plaintiff's claims to prevail, and there was a significant risk the jury would agree with Defendants' experts and find no liability, no damages, or award far less than Lead Plaintiff sought to recover.  *See, e.g.*, *Radient Pharms.*, 2014 WL 1802293, at *2 (noting, in securities class action, that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law.  The outcome of that analysis is inherently difficult to predict and risky").  And even if Lead Plaintiff survived summary judgment and obtained a favorable verdict at trial, she would ***still*** have faced the risk of partial or complete reversal in post-trial proceedings. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and

remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction). The $17.75 million Settlement, achieved in the face of these significant risks, amply supports the requested benchmark fee award.

### 3. The Skill Required and the Quality of the Work Performed Support the Fee Request

Courts have recognized that the "'prosecution and management of a complex national class action requires unique legal skills and abilities.'" *Zynga*, 2016 WL 537946, at *17; *see also Vizcaino*, 290 F.3d at 1048. "'This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss.'" *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at 1047). In considering this factor, courts also consider the quality and vigor of opposing counsel, which was excellent here. *See, e.g.*, *In re Heritage Bond Litig*., No. 02-ML-1475 DT, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").

Lead Counsel is among the most experienced and skilled practitioners in the securities litigation field, and the firm has a long and successful track record in securities cases throughout the country. Silverman Decl., Ex. C. *See, e.g.*, *In re: Petrobras Sec. Litig.*, 312 F.R.D. 354, 362 (S.D.N.Y. 2016), *aff'd in part, vacated in part sub nom. In re Petrobras Sec.*, 862 F.3d 250 (2d Cir. 2017) (finding Pomerantz is "qualified, experienced and able to conduct the litigation," in case achieving a $3 billion settlement); *Kanefsky v. Honeywell Int'l Inc.*, No. 18-CV-15536 (WJM), 2022 WL 1320827, at *8 (D.N.J. May 3, 2022) (finding Pomerantz to be "highly experienced," to have "won substantial recoveries" in securities class actions and "qualified"). Lead Counsel's experience in complex securities cases facilitated its ability to negotiate the Settlement, ultimately resulting in a strong recovery for the Class.

The skill and quality of representation mattered deeply in this case. Through its extensive investigation and aggressive approach to pleading SPAC cases, Lead Counsel was able to expand a

sparse initial complaint asserting only Section 10(b) claims to amended complaints that viably pled both Exchange Act and Securities Act claims.  ¶¶9-10.  Moreover, Lead Counsel was able to advance these claims over the strong opposition of some of the best firms in the nation.  ¶¶11-14, 52.  And, when negotiating the Settlement, Lead Counsel did not accept a quick, easy resolution at the rates achieved in most cases but rather pushed hard for a superior result.  ¶¶22-24.  Thus, the skill and quality of representation support the requested fee.

### 4.   The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

"It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all." *In re Volkswagen,* No. 2672 CRB (JSC), 2017 WL 1047834, at *3 (N.D. Cal. Mar. 17, 2017); *see WPPSS*, 19 F.3d at 1299 (same); *Larsen v. Trader Joe's Co*., No. 11-CV-05188-WHO, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (same). This "practice encourages the legal profession to assume such a risk and promotes competent representation for plaintiffs who could not otherwise hire an attorney." *Id.*  "This incentive is especially important in securities cases." *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016).

"The risk of no recovery in complex cases of this sort is not merely hypothetical." *Savani v. URS Pro. Sols. LLC*, No. 1:06-CV-02805-JMC, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014).  There have been many class actions in which counsel for the plaintiffs took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise.  For example, in *In re Oracle Corp. Sec. Litig.*, No. C01-00988SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010), the court granted summary judgment to defendants after eight years of litigation.  In another Ninth Circuit PSLRA case, after a lengthy trial involving securities claims against Tesla, the jury reached a verdict in defendants' favor – despite the Court previously granting summary judgment on certain elements in the *plaintiff's* favor, evincing the strength of the claims.  *See In re Tesla, Inc. Sec. Litig.*, No. 18-CV-04865-EMC, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) and *Tesla*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023); *see also In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556

(N.D. Cal. Nov. 27, 2007) (similar).

