UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON BERNSTEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GINKGO BIOWORKS HOLDINGS, INC., et al.,<br><br>Defendants. | Case No. 4:21-cv-08943-KAW<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; ORDER GRANTING MOTION FOR ATTORNEYS' FEES AND AWARD TO LEAD PLAINTIFF**<br><br>Re: Dkt. Nos. 127, 128 |

On October 17, 2024, Lead Plaintiff Sharon Bernstein filed an unopposed motion for final approval of class action settlement and an unopposed motion for an award of attorneys' fees, litigation expenses and award to Lead Plaintiff.

On December 5, 2024, the Court held a fairness hearing, and having carefully considered the briefs, argument of counsel, and all matters presented to the Court, hereby GRANTS Lead Plaintiff's motions as set forth below.

## I.   BACKGROUND

### A.   Factual Background

Lead Plaintiff brings this federal securities class action against Defendant Ginkgo Bioworks Holdings, Inc. ("Ginkgo" or "the Company"), Harry E. Sloan, Eli Baker, Scott M. Delman, Joshua Kazam, Isaac Lee, Timothy Leiweke, Dennis A. Miller, Laurence E. Paul, Jason Kelly, Reshma Shetty, Arie Belldegrun, Marijn Dekkers, Christian Henry, Reshma Kewalramani, Shyam Sankar, and Anna Marie Wagner under Sections 11 and 15 of the Securities Act of 1933 ("Securities Act"), Section 14(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Section 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5. (Third Am. Complaint,

"TAC," Dkt. No. 82 ¶ 1.)

The factual and procedural background is more fully described in the Court's prior order approving Plaintiff's motion for preliminary approval of settlement. (Dkt. No. 126.) In sum, the crux of the dispute is whether Defendants violated securities laws by allegedly making more than a dozen misleading omissions and misrepresentations in a Proxy Registration Statement to secure Ginkgo's merger with a special purpose acquisition company named Soaring Eagle Acquisition Corp., and to effect Ginkgo's initial public offering. *See id.* It brings these claims on behalf of

> All persons who: (1) all persons who purchased or otherwise acquired shares in Ginkgo (including by way of exchange of SRNG shares) pursuant or traceable to the proxy/registration statement (the "Proxy/Registration Statement") that Defendants filed with the SEC on Form S-4 on May 14, 2021, and that was thereafter amended on Forms S-4/A on June 28, 2021, July 16, 2021, August 4, 2021, and August 9, 2021 and the body of which was incorporated into the final prospectus on Form 424(b)(3) filed on August 13, 2021; (2) all persons who were solicited to approve the Ginkgo-SRNG merger and to retain rather than redeem SRNG shares pursuant to the Proxy/Registration Statement; and (3) all persons who purchased or otherwise acquired in a public offering or on public markets securities of Ginkgo (including its predecessor SRNG) between May 11, 2021 and October 5, 2021, both dates inclusive.

(Stipulation of Settlement, "Stipulation," Dkt. No. 117-1 § I.G.) The Class excludes (a) Defendants and their immediate families; (b) current and former directors of Ginkgo or SRNG; (c) any entity that has entered into a stockholder agreement or co-venture agreement with Ginkgo, or was a Private Investment in Public Equities ("PIPE") investor in Ginkgo; and (d) any entity controlled, majority-owned or wholly owned, or affiliated with any of the above, as well as any persons and entities who or which submit a request for exclusion from the Class that is accepted by the Court. *Id.*

**B.   Relevant Procedural Background**

On March 25, 2022, Plaintiff Bernstein was appointed as the Lead Plaintiff in this Action, and Pomerantz LLP was approved as lead counsel. (Dkt. No. 31.) On March 15, 2023, Lead Plaintiff filed the third amended complaint. (TAC, Dkt. No. 82.)

On July 31, 2024, the Court granted preliminary approval of a class-wide settlement. (Dkt. No. 126.) At this same time, the Court approved certification of a provisional Settlement Class for settlement purposes only. *Id.* at 10.