Here, Plaintiff's Counsel have received no compensation during the course of the Action and invested over 2,668.25 hours for a total lodestar of $1,829,977.50, and Lead Counsel incurred substantial expenses in prosecuting this case to a successful resolution.  Additional work in connection with the Settlement and claims administration already has been undertaken and will be required going forward.  Any fee award has always been contingent on the result achieved and on this Court's discretion.  Indeed, the only certainty was that there would be no fee without a successful result.  Lead Counsel committed significant resources of both time and money to vigorously prosecute these Actions and successfully brought it to a highly favorable conclusion for the Class's benefit.  *See generally* Silverman Declaration.  The contingent nature of Lead Counsel's representation thus further supports approval of the requested fee.  *See Andrews v. Plains All Am. Pipeline L.P.,* No. CV154113PSGJEMX, 2022 WL 4453864, at *3 (C.D. Cal. Sept. 20, 2022*)* (in awarding 32% fee on $230 million settlement, court found "the substantial risks borne by Class Counsel in pursuing this class action for seven years with no guarantee of recovering fees or litigation expenses also militates in favor of finding the requested fee award reasonable").

### 5.  Awards Made in Similar Cases Support the Fee Request

As discussed above in Section I.B, the benchmark fee requested here represents a lower percentage than is often awarded in similar cases.  Accordingly, this factor supports the fee request, especially when considering the superior result achieved here.

### 6.  The Class's Reaction to Date Supports the Fee Request

Courts within the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee.  *See, e.g.,* *Volkswagen,* 2017 WL 1047834, at *4 (considering that "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed fee award" to be "a strong, positive response from the class, supporting Class Counsel's requested fees"); *In re Wash. Mut., Inc. Sec. Litig,* No. 08-MD-1919 MJP, 2011 WL 8190466, at *2 (W.D. Wash. Nov. 4, 2011) (noting, in approving fee request, that "no substantive objections to the amount of fees and expenses requested were filed").  While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises

a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at *15 ("As with the Settlement itself, the lack of objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval.").

Class Members were informed in the Postcard Notice and Notice that Lead Counsel would move the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount and for payment of litigation expenses not to exceed $325,000.  ¶¶27-36.  Class Members were also advised of their right to object to the fee and expense request, and that such objections are to be filed with the Court no later than November 21, 2024.  *Id*.  While this deadline has not yet passed, to date, not a ***single*** objection has been received.  ¶36.  Should any objections be received, Lead Counsel will address them in its reply papers.  Finally, Lead Plaintiff has approved the percentage sought here.  *See* Silverman Decl., Ex. B, ¶5.

### 7.  A Lodestar Crosscheck Confirms that the Requested Fee is Reasonable

To assess the reasonableness of a fee awarded under the percentage-of-the-fund method, courts may (but are not required to) cross check the proposed award against counsel's lodestar.  *Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628, 630 (9th Cir. 2020) (refusing to mandate "a [cross-check] requirement"); *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) (noting that "analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit").  When the lodestar is used as a cross check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys."  *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *accord Volkswagen*, 2017 WL 1047834, at *5 n.5 (overruling objection that "the information provided in support of Class Counsel's lodestar amount as inadequate" because "it is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting … [courts] may rely on summaries submitted by the attorneys and need not review actual billing records'") (alterations and ellipsis in original); *Hefler*, 2018 WL 6619983, at *14 (confirming that "trial courts need not, and

indeed should not, become green-eyeshade accountants" in context of lodestar cross check, and noting that "the Court seeks to do rough justice, not to achieve auditing perfection").

"[C]ourts 'calculate[] the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation.'" *Rentech*, 2019 WL 5173771, at *10 (second alteration in original) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). In this case, the lodestar method demonstrates the reasonableness of the requested fee. As detailed here and in the accompanying Silverman Declaration, Plaintiff's Counsel's lodestar, derived by multiplying the hours spent on the Action by each attorney and litigation professional by their current hourly rates, is $1,829,977.50. ¶¶56-59.