1    On October 17, 2024, Lead Plaintiff filed an unopposed motion for final approval of class action settlement and an unopposed motion for an award of attorneys' fees, litigation expenses and award to Lead Plaintiff. (Pl.'s Mot. for Final Approval, "Pl.'s Mot.," Dkt. No. 127; Pl.'s Fees Mot., Dkt. No. 128.)  On November 25, 2024, Lead Plaintiff filed a reply in support of the motion for final approval. (Pl.'s Reply, Dkt. No. 131.)  On December 6, 2024, Lead Plaintiff filed a supplemental brief in support of the request to pay the settlement administration costs from the Settlement Fund, as agreed to in the Stipulation of Settlement. (Pl.'s Suppl. Br., Dkt. No. 133.)

## II.    LEGAL STANDARD

"The claims, issues, or defenses of a certified class ... may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* at 1026. In making that determination, the district court must balance several factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing Hanlon, 150 F.3d at 1026).

Additionally, Rule 23 now requires district courts to consider a similar list of factors, including the adequacy of representation by class representatives and class counsel, whether the proposal was negotiated at arm's length, and the adequacy of the relief and equitable treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors were "not designed 'to displace any factor [developed under existing circuits' precedent], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D.

3

Cal. Dec. 18, 2018), aff'd sub nom. *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (quoting Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment).

Settlements that occur before formal class certification also "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, the court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (internal quotation marks and citations omitted). Such signs include: (1) counsel receiving a disproportionate distribution of the settlement, or where a class receives no monetary distribution, but class counsel is amply rewarded; (2) where the parties negotiate a "clear sailing" arrangement for the payment of attorney's fees separate and apart from class funds; and (3) where there is a reversion of fees to the defendant. *Id.* at 947.

### III. DISCUSSION

For the reasons set forth below, the Court will grant final approval of the settlement.

#### A. Adequacy of the Notice and Administrator's Costs

A "court must direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The parties must provide class members with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir. 1982).

The Court approved the parties' proposed notice plan when it granted preliminary approval. (Dkt. No. 126 at 10.) Under the approved notice plan, Lead Plaintiff retained Strategic Claims Services ("SCS") as the settlement administrator. *Id.* at 11. SCS provided notice to the members of the class in the form that the Court approved previously. Securities class actions differ, because Defendants do not have a master list of shareholder putative class members. As a result, SCS sent notices out via the Depository Trust Company ("DTC") for publication on its Legal Notice

4

1  System, which provides email alerts, as well as to over 2,000 "Nominee" brokerage firms, mutual
2  funds, pension funds, money managers, insurance companies, and financial institutions requesting
3  contact information of any potential class members. (Decl. of Margery Craig, "Craig Decl.," Dkt.
4  No. 129-1 ¶¶ 3-4.)

SCS's efforts resulted in a total of 72,532 notices being sent to potential class members via email and U.S. Mail. (Craig Decl. ¶ 7.) Of those, 18,994 were Postcard Notices with only 47 initially deemed undeliverable. *Id.* ¶ 8. Of those 47 undeliverable notices, USPS provided SCS with 10 forwarding addresses, and SCS immediately mailed out another Postcard Notice to the updated addresses. *Id.* Then, SCS successfully skip traced 17 of the remaining 37 addresses, and remailed Postcard Notices to those addresses, such that only 20 remained undeliverable. (Craig Decl. ¶¶ 8-9.) As of November 22, 2024, SCS had received 38,329 claims. (Suppl. Decl. of Margery Craig, "Suppl. Craig Decl.," Dkt. No. 131-1 ¶ 10.) No objections were filed with the Court, and only one request for exclusion was received by SCS. (Suppl. Craig Decl., ¶¶ 8-9, Ex. A.)