The requested 25% fee represents a multiplier of 2.42 on Plaintiff's Counsel's lodestar, which is comfortably within the range of lodestar multipliers that courts in this Circuit regularly approve. ¶59; *see, e.g.*, *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2017 WL 9613950, at *6 (N.D. Cal. June 27, 2017) (noting, "[i]n the Ninth Circuit, a lodestar multiplier of around 4 times has frequently been awarded in common fund cases"); *Hefler*, 2018 WL 6619983, at *14 (awarding fee representing a 3.22 multiplier); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 633 (N.D. Cal. 2021) (awarding fee in $650 million common fund settlement representing 4.71 multiplier), *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022); *In re Twitter Inc. Sec. Litig.*, No. 416CV05314JSTSK, 2022 WL 17248115, at *2 (N.D. Cal. Nov. 21, 2022) (awarding fee representing 4.14 multiplier); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 4:14-MD-2541-CW, 2017 WL 6040065, at *7-*9 (N.D. Cal. Dec. 6, 2017) (awarding fee representing a 3.66 multiplier), *aff'd*, 768 F. App'x 651 (9th Cir. 2019); *see generally Vizcaino*, 290 F.3d at 1050-52, 1051 n.6 (affirming 3.65 multiplier on appeal and finding that multipliers ranged as high as 19.6, with the most common range from 1.0 to 4.0); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *3 (N.D. Cal. Sept. 20, 2018) (finding multipliers range from 1.0 to 4.0 in the vast majority of cases, citing *Vizcaino*, 290 F.3d at 1052-54); *In re Verifone Holdings, Inc. Sec. Litig.*, No. C-07-6140 EMC, 2014 WL 12646027, at *2 (N.D. Cal. Feb. 18, 2014) (noting "over 80% of multipliers fall between 1.0 and 4.0" and awarding fee where multiplier was 4.3). As more fully

explained in the Silverman Declaration, given the risk undertaken by Lead Counsel and the result achieved for the Class, a multiplier of 2.42 is reasonable here.

Each of the relevant factors supports the award of attorneys' fees of 25% of the Settlement Amount, plus accrued interest. Accordingly, this fee request is reasonable and should be approved.

## II.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE APPROVED.

Lead Counsel further requests an award in the amount of $203,929.20 (plus interest accrued thereon while in the Escrow Account) from the common fund for litigation expenses incurred in prosecuting and resolving the Actions on behalf of the Class. "Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, No. C 11-03572 CRB, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013). In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover "those out-of-pocket expenses that would normally be charged to a fee-paying client").

The expenses sought by Lead Counsel are of the type that are charged to hourly paying clients and were required to prosecute the litigation. These expense items were incurred separately by Lead Counsel, and such charges are not duplicated in the firms' hourly rates. From the beginning of the Action, Lead Counsel was aware that it might not recover any of its expenses and would not recover anything unless and until the Action was successfully resolved. Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate it for the lost use of the funds advanced to prosecute this Action. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action. ¶61.

As detailed in the Silverman Declaration filed herewith, Lead Counsel has incurred a total of $203,929.20 in expenses in prosecuting the Action on behalf of the Class. ¶¶60-64. This amount is

smaller than the $325,000 maximum anticipated amount set forth in the Notice, to which no Class Member objected.  ¶36.  The overwhelming majority of expenses are attributable to experts.  ¶36. Other expenses include mediation fees, ediscovery hosting fees, and court costs.  *Id.*  All are of the types routinely approved.  *See, e.g.*, *Zynga*, 2016 WL 537946, at *22 ("[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."); *Vincent*, 2013 WL 621865, at *5 (granting reimbursement of costs for "three experts and the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses").

### III.    LEAD PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE

Under the PSLRA, a class representative may seek an award of reasonable costs and expenses directly relating to the representation of the class.  *See* 15 U.S.C. §78u-4(a)(4); *see also Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs are eligible for "reasonable" payments as part of a class action settlement).  Factors to consider include, "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, ... the amount of time and effort the plaintiff expended in pursuing the litigation" among others.  *Id.*  (ellipse in original); *see* William B. Rubenstein, *On Plaintiff "Incentive" Payments*, Class Action Attorney Fee Digest (Vol. 1, Apr. 2007), 95-97 (same).  As explained by Professor Rubenstein, "[t]he general theory behind incentive awards is that the monitoring, litigating, and gate-keeping functions serve important public goals.  Incentive awards encourage plaintiffs to step forward and provide these public goods."  *Id.*  Such awards "can be justified by the fact that the representative is not similarly situated to other class members: she did something they did not and is rightly paid for stepping forward and working to safeguard the class's interests."  *Id.*