In light of the above procedures, which adhere to the previously approved notice plan, the Court finds that the parties have sufficiently provided notice to the settlement class members. *See Perkins v. LinkedIn Corp.*, No. 13-cv-04303-LHK, 2016 WL 613255, at *7 (N.D. Cal. Feb. 16, 2016) (finding class notice adequate where the approved notice was sent in accordance with the approved notice plan, which was "consistent with the requirements of Rule 23 and due process.").

Lead Plaintiff requests that SCS be awarded up to $250,000 in settlement administration costs and believes that the costs can be kept under that amount. (Pl.'s Suppl. Br. at 2.) In the Settlement Agreement, the parties agreed to allocate up to $300,000 of the Settlement Fund for Settlement Administration Costs. (Settlement Agreement ¶ IV.B.) Thus, the Court approves SCS's costs of $250,000, which will be paid out of the Settlement Fund.

**B.  Approval of Settlement**

    **i.  *Churchill* and *Bluetooth* Factors favor Final Approval**

The Court finds that the *Churchill* factors support final approval of the Settlement.

First, Lead Plaintiff's case presented several risks. For example, Lead Plaintiff ran the risk

of not certifying the class for the claims alleged, as well as the risks inherent in dispositive motion practice and trial. (Pl.'s Mot. at 10.) Thus, the Court finds that the first *Churchill* factor favors final approval.

Second, in the absence of settlement, this case would likely be subject to significant further litigation. Lead Plaintiff would still have to seek class certification, and disputes exist as to the merits of the case, particularly in light of the scienter requirement. (Pl.'s Mot. at 10-11.) The Court concludes that the second *Churchill* factor favors final approval.

Third, Lead Plaintiff faced a risk that she would not be able to obtain and maintain class certification, particularly in terms of causation and damages. (Pl.'s Mot. at 11.) This factor favors final approval.

Fourth, the amount offered by the Settlement is acceptable, as the Gross Settlement Amount is $17,750,000. (Pl.'s Mot. at 9.) Lead Plaintiff, after consulting with a damages expert, estimates that class-wide damages for the Section 10(b) claims are $39.8 million, and for the Section 11 claims are $47.2 million after accounting for negative causation. (Decl. of Joshua Silverman, "Silverman Decl.," Dkt. No. 129 ¶ 39.) These damages are overlapping, rather than cumulative. *Id.* Lead Plaintiff does not estimate that the Section 14 claims provide any damages that are not fully accounted for within the estimates provided under Section 10(b) and Section 11. *Id.* Accordingly, the Settlement represents a recovery of approximately 44.56% for the Section 10(b) claims, and 37.6% for the Section 11 claims. *Id.* This recovery exceeds other recoveries identified as "fair and reasonable" in this district. *See, e.g.*, *In re Splunk Inc. Sec. Litig.*, Case No. 20-cv-08600-JST, 2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) (settlement amount "between approximately 5% and 20.5% of the realistic maximum damages" for a securities class action are "fair and reasonable"); *In re Lyft, Inc. Sec. Litig.*, Case No. 19-cv-02690-HSG, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) (settlement representing 3.2% to 4.7% of estimated maximum damages for Section 11 claims was "well within the range of possible approval"); *see also Hunt v. Bloom Energy*, Case No. 19-cv-02935-HSG, 2023 WL 7167118, at *7 (N.D. Cal. Oct. 31, 2023) (approving 5.2% of maximum estimated recovery for Section 11 claims). Since the

6

Settlement represents between 37.6% and 44.56% of the possible recovery, the Court finds that this factor favors final approval.

Fifth, it appears Lead Plaintiff has engaged in sufficient investigation in this case. Class Counsel has interviewed Plaintiff and more than a dozen former employees, engaged in motion practice, analyzed the legal positions taken by Defendants, exchanged information through discovery, and performed a thorough damages analysis. (Silverman Decl. ¶¶ 9-15, 37-39.) The Court concludes that the discovery conducted was adequate to allow the parties to make a fully informed decision on settlement. Thus, this factor favors final approval.