Lead Plaintiff, who has been quite involved throughout this litigation and has given generously of her time and oversight, requests a modest award of $5,000.  Courts in this Circuit have found such awards "presumptively reasonable."  *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-

JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018) ("An award of $5,000 is 'presumptively reasonable.'") (citation omitted); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) ("as a general matter, $5,000 is a reasonable amount" for compensatory awards); *In re Restoration Robotics, Inc. Sec. Litig.*, No. 5:18-CV-03712-EJD, 2021 WL 4124089, at *1 (N.D. Cal. Sept. 9, 2021) (awarding $15,000 to plaintiff as incentive award); *Kanawi v. Bechtel Corp.*, No. C 06-05566 CRB, 2011 WL 782244, at *3 (N.D. Cal. Mar. 1, 2011) (granting $7,500 incentive awards to each named plaintiff).

As set forth in her declaration, Ms. Bernstein spent at least 85 hours overseeing this case, working with counsel, and responding to discovery. *See Silverman Decl.,* Ex. B, ¶3. Moreover, Ms. Bernstein undertook risks by "lending [her] name[] to this case, and thus subjecting [herself] to public attention." *See, e.g.*, *Wehlage v. Evergreen at Arvin LLC*, No. 4:10-CV-05839-CW, 2012 WL 4755371, at *5 (N.D. Cal. Oct. 4, 2012) (finding award justified in part on this basis). Significantly, the requested award was identified in the Notice, which was widely disseminated to Class Members, and no Class Member has objected to date. ¶36. *See also Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1059 (S.D. Cal. 2017) ("Finally, and importantly, there have been no Class Member objections to the service award provision, further indicating the reasonableness of a $5,000 total incentive award for the [two] named representatives."); *In re ECOtality, Inc. Sec. Litig.*, No. 13-CV-03791-SC, 2015 WL 5117618, at *2, *5 (N.D. Cal. Aug. 28, 2015) (approving incentive award to plaintiff where no objections had been filed).

## **CONCLUSION**

For all of the reasons stated above and in the accompanying declaration, Lead Counsel respectfully requests that the Court (i) award attorneys' fees of 25% of the $17,750,000 gross Settlement Fund ($4,437,500) and expenses of $203,929.20, plus interest on both amounts at the same rate as earned by the Settlement Fund while in the Escrow Account; and (ii) award Lead Plaintiff $5,000 in connection with her representation of the Class pursuant to 15 U.S.C. §78u-4(a)(4). To effectuate this relief, Lead Plaintiff and Lead Counsel respectfully request that the Court enter the Proposed Final Approval Order which addresses the relief requested herein.

1

2 Dated: October 17, 2024                      Respectfully submitted,

3                                               POMERANTZ LLP

4                                  By:    /s/ Joshua B. Silverman
                                          Joshua B. Silverman (*pro hac vice*)
5                                         Brian O'Connell (SBN 314318)
                                          Genc Arifi (*pro hac vice*)
6                                         10 S. LaSalle St., Suite 3505
                                          Chicago, Illinois 60603
7                                         Telephone: (312) 377-1181
                                          jbsilverman@pomlaw.com
8                                         boconnell@pomlaw.com
                                          garifi@pomlaw.com
9

10                                        Jennifer Pafiti (SBN 282790)
                                          1100 Glendon Avenue, 15th Floor
11                                        Los Angeles, CA 90024
                                          Telephone: (310) 405-7190
12                                        jpafiti@pomlaw.com

13                                        *Lead Counsel for Lead Plaintiff and the*
14                                        *Proposed Classes*

15                                        **THE SCHALL LAW FIRM**
                                          Brian Schall (SBN 290685)
16                                        Rina Restaino (SBN 285415)
                                          2049 Century Park East, Suite 2460
17                                        Los Angeles, CA 90067
                                          Telephone: (310) 301-3335
18                                        brian@schallfirm.com
                                          rina@schallfirm.com
19

20                                        *Additional Counsel for Lead Plaintiff*
21                                        *and the Proposed Classes*

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2024, a copy of the foregoing was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

Dated: October 17, 2024

POMERANTZ LLP

By: */s/ Genc Arifi*
       Genc Arifi

*Lead Counsel for Lead Plaintiff and the Proposed Classes*