Sixth, Class Counsel attests that the settlement is fair and reasonable. (Silverman Decl. ¶¶ 37-40.) Class Counsel is experienced in this area, as the primary attorneys in this case have significant experience in securities litigation. (Silverman Decl. ¶ 52, Ex. C.) Class Counsel's experience and support for the Settlement favors final approval.

Finally, the reaction of the class members to the proposed settlement has been positive. Per the settlement administrator, 72,532 notices were sent to potential class members. (Craig Decl. ¶ 7.) As of November 22, 2024, SCS had received 38,329 claims. (Suppl. Decl. of Margery Craig, "Suppl. Craig Decl.," Dkt. No. 131-1 ¶ 10.) No objections were filed with the Court, and only one request for exclusion was received by SCS. (Suppl. Craig Decl., ¶¶ 8-9, Ex. A.) As there has only been one opt-out and no individuals have objected to the Settlement terms, this last *Churchill* factor favors final approval.

Overall, the *Churchill* factors favor approval of the settlement. Additionally, the Court finds that the *Bluetooth* factors are satisfied, such that there is no evidence of collusion. Specifically, Class Counsel is not receiving a disproportionate distribution of the settlement, there is no "clear sailing" arrangement, and none of the Settlement Amount reverts back to Defendant.

Thus, having reviewed both the *Churchill* and *Bluetooth* factors, the Court finds that the Settlement is fair, adequate, and reasonable.

        **ii.    Plan of Allocation**

Next, the Court finds that the proposed Plan of Allocation is fair and reasonable. (*See* Pl.'s Mot. at 17.) The Plan of Allocation, drafted with the assistance of a damages expert, is a fair and

1  reasonable method for allocating the proceeds of the Settlement among eligible claimants and
2  treats all Class Members equitably, as required by Rule 23(e)(2)(D).  The standard for approval of
3  a plan of allocation in a class action under Federal Rule of Civil Procedure 23 is the same as the
4  standard applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate.
5  *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1284-85 (9th Cir. 1992); *see also Vataj v.
6  Johnson, No.* 19-CV-06996-HSG, 2021 WL 5161927, at *2 (N.D. Cal. Nov. 5, 2021). "[A] plan of
7  allocation … fairly treats class members by awarding a *pro rata* share to every Authorized
8  Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative
9  strengths and weaknesses of class members' individual claims and the timing of purchases of the
10 securities at issue." *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL
11 12303367, at *8 (C.D. Cal. July 9, 2013) (citation and internal quotations omitted).

12       Here, Lead Counsel prepared the Plan of Allocation with the assistance of a consulting
13 expert on damages. (Pl.'s Mot. at 17; Silverman Decl. ¶¶ 43-47.)  The Plan of Allocation was fully
14 disclosed in the Notice available to all potential Class Members, and no Class Member has filed an
15 objection to it. (Craig Decl. ¶¶ 12-13; Suppl. Craig Decl. ¶ 9.)  The Plan of Allocation provides for
16 recovery for shares purchased between May 11, 2021 and October 5, 2021 under Section 10(b), on
17 a *pro rata* basis based on the Class Member's recognized loss, which incorporates a 90-day
18 lookback period, the advice of Plaintiff's experts, and the principles of economic loss articulated
19 by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  (Pl.'s Mot.
20 at 17; Notice at 12-13, Craig Decl. ¶ 3, Ex. A.)  It also calculates Section 11 damages based on the
21 statutory formula while accounting for the significant negative causation defense that would be
22 available to Defendants at trial.  To avoid duplication, the Plan of Allocation provides that a Class
23 Member will receive the greater of their Section 11 or Section 10(b) damages.  (Notice at 12.)
24 Overall, the Plan of Allocation provides for customary *pro rata* distribution of the Net Settlement
25 Fund among all eligible Class Members who have submitted a valid Proof of Claim.  *Id.* at 12-14.
26 These features are standard in securities class action plans of allocation, and plans with these
27 elements are routinely held to be fair and reasonable. *See, e.g., In re Extreme Networks, Inc. Sec.
28 Litig.,* No. 15-CV-04883-BLF, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019); *Destefano v.*

*Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *15 (N.D. Cal. Feb. 11, 2016).

Accordingly, the Court finds that Plan of Allocation is fair, reasonable, and adequate under Rule 23.

### C. Attorneys' Fees and Costs

#### i. Requested Fee Award

"[T]he court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Ninth Circuit has found, however, that courts still "have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Where a settlement, such as this one, "produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942. Under the percentage method, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award . . . ." *Id.* Courts may diverge from the benchmark based on factors that include "the results obtained, risk undertaken by counsel, complexity of the issues, length of the professional relationship, the market rate, and awards in similar cases." *Morales v. Stevco*, Inc., No. CIV-F-09-0704-AWI-JLT, 2013 WL 1222058, at *2 (E.D. Cal. Mar. 25, 2013); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee award); *In re Pac. Enter. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).

Here, Class Counsel seeks a benchmark award of 25% of the common fund, or $4,437,500.00. (Pl.'s Fees Mot. at 1.) If the court applies the percentage method, then it typically calculates the lodestar as a "crosscheck to assess the reasonableness of the percentage award." *See*, *e.g.*, *Weeks v. Kellogg Co.,* No. CV-09-8102-MMM-RZx, 2013 WL 6531177, at *25 (C.D. Cal. Nov. 23, 2013); *see also Serrano v. Priest*, 20 Cal. 3d 25, 48–49 (1977); *Fed-Mart Corp. v. Pell Enters.*, *Inc.*, 111 Cal. App. 3d 215, 226–27 (1980). "The lodestar . . . is produced by multiplying the number of hours reasonably expended by counsel by a reasonable hourly rate." *Lealao v. Beneficial Cal., Inc.*, 82 Cal. App. 4th 19, 26 (2000). Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative "multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and

1  complexity of the issues, the results obtained, and the contingent risk presented." *Id*.; *accord Laffitte v. Robart Half Internet, Inc.*, 1 Cal. 5th 480, 503–06 (2016) (under California law, "the percentage method to calculate [attorney's] fees in a common fund case" is appropriate and the trial court has "discretion to conduct a lodestar cross-check on a percentage fee").

As to the lodestar cross-check, the billing rates are normal and customary (and thus reasonable) for lawyers of comparable experience doing similar work.[1] *Cuviello v. Feld Entm't, Inc.*, No. 13-cv-04951-BLF, 2015 WL 154197, at *2–3 (N.D. Cal. Jan. 12, 2015) ("court has broad discretion in setting the reasonable hourly rates used in the lodestar calculation"); *Ketchum v. Moses,* 24 Cal. 4th 1122, 1132 (2001) (court can rely on its own experience); *accord Open Source Sec. v. Perens*, 803 F. App'x 73, 77 (9th Cir. 2020).

Based on counsel's submissions, the fee award is appropriate as a percentage of the common fund and is supported by a lodestar cross-check, given the results obtained, the case itself, the lack of objections to the settlement, and counsel's litigating the case on a contingency basis. *Cf. e.g., Bellinghausen*, 306 F.R.D. at 259–65 (N.D. Cal. Mar. 20, 2015) (approving attorney's fees equal to the benchmark 25 percent of the common fund); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966-LB, 2013 WL 3988771, at *4–5 (N.D. Cal. Aug. 2, 2013) (awarding 33 percent of the settlement fund as attorney's fees "given the extensive litigation in the case[,] [] the successful results achieved[,]" and the contingency risk); *Villalpando v. Excel Direct Inc.*, Nos. 12-cv-04137-JCS, 13-cv-03091-JCS, 2016 WL 7740854, at *2 (N.D. Cal. Dec. 12, 2016) (awarded one-third of the settlement fund as reasonable attorney's fees because of "the contingent risk, [c]ounsel's documented lodestar, the complex and protracted nature of the case, and strong result for the case").

Thus, applying the percentage method, as cross-checked by the lodestar method, the Court finds that the attorney's fees sought by Class Counsel is reasonable. The Court, therefore, GRANTS Lead Plaintiff's request for an award of attorney's fees in the amount of $4,437,500.00, plus any interest accrued in the Escrow account.

---

[1] Silverman Decl. ¶¶ 56-59.

### ii. Costs

Lead Plaintiff seeks $203,929.20 in costs, plus any interest accrued in the Escrow account. (Pl.'s Fees Mot. at 13; Silverman Decl. ¶¶ 60-64.) This is less than the $325,000 maximum award set forth in the Notice. (Pl.'s Fees Mot. at 13-14; Notice at 3.) Defendant does not oppose Class Counsel's request. The Court finds that the costs requested were reasonably incurred, and GRANTS Plaintiff's request for costs in the amount of $203,929.20, plus any interest accrued in the Escrow account.

### D. Lead Plaintiff's Request for Service Award

Finally, Lead Plaintiff moves for an incentive award and general release payment in the amount of $5,000. (Pl.'s Fee Mot. at 14.) "Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). The decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000).

Courts in this district generally find service awards of $5,000 to be reasonable. *See Harris v. Vector Mktg. Corp.*, Case No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012). Here, Plaintiff spent at least 85 hours overseeing this case, working with counsel, and responding to discovery. (Decl. of Sharon Bernstein, Dkt. No. 129-2 ¶ 3.) Thus, the Court finds this Service Award reasonable considering the burden undertaken by Lead Plaintiff in this action and for her time and effort in bringing and prosecuting this matter on behalf of the Settlement Class.

## IV. CONCLUSION

For the reasons set forth above, Lead Plaintiff Sharon Bernstein's motion for final approval of the class action settlement is GRANTED, and the Court (1) certifies the class for settlement purposes only; (2) approves the stipulation of settlement and authorizes the distribution of funds as set forth in the Plan of Allocation; (3) confirms the appointments of Lead Plaintiff, Class Counsel, and Strategic Claims Services; (4) approves $4,437,500.00 in attorneys' fees and $203,929.20 in costs, plus any interest accrued on those amounts while in the Escrow account, to Class Counsel; (5) approves up to $250,000 for Strategic Claims Services's settlement administration costs; (6)

11

approves $5,000 to Lead Plaintiff Sharon Bernstein as an incentive award; and (7) orders the parties and Strategic Claims Services to carry out all of their respective obligations as set forth in the Stipulation of Settlement.

Lead Plaintiff and all class members not otherwise excluded —either by the terms of the Stipulation of Settlement or having filed a request for exclusion—release all claims against Released Defendants as set forth in the Stipulation of Settlement.

Additionally, the Court retains jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, and interpretation of the Stipulation of Settlement, and distribution of the Net Settlement Fund.

Furthermore, without further order of the Court, Defendants and Lead Plaintiff may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation of Settlement.

Finally, in accordance with the Northern District's Procedural Guidance for Class Action Settlements, within 21 days after all funds have been paid to class members, the parties shall file a Post-Distribution Accounting (and post it on the settlement website), which provides the total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average, median, maximum, and minimum recovery per claimant, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, plaintiffs' counsel's updated lodestar total, and the lodestar multiplier.  If the parties believe that a compliance hearing is necessary, they may file a stipulation or administrative motion requesting that one be set on the Court's regular law and motion calendar.

The Clerk shall close the case, and the Court will enter separate judgment.

IT IS SO ORDERED.

Dated: December 13, 2024

_Kandis Westmore_
KANDIS A. WESTMORE
United States Magistrate Judge